**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELLIOTT OSBORNE, individually, and on behalf of all others similarly situated, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:19-cv-8374 ) |
| WEWORK COMPANIES INC., WEWORK CONSTRUCTION LLC, WW 210 N GREEN LLC d/b/a WEWORK, 332 S MICHIGAN TENANT LLC d/b/a WEWORK GRANT PARK, WW 111 WEST ILLINOIS LLC d/b/a WEWORK RIVER NORTH, 20 W KINZIE TENANT LLC d/b/a WEWORK4, 100 S STATE STREET TENANT LLC d/b/a WEWORK5, 125 S CLARK STREET TENANT LLC d/b/a WEWORK6, 222 S RIVERSIDE PLAZA TENANT LLC d/b/a WEWORK8, 330 NORTH WABASH TENANT LLC d/b/a WEWORK9, 515 N STATE STREET TENANT LLC d/b/a WEWORK10, 1 SOUTH DEARBORN STREET TENANT LLC d/b/a WEWORK11, 625 WEST ADAMS STREET TENANT LLC, | ) Honorable Edmond E. Chang ) ) Magistrate Judge Young B. Kim ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Melissa A. Siebert (masiebert@shb.com_
Matthew C. Wolfe (mwolfe@shb.com)
Yara K. Rashad (yrashad@shb.com)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

*Attorneys for the WeWork Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

THE JUMIO SETTLEMENT ............................................................................................ 2

ARGUMENT .................................................................................................................... 5

I.      THE *JUMIO* SETTLEMENT MOOTED PLAINTIFF'S CLAIMS. ................................. 5

II.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION. 7

      A.      Osborne's Arbitration Contract Is Binding Under Illinois Law. ............................ 8

      B.      This Litigation Is Subject To The WeWork Arbitration Clause. ............................ 9

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER BIPA. .......................................... 11

      A.      Osborne's Claims Are Barred by the Applicable Statute of Limitations.............. 11

      B.      Osborne's Claims Are Too Vague to Sustain Claims Against Defendants. ......... 14

      C.      Osborne Does Not Plead Negligence, Recklessness, Or Intent. ........................... 16

CONCLUSION................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Acaley v. Vimeo,*
    464 F. Supp. 3d 959 (N.D. Ill. 2020) ..............................................................9, 10

*Ali v. Vehi-Ship, LLC,*
    2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) (Chang, J.) ....................................10

*Alicea-Hernandez v. Catholic Bishop of Chi.,*
    320 F.3d 698 (7th Cir. 2003) .................................................................................3

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................14, 15

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview,*
    894 F.3d 807 (7th Cir. 2018) .................................................................................5

*Daniel v. Cook County,*
    833 F.3d 728 (7th Cir. 2016) .................................................................................3

*Davis v. Ball Mem'l Hosp. Ass'n, Inc.,*
    753 F.2d 1410 (7th Cir. 1985) ...............................................................................5

*Faulkenberg v. CB Tax Franchise Sys., LP,*
    637 F.3d 801 (7th Cir. 2011) .................................................................................7

*Fox v. Dakkota Integrated Sys., LLC,*
    980 F.3d 1146 (7th Cir. 2020) .............................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ............................................................................................1, 2

*Gore v. Alltel Communications LLC,*
    666 F. 3d 1027 (7th Cir. 2012) .........................................................................9, 10

*Johnson v. Uber Techs., Inc.,*
    2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ........................................................9

*Marsh v. CSL Plasma,*
    2020 WL 7027720 (N.D. Ill. Nov. 30, 2020) ......................................................17

*Milwaukee Police Ass'n v. Bd. of Fire & Police Commissioners of City of
    Milwaukee,*
    708 F.3d 921 (7th Cir. 2013) .................................................................................5

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ..................................................................2, 17

*Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
    900 F.3d 377 (7th Cir. 2018) ....................................................................................5

*Prelipceanu v. Jumio Corp*,
    Case No. 1:19-cv-00561 (April 15, 2019) ...............................................................2

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) ....................................................................................7

*Rivera v. Google, Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...................................................................16

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) .....................................................................17

*Scan Top Enter. Co., Ltd. v. Winplus N.A., Inc.*,
    2016 WL 910502 (N.D. Ill. Mar. 9, 2016)...................................................7, 8, 10

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..................................................................................10

*Tobey v. Chibucos*,
    890 F.3d 634 (7th Cir. 2018) ....................................................................................3

*Wegscheid v. Local Union 2911, UAW*,
    117 F.3d 986 (7th Cir. 1997) ....................................................................................5

*Wright-Gray v. Hamos*,
    2012 WL 366597 (N.D. Ill. Feb. 2, 2012) ..............................................................1

**STATE CASES**

*Bybee v. O'Hagen*,
    612 N.E.2d 99 (Ill. App. Ct. 1993) ........................................................................16

*Hubbert v. Dell Corp.*,
    835 N.E.2d 113 (Ill. App. Ct. 2005) ........................................................................9

*Osborne v. WeWork Companies, Inc.*,
    2019-CH-12856 (Cir. Ct. Cook Cty. Nov. 5, 2019) ................................................6

*Papadakis v. Fitness 19 IL 116, LLC*,
    2018 IL App (1st) 170388........................................................................................16

*People v. Trainor*,
    752 N.E.2d 1055 (Ill. 2001) ...................................................................................16

*Prelipceanu v. Jumio Corp.*,
  Case No. 2018 CH 15883 (Cir. Ct. Cook Cty.) ...........................................................1, 3, 5, 7

*PSI Res., LLC v. MB Fin. Bank, N.A.*,
  2016 IL App (1st) 152204...........................................................................................11

*Pub. Fin. Corp. v. Davis*,
  360 N.E.2d 765 (Ill. 1976)...........................................................................................17

*Rosenbach v. Six Flags Entertainment Corp.*,
  2019 IL 123186........................................................................................................ passim

*Travelers Cas. & Sur. Co. v. Bowman*,
  893 N.E.2d 583 (Ill. 2008)...........................................................................................11

*West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*,
  2020 IL App (1st) 191834.........................................................................................12, 13

STATE STATUTES

735 ILCS 5/13-201...........................................................................................................11, 12

740 ILCS 14/1 *et seq.*........................................................................................................1

740 ILCS 14/20..................................................................................................................16

OTHER AUTHORITIES

Adam Neumann Interview (https://www.wired.co.uk/article/we-work-startup-
  valuation-adam-neumann-interview)...........................................................................15

JAMS Comprehensive Arbitration Rules (https://www.jamsadr.com/rules-
  comprehensive-arbitration/)...................................................................................11, 14

## INTRODUCTION

On November 5, 2019, Plaintiff Elliott Osborne ("Osborne") filed this putative class action against thirteen WeWork entities ("WeWork" or "WeWork Defendants"). His lawsuit contends that as a condition of entering one WeWork location at 125 S. Clark Street in Chicago (Dkt. 1-1), he was required to have his facial geometry scanned. In a conclusory fashion, Osborne vaguely asserts that all thirteen WeWork entities somehow committed BIPA violations against him.[1]

On January 27, 2020, WeWork filed a motion to dismiss Osborne's suit in favor of arbitration or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. 13.) Before Osborne responded, the Court *sua sponte* terminated the Motion to Dismiss without prejudice and instructed the parties to address the Court's standing to adjudicate Osborne's BIPA claims. (Dkt. 17, 18.) On April 8, 2021, the Court held that standing exists over all of Osborne's BIPA claims, and asked WeWork to answer or file a Rule 12 motion by April 29, 2021 in order to "move the litigation beyond subject matter jurisdiction." (Dkt. 48.)

However, during the time that Article III standing issues were pending in this case, Osborne's claims became moot via another BIPA settlement, in which Osborne's claims against WeWork were released. *See* Att. A, Ex. 1.[2] Mootness is not the same issue as standing, and since the Court has determined that it can resolve Rule 12 motions as to all of Osborne's claims, WeWork would be remiss if it failed to advise the Court of intervening circumstances impacting the Court's jurisdiction. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-192 (2000); *see also Wright-Gray v. Hamos*, No. 09 C 04414, 2012 WL 366597, at

---

[1] BIPA refers to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*

[2] Attachment A consists of the Motion and Memorandum in Support of Final Approval in *Prelipceanu v. Jumio Corp.,* Case No. 2018 CH 15883 (Cir. Ct. Cook Cty.), and its attached Exhibits, which are referenced herein by their original Exhibit numbers.

*2 (N.D. Ill. Feb. 2, 2012). WeWork respectfully submits that Osborne's claims are moot. As such, this Court cannot continue to retain jurisdiction because "one or both of the parties plainly lack a continuing interest, as when the parties have settled." *Friends of the Earth*, 528 U.S. at 192. Accordingly, dismissal is appropriate at this juncture because the Court now lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

Mootness is thus a threshold issue, decided before WeWork's renewed request to dismiss the claims in favor of arbitration. If the Court determines that Osborne's claim is not moot, then it must be sent to individual arbitration pursuant to the arbitration agreement and class action waiver he agreed to in his WeWork Member Network Terms of Service. Moreover, to ensure that it does not waive any Rule 12(b) dismissal bases, WeWork reasserts that: (a) Osborne's claims are barred by the one-year limitations period that applies to BIPA claims; (b) the Complaint fails to identify the conduct that each or even any WeWork Defendant committed that Osborne asserts violated BIPA; and (c) Osborne fails to allege that any WeWork Defendant violated the statute negligently, recklessly, or intentionally.

## THE JUMIO SETTLEMENT

In the past few years, there has been a proliferation of BIPA litigation in Illinois state and federal courts. More recently, multiple lawsuits have been filed against technology vendors, and their customers, asserting claims against each for purported BIPA violations.[3] This is one such lawsuit. In April 2019, a technology provider called Jumio was sued under BIPA for alleged violations relating to its "liveness detection and facial recognition software." *Prelipceanu v. Jumio*

---

[3] Claims involving timekeeping technology vendors and employers using timekeeping technology are the most common example such claims. *See e.g. Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019) (dismissing duplicative claim against timekeeping technology vendor).

*Corp,* Case No. 1:19-cv-00561 (April 15, 2019), *remand,* Case No. 2018 CH 15883 (Cir. Ct. Cook Cty.).[4] Ten months later, Jumio customer WeWork was separately sued by Osborne in this lawsuit, based on WeWork's use of Jumio's technology to "monitor individuals in [its] office spaces." (Dkt. 1-1 ¶ 5.)

While Jumio is not expressly mentioned by name in Osborne's Complaint, this litigation brought by Osborne featured prominently in subsequent *Prelipceanu* settlement proceedings, where all parties recognized that WeWork's use of Jumio technology formed the basis for Osborne's claims. Throughout 2020, while this Court was determining complex and unsettled jurisdictional issues in the *Osborne* case, Jumio was in the process of settling the *Prelipceanu* matter. The Jumio Settlement includes a settlement of all claims against Jumio's customers. *See* Att. A, Ex. 1 ¶¶ 1.11, 1.18 (defining a Jumio "Customer" as any purchaser or licensor of Jumio's identity verification services); *see also* Att. A, Ex. 1 ¶ 1.25 (defining "Released Parties" to include "Customers"); *and see* Att. A, Ex. 1 ¶ 1.27 (defining "Settled Claims" as "any and all claims, liabilities, rights, demands, suits . . . causes of action . . . that the Plaintiff and Settlement Class Members had, have, or may have, against all Released Parties. . . ."). Osborne was a Jumio Settlement Class Member, who received Class notice and did not submit a Claim. Att. C ¶¶ 5-6, 10.

On or about February 26, 2020, an Objection was submitted to the Jumio Settlement on behalf of an individual named Ashley Allen. Att. B.[5] The sole basis for the Objection was that the

---

[4] The Court may take judicial notice of other court fillings, such as pleadings and attached affidavits. *Daniel v. Cook County,* 833 F.3d 728, 742 (7th Cir. 2016); *Tobey v. Chibucos,* 890 F.3d 634, 648 (7th Cir. 2018). Matters outside of the pleadings may also be used to assess jurisdiction. *Alicea-Hernandez v. Catholic Bishop of Chi.,* 320 F.3d 698, 701 (7th Cir. 2003).

[5] The Objection to Approval of Class Action Settlement filed in the *Prelipceanu* state court proceeding is Attachment B, with references to its original Exhibits.

Jumio Settlement included and thus released Jumio's customers—specifically, WeWork and Juul. Att. B, pp. 2, 6. The Objection specifically cites this lawsuit as an example of a Jumio customer claim covered by the Jumio Settlement. *Id*. The Jumio Settlement Objection battle regarding the customer release continued through the summer of 2020 and included an affidavit from retired Chief Judge Holderman, who was the mediator for the Jumio Settlement. Att. A, Ex. 4 ¶ 5. In his affidavit, Judge Holderman indicated that he was aware of other BIPA litigation involving Jumio, and that Jumio intended to resolve its case as well as this other litigation risk. *Id*. at ¶ 10. Jumio's General Counsel also submitted a declaration advising that an "essential" term of the Jumio Settlement was the customer release. Att. A, Ex. 5 ¶¶ 4-5.

On July 21, 2020, there was a final settlement hearing on the Jumio Settlement, which included argument on the Objection. During the hearing, Objector's counsel admitted that:

> [T]here have been Jumio people in this class who have filed [BIPA actions] against Jumio customers. We raised WeWork and [Juul] as relatively large companies that deploy Jumio that other class members think collected their biometric data and violated BIPA. **Those claims of those putative class members would be given up**. [Objector's] claims would be given up against whatever Jumio customer collected her data.

Att. D, p. 9 ll. 6-14 (emphasis added).

At the close of the final Jumio settlement hearing, Circuit Court of Cook County Judge Michael Mullen denied the Objection. His Final Order and Judgment states: ". . . the Court overrules Ms. Allen's Objection on the merits and finds that the Release set forth in the Settlement Agreement and provided for by operation of this Settlement is unambiguous and is fair and reasonable in light of the nature of the Litigation and the substantial monetary and non-monetary benefits that the Settlement provides to the Settlement Class Members." Att. E, p. 7 ¶ 22.

## ARGUMENT

## I. THE *JUMIO* SETTLEMENT MOOTED PLAINTIFF'S CLAIMS.

It is well settled that mootness is a jurisdictional issue. *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814 (7th Cir. 2018). Here, the Jumio Settlement is an "intervening circumstance" that "deprives [Osborne] of a personal stake in the outcome of the lawsuit," such that this action must be dismissed. *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018) (internal citations omitted). Settlement agreements are precisely the type of intervening circumstance that can moot claims, even when the plaintiff themselves did not sign the agreement. *Milwaukee Police Ass'n v. Bd. of Fire & Police Commissioners of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013) (police officer's individual settlement mooted union's claims because there was no remaining "stake in the outcome of this case." *See also Wegscheid v. Local Union 2911, UAW*, 117 F.3d 986 (7th Cir. 1997) (no jurisdiction because the plaintiffs had already "obtained all the relief that *they* need[ed]"); *Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1418-19 (7th Cir. 1985) (settlement mooted plaintiffs' claims and precluded them from further litigating the case).

Osborne's claims against WeWork have been rendered moot by the Jumio Settlement for two reasons. *First*, Osborne is clearly a member of the Settlement Class, which is defined in the Jumio Settlement as including "[a]ll individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries, or agents, or their technology, at any time between December 21, 2013 and entry of the Preliminary Approval Order." Att. A, Ex. 1 ¶ 2.2. Osborne was included on the Class List, and Court-approved Notice was successfully mailed to him in January 2020. Att. C ¶¶ 5-6. Because Osborne is a member of the Jumio Settlement Class, he

released his BIPA claims against Jumio's customers, including WeWork. Att. A, Ex. 1, ¶¶ 1.25-1.27.

Not only was Osborne himself on notice of the Jumio Settlement; his counsel participated in it and knew it would moot his claims. We know this because Osborne's counsel submitted a declaration in the Jumio Objector proceeding. That declaration and contemporaneous emails show it was well-known to Osborne's counsel and the Objector's counsel, that Osborne's case against WeWork would be mooted if the Jumio Court denied the Objection. *See* Att. F, Ex. 1 (Declaration of James Zouras, counsel for Osborne); Att. B, Ex. 1 (exhibits to Declaration of Eli Wade-Scott).

*Second*, as a member of the Settlement Class who chose not to exclude himself, Osborne released his claims. As explained in the Jumio Settlement Notice (Att. C, Ex. 2-A):

> **Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **February 26, 2020**. If you do not exclude yourself, you may object to it by **February 26, 2020**. The detailed notice, available at the Settlement Website listed below or through the Settlement Administrator, explains how to exclude yourself or object.

Osborne did not exclude himself from or file an objection in the Jumio Settlement (Att. C ¶¶ 9, 11 and Att. C, Ex. D), even though his attorneys were aware of the Jumio Settlement in January 2020 (Att. F, Ex. 1 ¶ 2), well before the objection and exclusion deadline. Indeed, in the objection reply brief that Osborne's counsel filed a declaration supporting, the objector cited *this case* in arguing that the settlement should be rejected:

> Jumio provided the technology to customers and allegedly collected biometric data directly, but other plaintiffs have sued Jumio's customers for their own collection of biometric data through the NetVerify service. *E.g., Osborne v. WeWork Companies, Inc.*, 2019-CH-12856 (Cir. Ct. Cook Cty. Nov. 5, 2019). The effect of the unusual non-party release here is not to ensure that one set of BIPA claims (worth, at an absolutely minimum, $1,000) is given up, but that *two* are.

Att. F, page 9 (combined reply supporting Jumio Objection).

Put simply, Osborne's failure to exclude himself from the Jumio Settlement or to object bars his claims here because the Jumio Settlement Agreement states: "[e]xcept for those persons who properly request exclusion as described below, all members of the Class will be deemed Settlement Class Members for all purposes under this Agreement." Att. A, Ex. 1 ¶ 8.1. As set forth in the *Prelipceanu* Final Order (Att. E ¶ 17):

> [t]he Settlement Agreement and the Release of the Settled Claims [are] binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members who did not validly and timely exclude themselves from the Settlement…

*See also id.* ¶¶ 15, 18 (Class Members who did not exclude themselves have released all Settled Claims against the Released Parties, and are "permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Settled Claims or any of the claims described in the Settlement Agreement against any of the Released Parties"). Such terms are very common in class action settlements. Osborne's claims here are moot. *See*, *e.g.*, *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820–21 (7th Cir. 2011) ("[T]hose who do not opt out will be bound by the judgment in [a] class action.").

## II.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION.

If the Court decides to retain jurisdiction notwithstanding the Jumio Settlement, the Court should nevertheless dismiss this case in favor of arbitration under Fed. R. Civ. P. 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Scan Top Enter. Co., Ltd. v. Winplus N.A., Inc.*, 2016 WL 910502, at *3 (N.D. Ill. Mar. 9, 2016). To determine whether an arbitration obligation exists, federal courts apply state law contract principles, and may consider attachments. *Faulkenberg*, 637 F.3d at 809. "[A]ny doubt concerning the scope of the

arbitration clause is resolved in favor of arbitration as a matter of federal law." *Scan Top*, 2016 WL 910502, at *3.

**A.**     **Osborne's Arbitration Contract Is Binding Under Illinois Law.**

Osborne claims he worked for SpotHero in 2017 "out of a WeWork office space located at 125 South Clark Street." Dkt. 1-1 ¶ 59. WeWork requires members to use the WeWork Member Network to access certain WeWork services, including to verify and manage access keycards, reserve conference rooms, register guests, and submit support and maintenance requests. Att. H. ¶ 3. During the relevant timeframe, when members logged in to the WeWork Member Network, they were advised that "By logging in you agree to our Terms of Service & Privacy Policy," and both "Terms of Service" and "Privacy Policy" are hyperlinked. Att. H ¶ 3. The "Terms of Service" hyperlink takes members to the Member Network Terms of Service. *Id*. The Member Network Terms of Service are also available within the Member Network itself and provide that "[b]y accessing or using the Member Network in any way, you are agreeing to abide by and be bound by these Network Terms." (Att. H, Ex. A ¶ 1)

In the context of using the Clark Street WeWork space, Osborne accessed WeWork's online Member Network (Att. G ¶ 4), and by doing so accepted the Terms of Service (Att. H ¶ 3). The Terms of Service, which were in effect at all relevant times alleged in the Complaint, contain the following first paragraph regarding binding, individual arbitration in bold print (Att. H ¶ 4, Ex. A ¶ 1):

> **Please read these Network Terms carefully, as they affect your legal rights. Among other things, these Network Terms include your agreement that except for certain types of disputes described in the "Governing Law; Arbitration and Class Action Waiver" section below, you agree that, to the maximum extent allowed by applicable law, disputes between you and us will be resolved by binding, individual arbitration, and you waive your right to participate in a class action lawsuit or class-wide arbitration.**

Illinois courts have held that hyperlinks to terms and conditions are sufficient to create a contract. *See Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. Ct. 2005) (a customer agreed to terms and conditions when making an online purchase because each webpage in the process contained a hyperlink labeled "Terms and Conditions of Sale," and all online forms stated that "All sales are subject to Dell's Term[s] and Conditions of Sale." Because these statements "would place a reasonable person on notice that there were terms and conditions attached to the purchase," the customer agreed to those terms by completing the purchase. *Id*.

In turn, courts in this district have relied upon *Hubbert* to hold that a contract of individual arbitration can be formed through a hyperlink to terms and conditions when the hyperlink is clearly displayed, regardless of whether the hyperlinked document is accessed and read. *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *3–4 (N.D. Ill. Sept. 20, 2018) (binding contract to individually arbitrate claims created under *Hubbert* in same circumstances); *Acaley v. Vimeo*, 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020) (binding individual arbitration agreement created with consumer bringing BIPA claims based on hyperlink to terms and conditions). Here, WeWork's hyperlinked Member Network Terms of Service constitutes a valid arbitration agreement.

**B.      This Litigation Is Subject To The WeWork Arbitration Clause.**

The arbitration provisions Osborne agreed to encompass "any dispute, controversy, or claim **arising out of or in relation to** these Terms," including claims such as Osborne's here, related to the creation, use, and maintenance of his WeWork Member Network Account which was a necessary component of Osborne's receipt of many of WeWork's member services including (as he alleges) physical access to WeWork's location at 125 South Clark Street. Att. H, Ex. A ¶¶ 1, 42. *Gore v. Alltel Communications LLC*, 666 F. 3d 1027, 1032 (7th Cir. 2012) ("Once it is clear … that the parties have a contract that provides for arbitration of some issues between them, any

9

doubt concerning the scope of the arbitration clause is resolved in favor of arbitration, as a matter of federal law.").

Arbitration agreements that contain broad coverage for claims "arising out of" contract terms or usage of services must be interpreted broadly. *See Scan Top*, 2016 WL 910502, at *4 ("Indeed, such a broad provision must be read to cover all claims 'having a significant relationship to the contract and all disputes having their origin or genesis in the contract.'") (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). Osborne's lawsuit, which asserts that "WeWork" violated Osborne's privacy rights by "stor[ing] Plaintiff's facial geometry data in their database(s)" (Dkt. 1-1 ¶ 61), arises out of or relates to the Member Network Terms of Service.

Again, any disputes about whether Osborne's claims are subject to individual arbitration must be decided in favor of arbitration, absent a clear exclusion. *See Gore*, *supra* at p. 8; *and see Acaley*. *Id*. Once this Court has determined that the arbitration agreement applies to this case, then any questions about the actual arbitrability of Osborne's BIPA claim must be resolved by an arbitrator. *See Ali v. Vehi-Ship, LLC*, 2017 WL 5890876, at *1, 3–4 (N.D. Ill. Nov. 27, 2017) (Chang, J.) ("The incorporation of the AAA Rules means that the Plaintiff's arguments about the validity of the arbitration clause (and, to the extent they are made, to the Agreement as a whole) must be made to the arbitrator."). Here, the Parties have incorporated JAMS arbitration rules into their arbitration agreement. Ex. H, Ex. A ¶ 42. The JAMS arbitration rules contain the following provision:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b); *see also* JAMS Streamlined Arbitrations Rules & Procedures, Rule 8(b). https://www.jamsadr.com/rules-comprehensive-arbitration/. All that is left for the Court to do is to dismiss the claims here, in favor of arbitration.

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER BIPA.

Osborne's Complaint also fails to state a claim for three separate and independent reasons. *First*, Osborne's only specific allegation—that he was forced to scan his facial geometry in 2017—establishes that his claims are barred by the one-year limitations period that applies to BIPA claims. *Second*, the Complaint, which is predicated on speculation and conclusory boilerplate assertions, does not sufficiently notify each or even any of the WeWork Defendants of the conduct Osborne contends violated BIPA. *Third*, Osborne fails to allege that any WeWork entities violated the statute negligently, recklessly, or intentionally.

### A.    Osborne's Claims Are Barred by the Applicable Statute of Limitations.

Osborne filed his complaint in state court on November 5, 2019. *See* Dkt. No. 1-1. He alleges that he accessed a WeWork location "in 2017." *Id.* at ¶ 59. A one-year limitations period applies to BIPA claims. *See* 735 ILCS 5/13-201. Accordingly, the last possible day for Osborne to file this action was December 31, 2018[6], and the Class Action Complaint is untimely.

The "determination of the applicable statute of limitations is governed by the type of injury at issue." *Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 587 (Ill. 2008). "Where two statutes of limitation arguably apply to the same cause of action, the one which more specifically relates to the action must be applied." *PSI Res., LLC v. MB Fin. Bank, N.A.*, 2016 IL App (1st)

---

[6] This date uses the most generous possible interpretation of Plaintiff's allegation, solely for the sake of argument. WeWork does not concede or admit that Plaintiff used WeWork's services throughout 2017.

152204, ¶ 39. Under Illinois law, a one-year statute of limitations governs actions for "publication of matter violating the right of privacy." *See* 735 ILCS 5/13-201.

The Illinois Supreme Court and the Seventh Circuit each have concluded that BIPA claims seek redress for invasions of privacy. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33; *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020) (BIPA plaintiff alleged "an invasion of her privacy interests in her biometric data"). Osborne himself concedes this point through his Complaint, which contains numerous privacy-related allegations, including: (1) "[u]nlike ID badges – which can be changed or replaced if stolen or compromised – facial geometry features are unique, permanent biometric identifiers associated with each individual," the use of which "exposes Illinois citizens to serious and irreversible privacy risks"; and (2) "if a database containing facial geometry or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed**…** individuals have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information." (Dkt. 1-1 ¶ 8.)

Thus, the statute-of-limitations question boils down to whether Osborne's claims involve publication. The only Illinois appellate court case to determine whether BIPA claims involve "publication" answered that question in the affirmative. In *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, the court analyzed whether providing purported "fingerprint data" to a third-party vendor constituted "publication." 2020 IL App (1st) 191834, ¶¶ 27–28. The *West Bend* Court rejected an interpretation of "publication" that would require communication to the public at large and recognized that the common understanding of "publication" unambiguously includes "a more limited sharing of information with a single third party." *Id.* ¶ 35. As such,

"publication" encompasses the act of providing a BIPA plaintiff's purported biometric data to a third party, even a single third party. *Id.* ¶ 38.

Importantly, although *West Bend* was an insurance-coverage case, the Illinois Appellate Court's holding was not limited to the use of the term "publication" in an insurance policy. To the contrary, the Appellate Court expressly explained that "[c]ommon understandings and dictionary definitions of 'publication' clearly include both the broad sharing of information to multiple recipients . . . and a more limited sharing of information with a single third party." *Id*. ¶ 35. Simply put, "publication" means the same thing in the context of the privacy statute of limitations as it did in the insurance policy interpreted by the Appellate Court in *West Bend*.

As the Illinois Supreme Court recognized in *Rosenbach*, "the point" of BIPA is to prevent the "irreversible harm that could result if biometric identifiers and information are not properly safeguarded." *Rosenbach*, 2019 IL 123186, ¶ 37. Osborne acknowledges that BIPA was enacted to prevent publication of matter violating the right of privacy. *See* Dkt. 1-1 ¶ 15 (alleging that concerns regarding the publication or disclosure of biometric data are what prompted the Illinois General Assembly to enact BIPA). BIPA accomplishes this goal not only by regulating disclosure without consent, but also through the procedural protections of Section 15(a) and 15(b).

Indeed, Osborne's own allegations make clear that he is concerned with the disclosure of his biometric information via "publication" to others. He alleges, "Since Defendants neither publish a BIPA-mandated data retention policy [as provided for in Section 15(a)] nor disclose the purposes for their collection and use of biometric data [as provided for in Section 15(b)], individuals *have no idea the extent to whom any Defendant sells, discloses, rediscloses, or otherwise disseminates their biometric data*." Dkt. 1-1 ¶ 56 (emphasis added). Thus, by Osborne's own allegations, all of his claims allege injuries related to publication, and are untimely.

### B.     Osborne's Claims Are Too Vague to Sustain Claims Against Defendants.

To satisfy Rule 8(a), the Osborne must state a plausible claim for relief and give *each* defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). Osborne fails to do so. His Complaint is predicated on speculative, fantastical, and unsupported allegations about "high-tech features" that WeWork "expressed interest in using" combined with formulaic and irrelevant conjecture about data breaches. *E.g.*, Dkt. 1-1 ¶¶ 1-17. None of these allegations make any plausible allegation against any Defendant, especially because the Complaint defines "WeWork" to include the dozen different entities named as "Defendants," then makes allegations against "Defendants" or "WeWork" collectively.

Osborne's specific factual allegations are brief enough to reproduce here in their entirety. Predicating the allegations largely on news articles and "information and belief," *see* Dkt. 1-1 ¶¶ 3-6, he alleges that he "worked for SpotHero in 2017 out of a WeWork office space located at 125 South Clark Street, Chicago, Illinois 60603." *Id.* ¶ 59. He then alleges that "WeWork required Plaintiff to have a photograph of his face taken to use as a method for monitoring him in WeWork's office space." *Id.* ¶ 60. Then, WeWork "stored Plaintiff's facial geometry in their database(s)." *Id.* ¶ 61. But it is impossible to tell which, if any, WeWork entities, if any, "required Plaintiff to have a photograph of his face taken," "monitored him in WeWork's office space," or "stored Plaintiff's facial geometry in their database(s)," or how they did so.

Additionally, Osborne does not plead any connection of any kind to a WeWork location other than the 125 S. Clark Street space. *See*, Dkt. 1-1. After reading Osborne's Complaint, only one thing is clear: Osborne did not access or work at any WeWork entity besides the office located at 125 South Clark Street. Osborne's decision to include twelve additional WeWork entities in his Complaint, without alleging any relationship to those entities, is perplexing. For instance, there is

14

no indication why WeWork Construction, LLC—an entity that hires contractors to design and build WeWork spaces—has been named a Defendant in this action. The remainder of Osborne's complaint, which contains mischaracterizations about the substance and history of BIPA, formulaic recitations of BIPA's statutory requirements (with perfunctory allegations that "Defendants" violated them), and class allegations, merely serves to highlight the fact that Osborne is simply making template allegations that are carried from suit to suit, without connecting them at all to these Defendants.

Finally, Osborne makes characterizations about WeWork's aspirational use of certain technologies within its workspace offerings, and in doing so completely mischaracterizes the sources relied upon in the Complaint. For example, Osborne cites an October 22, 2019 article to allege that WeWork uses "sensors and facial recognition software". (Dkt. 1-1 ¶ 3.) Yet the cited section of the article is not attributed to any WeWork source, nor is there any mention of the WeWork location that Mr. Osborne *actually* accessed. Mr. Osborne also alleges that WeWork has "expressed interest" in using facial recognition without any specific allegation that WeWork is in fact doing so. (Dkt. 1-1 ¶ 4.) In reality, the cited article quotes a WeWork source as stating "facial recognition ***could*** be used as an extra level of building security" and that this individual "***imagines***" how facial recognition could be deployed. Amazingly, the article makes clear, "[***t]hese technologies are not currently used in WeWork spaces***." *Id*. Adam Neumann Interview (https://www.wired.co.uk/article/we-work-startup-valuation-adam-neumann-interview).

A plaintiff must make factual allegations sufficient to "raise a right to relief above the speculative level. . . the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (cleaned up). Because the allegations are insufficient to give Defendants notice of the allegations and claims

against them, they must be dismissed. At the very least, all WeWork Defendants other than the 125 S. Clark Street location should be dismissed, so that unfounded claims are not multiplied in the individual arbitration agreed to by Osborne here. *See, supra* at p. 7.

### C. Osborne Does Not Plead Negligence, Recklessness, Or Intent.

BIPA is not a strict-liability statute. "A violation of a statute is not a strict liability tort unless the court finds that the legislature clearly intended to impose strict liability." *Bybee v. O'Hagen*, 612 N.E.2d 99, 103 (Ill. App. Ct. 1993). BIPA's "Right of Action" provision states that damages may be awarded against only two kinds of defendants: those that "negligently violate[] a provision of this Act," 740 ILCS 14/20(1), and those that "intentionally or recklessly" violate BIPA. 740 ILCS 14/20(2); *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (noting that BIPA "only subjects violators to statutory damages if there is negligence or willfulness"). In other words, to state a claim for an actionable violation, a plaintiff must plead something more: culpability. Indeed, allowing Osborne to "plead" negligence, recklessness, or intent by simply parroting BIPA, without more, would improperly render superfluous the terms of 740 ILCS 14/20. *See Rosenbach*, 2019 IL 123186, ¶ 24 ("When construing a statute, [the court's] primary objective is to ascertain and give effect to the legislature's intent. That intent is best determined from the plain and ordinary meaning of the language used in the statute."); *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001) (stressing that a statute's words "cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous"). Osborne's allegations do not sufficiently plead culpability, so his claims seeking liquidated damages under BIPA must be dismissed.

Establishing recklessness under Illinois law requires "the elements of negligence . . . and then . . . a heightened state of mind." *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶¶ 22–23 (observing that willful and wanton conduct is "a deliberate intention to harm or

a conscious disregard for the plaintiff's welfare"). More specifically, liability for reckless conduct requires the actor "knows [injury] is certain or substantially certain to result" and arises from "situations in which there is a high degree of probability that [injury] will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (affirming dismissal of conclusory claims of intentional or reckless conduct as inadequately pled).

Illinois federal courts have concluded that a BIPA defendant's mental state is a necessary requirement of pleading claims for reckless or intentional BIPA violations. In *Rogers v. CSX Intermodal Terminals, Inc.*, for example, Judge Aspen concluded that the plaintiff needed to actually allege facts suggesting recklessness or intent to state a claim for entitlement to BIPA's heightened damages and so rejected the complaint's "conclusory statement of CSX's intent" as "insufficient." 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d at 279, 286 (N.D. Ill. 2019) (finding complaint's "abstract statement regarding damages" caused by defendant's alleged BIPA violations "insufficient for the Court to infer that [the defendant] acted recklessly or intentionally").

While this Court previously declined to address an apparent court split on the appropriate pleading standard for BIPA recklessness and intent allegations, it did so under circumstances very different from those presented here. *See Marsh v. CSL Plasma*, 2020 WL 7027720, at * 6 (N.D. Ill. Nov. 30, 2020) (holding "Plaintiffs have pleaded enough on recklessness or intent" in case against a single defendant). Here, Osborne has named a dozen WeWork entities as Defendants, without indicating even a remote basis for bringing BIPA claims against any of them. *See, supra* at p. 13. Osborne's Complaint only indicates that he has ever been in one WeWork location—125 S. Clark Street—where his purported biometric data was allegedly used. Dkt. 1-1 at ¶ 59. Osborne's conclusory allegations of recklessness or willfulness are premised entirely "upon

information and belief"—he pleads zero basis for his BIPA claims against these dozen, individual WeWork Defendants. Dismissal of Osborne's claims for liquidated damages of $1,000 is similarly appropriate. Osborne has not alleged, nor could he plausibly do so, that the WeWork Defendants deviated from the reasonable standard of care met by other employers, in any industry, with respect to BIPA. Moreover, he has not alleged, as he must, that any of the dozen WeWork entities possessed his biometric data.

## **CONCLUSION**

The WeWork Defendants respectfully request that this Court dismiss Plaintiff's Class Action Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and strike all WeWork Defendants improperly named in Plaintiff's Complaint.

Dated: June 2, 2021

Respectfully submitted,

WEWORK DEFENDANTS

By:    _/s/ Matthew C. Wolfe_____
        One of Their Attorneys

Melissa A. Siebert (masiebert@shb.com)
Matthew C. Wolfe (mwolfe@shb.com)
Yara K. Rashad (yrashad@shb.com)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Tel: (312) 704-7700
Fax: (312) 558-1195

***Attorneys for the WeWork Defendants***

## **CERTIFICATE OF SERVICE**

I, Matthew C. Wolfe, an attorney, hereby certify that on **June 2, 2021**, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS** to be filed electronically. Notice of this filing will be sent through the Court's CM/ECF system to the following counsel:

> Ryan F. Stephan
> James B. Zouras
> Haley R. Jenkins
> STEPHAN ZOURAS, LLP
> 100 North Riverside Plaza, Suite 2150
> Chicago, IL 60601
> (312) 233-1550
> (312) 233-1560 (Fax)
> jzouras@stephanzouras.com
> rstephan@stephanzouras.com
> hjenkins@stephanzouras.com
>
> ***Attorneys for Plaintiff***

    */s/ Matthew C. Wolfe*        
