# Attachment A

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/7/2020 8:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9692066

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of similarly situated individuals, ) ) ) | |
| *Plaintiff,* ) ) | Case No. 2018-CH-15883 |
| v. ) ) | Hon. Michael T. Mullen |
| JUMIO CORPORATION, a Delaware corporation, ) ) ) | |
| *Defendant.* ) ) ) ) | |

**PLAINTIFF'S MOTION & MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: July 7, 2020

Myles McGuire
Evan M. Meyers
David L. Gerbie
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
aheldut@mcgpc.com

*Counsel for Plaintiff*
*and Class Counsel*

i

FILED DATE: 7/7/2020 8:22 PM  2018CH15883

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... iii

INTRODUCTION ......................................................................................................... 1

I.      BACKGROUND ................................................................................................ 3

        A.  The BIPA. ................................................................................................ 3

        B.  The Case and Procedural History ........................................................... 4

                1.  Plaintiff's Allegations ................................................................. 4

                2.  Procedural History and the Parties' Settlement Negotiations ....... 4

II.     THE PROPOSED SETTLEMENT ..................................................................... 7

        A.  The Settlement Class ................................................................................ 7

        B.  The Settlement Fund ................................................................................ 7

        C.  Additional Relief ...................................................................................... 7

        D.  Notice and Settlement Administration ...................................................... 8

        E.  Exclusion and Objection Procedure .......................................................... 9

        F.  Release and Ashley Allen's Objection ...................................................... 9

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................. 10

        A.  The Notice Plan Successfully Informed Settlement Class Members About Their
            Rights Under The Settlement Agreement ................................................ 11

        B.  All Factors Favor Final Approval ............................................................ 12

                1.  The Settlement provides significant benefits to the Settlement Class,
                    particularly given the uncertain outcome of litigation ............................ 13

                2.  Defendant is able to satisfy its obligations under the Settlement Agreement ........ 16

                3.  Continued litigation would necessitate the resolution of complex and
                    novel legal issues, as well as continued, extensive discovery ................. 17

FILED DATE: 7/7/2020 8:22 PM  2018CH15883

4.   The Settlement Class Members have overwhelmingly supported the Settlement; Ms. Allen filed the only objection to the Settlement and there have been few opt outs...................................................................................................................19

5.   The Settlement was a result of formal, arms-length negotiations involving counsel for all Parties........................................................................................20

6.   Class Counsel have significant experience in prosecuting similar class actions and believe that the Settlement is fair, reasonable, and adequate.....21

7.   The stage of litigation and amount of discovery completed has ensured that the Settlement is fair, reasonable, and adequate...............................22

C.  Ms. Allen's Objection Should Be Overruled………………………………………23

IV.   THE UNOPPOSED ATTORNEYS' FEES AWARD AND INCENTIVE AWARD SHOULD BE APPROVED ........................................................................................27

V.   CONCLUSION.........................................................................................................28

FILED DATE: 7/7/2020 8:22 PM  2018CH15883

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Am. Civil Liberties Union of Ill. v. United States Gen. Servs. Admin.*,
  235 F. Supp. 2d 816 (N.D. Ill. 2002) ......................................................................19

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ...............................................................................13

*City of Chicago v. Korshak*,
  206 Ill. App. 3d 968 (1st Dist. 1990) ..............................................................*passim*

*Heard v. Becton, Dickinson & Co.*,
  No. 19 C 4158, 2020 WL 887460 (N.D. Ill. Feb. 24, 2020) ..................................14

*In re Initial Pub. Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. 2010)...................................................................20

*In re Mex. Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................19

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................12, 17, 22

*Kloss v. Acuant, Inc.*,
  No. 19 C 6353, 2020 WL 2571901 (N.D. Ill. May 21, 2020) ...............................14

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................................17

*Namuwonge v. Brookdale Sr. Living, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. Nov. 22, 2019) ....................................................14

*Quick v. Shell Oil Co.*,
  404 Ill. App. 3d 277 (3rd Dist. 2010) ..................................................................12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................15

*Shaun Fauley, Sabon, Inc. v. Metro. Life Ins. Co.*,
  2016 IL App (2d) 150236 ....................................................................................20

*Steinberg v. Sys. Software Assocs, Inc.*,
  306 Ill. App. 3d 157 (1st Dist. 1999) ...................................................................13

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*.,
    396 F.3d 96 (2d Cir. 2005)......................................................................25

## **Statutes**

735 ILCS 5/2-803 ....................................................................................11

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*…………...…*passim*

## **Other Authorities**

A. Conte & H. Newberg, *Newberg on Class Actions*, § 11.42 (4th ed. 2002)............................20

Illinois SB 3591 (Barickman) ....................................................................18

Illinois SB 3592 (Barickman)…………………………………………………18

HB 5375 (Durkin)…………………………………………………………..18

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## I.   __INTRODUCTION__

Class Representative Alex Prelipceanu ("Plaintiff" or "Class Representative") respectfully requests that the Court grant final approval of the Parties' Class Action Settlement Agreement.[1] This Settlement is, by any measure, an excellent result for the Class. The Settlement creates a $7 million non-reversionary cash fund, which will result in the payment of hundreds of dollars to each of thousands of valid claimants—a substantial recovery for Settlement Class Members who will also benefit from the significant prospective relief that will be implemented as a result of the Settlement. This Settlement brings certainty, closure, significant cash compensation, and substantive and valuable prospective relief for Class Members, ending what otherwise would be contentious and costly litigation over the liability of Defendant Jumio Corporation ("Defendant") for its alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). It is no surprise, therefore, that the Settlement has been met with overwhelming approval by the Settlement Class Members. Direct notice was sent to the Class Members and over 14,000 claims have been submitted with only one objection received.

The single objector, Ashley Allen, raises concerns that stem chiefly from her discontent with a single term of the Settlement Agreement relating to the scope of the release, and importantly, Ms. Allen has made clear that she has no objection whatsoever to any of the other substantive and heavily negotiated terms of the Settlement, including the monetary benefits being made available, the notice, the prospective relief, or the attorneys' fees being sought.  In fact, Ms. Allen specifically states that she "has no objection to settling her claims against Jumio Corporation on the terms presented." (Objection at 1). As discussed in more detail below, Ms. Allen's sole objection, which

---

[1] Unless otherwise defined herein, capitalized terms used herein have the same meaning given to them as in the Parties' Class Action Settlement Agreement, attached hereto at __Exhibit 1__.

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

is utterly lacking in merit, is limited to the scope of the release contained in the Settlement Agreement. Over 14,000 Class Members disagree with her. Given the large number of "professional objectors" who seek out class settlements – as well as objectors who are represented by attorneys who simply want to protect their own separate class actions – and the regularity with which class settlements are met with objection, the presence of only a single objection and the low number of opt outs here where such a large class received *direct* notice is a testament to the fairness and adequacy of this Settlement.

The Settlement that Class Counsel achieved is particularly strong given the significant compensation being provided to each Class Member with a valid claim, coupled with substantial prospective relief. Had this Settlement not been reached, there was a real possibility that Settlement Class Members would not have received any relief whatsoever. To that end, Defendant remains prepared to vigorously defend this case on the merits and at class certification. While Plaintiff believes he would be able to achieve class certification and prevail on the merits at trial, success is not assured, and if this case continued to be litigated, it is very possible that Defendant would prevail. In short, the Settlement reached in this matter has received overwhelming support from the Settlement Class Members and will result in significant monetary and non-monetary relief if finally approved. Indeed, it will be the largest BIPA settlement ever finally approved.

This Court preliminarily approved this Settlement on December 23, 2019 and specifically noted that the settlement provided very significant benefits for the Class. After direct notice was sent by U.S. Mail to tens of thousands of Class Members, and after 14,000 Class Members submitted claim forms with only a single objection, the Court should reach the same conclusion now: the Settlement meets or exceeds applicable standards; it is fair, adequate, and reasonable; and the Court should grant final approval of the Settlement, overrule Ms. Allen's objection, and

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

approve Plaintiff's unopposed request for attorneys' fees, expenses, and the Incentive Award sought in the February 5, 2020 motion previously filed by Plaintiff and Class Counsel.

## II.   __BACKGROUND__

### A.   **The Biometric Information Privacy Act ("BIPA")**

BIPA is an Illinois statute that regulates the collection, possession, storage, and disclosure of biometric information. To effectuate its purpose, BIPA requires private entities that seek to collect or otherwise obtain "biometric identifiers" (e.g., fingerprints and handprints) and "biometric information" (any information gathered from a biometric identifier which is used to identify an individual)[2] to:

> (1)    inform the person whose biometrics are to be collected in writing that biometrics will be collected or stored;

> (2)    inform the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

> (3)    receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics; and

> (4)    publish a publicly available retention schedule and guidelines for permanently destroying any biometrics that are stored. 740 ILCS 14/15.

BIPA was enacted in large part to protect the privacy rights of individuals, to provide them with a means of enforcing their rights, and to regulate the practice of collecting, using, and disseminating such sensitive and irreplaceable information.

---

[2] "Biometric identifiers" and "biometric information" are collectively referred to herein as "biometrics."

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

**B.    The Case and Procedural History**

1.    *Plaintiff's Allegations*

In this case, Plaintiff alleges that Defendant utilizes biometric software that collects consumers' biometric information in the form of facial geometry scans for identity and/or age verification purposes. (First Amended Complaint, "FAC," Dkt. 18, ¶ 3). Plaintiff alleges that use of such software in Illinois is subject to regulation by BIPA. (FAC, ¶ 5). Plaintiff further alleges that Defendant has failed to comply with BIPA by: (1) failing to inform individuals prior to capturing their biometrics that it will be capturing such information; (2) failing to receive a written release for the capture of biometrics prior to such capture; (3) failing to inform the person whose biometrics are being captured of the specific purpose and length of term for which such biometrics are captured, and; (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometrics. (FAC, ¶ 59).

2.    *Procedural History and the Parties' Settlement Negotiations*

On December 21, 2018, Plaintiff filed his original Class Action Complaint against Defendant in the Circuit Court of Cook County, Illinois, captioned *Prelipceanu v. Jumio Corp.* Case No. 18-CH-15833. Defendant thereafter hired competent and experienced defense counsel who removed this action to the U.S. District Court for the Northern District of Illinois on January 28, 2019. *See Prelipceanu v. Jumio Corp.*, No. 19-cv-00561, Dkt. 1-1 (N.D. Ill. 2019). On March 29, 2019, Defendant filed a Motion to Dismiss, seeking to dismiss the Complaint based on a number of arguments, including that the Complaint did not show that the conduct at issue occurred primarily and substantially in Illinois, as some courts have found that BIPA does not apply extraterritorially; that express exemptions in BIPA barred Plaintiff's claim; and that Jumio's publicly-available privacy policy is BIPA-compliant. (Dkts. 14-16). In response, on April 15,

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

2019, Plaintiff filed his First Amended Complaint. (Dkt. 18). On May 17, 2019, Defendant filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint (Dkt. 20), asserting multiple defenses, including the following:

- BIPA does not apply due to various exclusions in the statute, including that the statute permits disclosure of biometric identifiers or biometric information to complete a financial transaction requested or authorized by the subject and does not apply in any manner to entities and affiliates that are subject to Title V of the federal Gramm-Leach-Bliley Act of 1999;

- BIPA does not apply extraterritorially, and therefore does not apply to some or all of the alleged activities of Jumio, a company based in California and incorporated in Delaware, and its customers, who operate globally;

- If applied to Jumio's conduct in a way that has the practical effect of regulating conduct occurring entirely outside of Illinois, then BIPA violates the Dormant Commerce Clause and is unconstitutional;

- Some or all potential class members' claims are barred for multiple reasons, including that some potential class members agreed to arbitration, class action waiver, or exclusive choice of law or venue provisions in their agreements with Jumio and/or its customers;

- Jumio's publicly-available privacy policy substantially complies with BIPA;

- Notices provided to class members substantially comply with BIPA; and

- The case is not certifiable as a class action for multiple reasons.

(Dkt. 20).

Thereafter, in light of the uncertainties and potentially significant expenses involved in extensive discovery and litigation and the evolving state of the law surrounding BIPA, the Parties agreed to engage in a private mediation. Counsel for Plaintiff and for Defendant expended significant efforts to reach a settlement, including but not limited to exchanging documents and information regarding Defendant's biometric software and identifying potential class members.

Plaintiff's counsel met with Defendant's counsel, as well as Defendant's corporate

5

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

representative, for a full-day, highly-contentious mediation with the Hon. James F. Holderman (ret.) of JAMS Chicago, the former Chief Judge for the U.S. District Court for the Northern District of Illinois, who possesses significant expertise in class settlements, including many BIPA settlements.

The Parties were unable to memorialize a final settlement in their full-day mediation with Judge Holderman but agreed to continue their efforts to try to do so. Counsel for Plaintiff and for Defendant then continued to expend significant further efforts over the course of the next four months to advance settlement discussions. These efforts included negotiating specific terms of the Settlement, including the forms of notice that were to be disseminated through the notice program, the scope of the release, the nature and feasibility of various aspects of the prospective relief, and the distribution of monetary settlement benefits. These negotiations between Plaintiff's Counsel and Defense Counsel involved multiple meetings conducted telephonically and required the further involvement of Judge Holderman on several occasions to resolve negotiations as to the specific terms of the Settlement. Eventually, these extensive negotiations culminated in the Settlement Agreement that the Court preliminarily approved.

In light of ongoing challenges and uncertainty surrounding a federal court's jurisdiction over BIPA cases – including whether and when a plaintiff has Article III standing under BIPA – and to avoid any potential derailing of the Settlement based on such Article III issues, the Parties stipulated to remand the federal lawsuit to the Circuit Court of Cook County, Chancery Division, where it was originally filed. On December 2, 2019, the case was remanded from federal court and appears on the docket as *Prelipceanu v. Jumio Corp.*, Case No. 18-CH-15883 (Cir. Ct. Cook Cnty.). Shortly thereafter, Plaintiff presented the Settlement Agreement to this Court, which granted Preliminary Approval on December 23, 2019. The Parties now seek final approval of the

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

class action settlement.

## III.   THE PROPOSED SETTLEMENT

The terms of the Settlement already preliminarily approved by the Court are contained in the Settlement Agreement, and are briefly summarized below:

### A.   The Settlement Class

The Settlement establishes a Settlement Class defined as follows:

> "All individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries, or agents, or their technology, at any time between December 21, 2013 and December 23, 2019."

(Ex. 1, ¶ 2.2).

### B.   The Settlement Fund

The Settlement establishes a non-reversionary Settlement Fund of $7,000,000.00 (Seven Million Dollars). (Ex. 1, ¶ 3.2). Each valid claimant will be entitled to an equal *pro rata* share of the Settlement Fund after payments are first deducted for notice and administration costs, attorneys' fees and costs, and an incentive award payment to Plaintiff. (Ex. 1, ¶¶ 3.3, 6.1, 7.3). The total payment to each Settlement Class Member will depend on the number of valid Claim Forms submitted. There have been approximately 14,000 valid claims filed, although all of the claims have not yet been vetted by the Settlement Administrator. Presently, Plaintiff's Counsel estimate that each Settlement Class Member who filed a valid claim will receive a check for nearly $300.

### C.   Additional Relief

The Settlement also provides a wide range of prospective relief to the Settlement Class. Specifically, pursuant to this Settlement, Defendant has agreed that it will: (1) obtain informed consent from persons in Illinois in compliance with BIPA's requirements; (2) use commercially

FILED DATE: 7/7/2020 8:22 PM 2018CH15883

reasonable methods to cause its customers to obtain individuals' consent in compliance with BIPA; and (3) require in its standard contracts with its clients that are subject to BIPA that Defendant's products may be used only in compliance with all applicable laws and regulations. (Ex. 1, ¶ 3.1). Defendant has raised defenses arguing that BIPA does not apply to its actions at all, so there is substantial value to this Settlement binding Defendant to these steps, and this prospective relief will benefit not only the Settlement Class Members, but also the public at large going forward.

### D.    Notice and Settlement Administration

The claims at issue in this litigation primarily consist of Defendant's alleged violations of BIPA with respect to consumers in Illinois, including consumers of its commercial customers. Since Defendant's services are available exclusively online and accessed by consumers through laptops, smartphones and other mobile technology devices in various locations, a broad outreach was required to reach all potential class members. To inform as many potential class members as possible, a robust three-part notice plan spanning multiple forms of media was implemented in accordance with the Preliminary Approval Order. The first part of the notice program resulted in direct individual notice sent by U.S. Mail to almost 170,000 potential Settlement Class Members. (*See* Declaration of Settlement Administrator, Susanna Webb, attached hereto as Exhibit 2). The second part of the notice program consisted of internet advertisements through Google's ad network, which began running shortly after Preliminary Approval was granted and which ran through March 22, 2020. These online notice advertisements resulted in over 14,700,000 unique impressions through March 22, 2020. (Ex. 2, ¶ 6). The second portion of the notice program also included notice of the Settlement on Defendant's own website, which remains on Defendant's website as of this filing. Finally, part three of the notice program consisted of advertisements in three of the most highly circulated newspapers in Illinois: the Chicago Tribune; the Redeye (a free publication from the Chicago Tribune directed at individuals aged 18-34 years old); and the Peoria

Journal Star. (*Id.*, ¶ 6). Additionally, these notices also ran on the Chicago Tribune and Peoria Journal Star websites, which led to an additional 180,000 impressions. (*Id.*, ¶ 5). In accordance with the Settlement Agreement and the Preliminary Approval Order, a Settlement Website was also created to allow consumers to view and download case documents, including Claim Forms, the Settlement Agreement, a detailed Long Form Notice, and the Motion for Attorneys' Fees. (*Id.*, ¶ 7). Class Members were also able to submit Claim Forms and opt out requests through the Settlement Website, by electronic mail, and by U.S. mail.

### E.    Exclusion and Objection Procedure

Settlement Class Members had an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections (Ex. 1, ¶¶ 8-9) were identified in the notices directly sent to Settlement Class Members, as well as in the Long Form Notice available on the Settlement Website. The notices informed Settlement Class Members that the Final Approval Hearing would be their opportunity to appear and have their objections heard. The notices also informed Settlement Class Members that they would be bound by the Release contained in the Settlement Agreement unless they exercised their right to exclusion in a timely manner. The deadline for Settlement Class Members to file objections or to exclude themselves was February 26, 2020. Only one objection was made, and only 94 Class Members – a very small percentage of the Settlement Class – excluded themselves. (*See* Ex. 2, ¶ 10; Declaration of Evan M. Meyers, attached hereto as Exhibit 3, at ¶ 10).

### F.    The Release and Ashley Allen's Objection

In exchange for the relief described above, and as set forth in more detail in the Settlement Agreement, Settlement Class Members who did not exclude themselves will provide Defendant, and its affiliated entities and other Released Parties a release of all claims, including BIPA claims,

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos. (Ex. 1, ¶¶ 1.24-1.27, 10-11).

The only objection to the Settlement was made by Ms. Allen and relates to the scope of the Release contained in the Settlement Agreement. In Ms. Allen's opinion, the Release – which is but one term of a comprehensive complex agreement, and which was negotiated at arms-length over several months with the repeated involvement of a retired federal judge – is ambiguous, because Plaintiff's Counsel and Defendant's Counsel do not seem to agree on its scope. (Objection at 7). She asserts that by covering Defendant's customers for their use of Jumio's "NetVerify" service – the precise subject matter of *this* lawsuit – the Settlement could have the effect of releasing "thousands of other claims against Jumio's customers for their own collection of biometric data for absolutely nothing." (Obj. at 1). Ms. Allen is wrong: all released claims are being released for valuable cash consideration and prospective relief; the only BIPA claims Class Members are releasing are specifically defined; and the objection should be overruled for the reasons explained in Section IV.C., below.

## IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL

Upon final approval, the Settlement reached in this matter will provide Settlement Class Members who submitted a timely, valid claim with nearly $300 each in cash awards (in addition to substantial prospective relief) that they otherwise likely would not, or could not, have obtained. In addition, thanks to the Notice Plan implemented by the Parties, which included direct notice by U.S. Mail, nearly 170,000 Settlement Class Members were directly informed of their rights under the Settlement and over 14,000 claimed their cash awards. Because the Settlement reached by the

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

Parties is fair, reasonable, and provided adequate compensation to the Settlement Class Members, and because the Notice Plan effectively notified Settlement Class Members of their rights under the Settlement Agreement, this Settlement warrants final approval by the Court.

### A. The Notice Plan Successfully Informed Settlement Class Members About Their Rights Under the Settlement Agreement.

Because class actions by their nature involve a class representative acting on behalf of a larger class of consumers, critical to any class action settlement is that class members are effectively informed of the settlement and their rights and options thereunder. Accordingly, "[a]fter determining that a lawsuit may proceed on a class-wide basis, through settlement or otherwise, a court may order such notice as it deems necessary to protect the interests of the class." 735 ILCS 5/2-803.

Here, in preliminarily approving the Settlement, the Court approved the robust Notice Plan outlined in the Settlement Agreement, which provided for direct notice by U.S. Mail to Class Members, publication notice over the internet through banner advertisements and Defendant's website, and publication notice through print and online newspaper advertisements. (Ex. 1, ¶¶ 72-74). The direct mailing contained a direct link to the online Settlement Website, along with an explanation of the Settlement Class Members' rights under the Settlement Agreement and how they could also easily file a claim online. (*See* Ex. 2, Ex. A).

Additionally, the Settlement Website contains all of the information related to the Settlement, including key dates and deadlines (*e.g.*, claims deadline, objection deadline, final approval hearing date and time, etc.), relevant court documents (*e.g.*, the Settlement Agreement, the Motion for Preliminary Approval, and the Motion for Attorneys' Fees), contact information for Class Counsel, and most importantly, an easily-accessible online Claim Form that Settlement Class Members used to submit their claims through U.S. mail, email, and also directly through the

Settlement Website. In addition, the Settlement Website includes the detailed Long Form Notice and specific instructions for opting out or filing objections.

As directed by the Court in its Preliminary Approval Order, the Notice Plan was implemented on January 27, 2020. Upon implementation, the Notice Plan proved to be extremely successful at informing potential Settlement Class Members of the Settlement in this matter. Given the significant number of individuals who received direct notice, and the large number of claims submitted – over 14,000 – there is little doubt that the Notice Plan implemented by the Parties was more than sufficient to properly notify the Settlement Class Members of the Settlement and their rights and options thereunder and satisfied Due Process considerations. (Ex. 2 ¶¶ 9-10.)

**B.     All Factors Favor Final Approval.**

Final approval of the Settlement is warranted here, not only because the Settlement Class Members were sufficiently notified of their rights and options under the Settlement, but also because the Settlement itself meets all of the applicable criteria for final approval. There is a strong judicial and public policy favoring the settlement of class action litigation, and a settlement should be approved by the Court after determining that the settlement is "fair, reasonable, and adequate." *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 282 (3d Dist. 2010); *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996).

In determining whether a settlement is fair, reasonable, and adequate, Illinois courts consistently apply an eight-factor evaluation, also known as the "*Korshak* factors." *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990). The factors ultimately to be considered by a court are: "(1) the strength of the case for the plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed." *Korshak*, 206 Ill. App. 3d at 972; *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). Of these considerations, the first is most important. *Steinberg* v. *Sys. Software Assocs., Inc.*, 306 Ill. App. 3d 157, 170 (1st Dist. 1999); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Because each of these factors supports a finding that the Settlement here is "fair, reasonable, and adequate," the Court should grant final approval of the Settlement.

1. *The Settlement provides significant benefits to the Settlement Class, particularly given the uncertain outcome of litigation.*

The first factor, the strength of the Class Representative's case on the merits, balanced against the relief obtained under the Settlement, "is the most important factor in determining whether a settlement should be approved." *Steinberg*, 306 Ill. App. 3d at 170. The Settlement in this case provides significant benefits to the Settlement Class, as every Settlement Class Member who submits a valid, approved claim will receive nearly $300 in cash. With over 14,000 claims submitted, Plaintiff and Class Counsel have obtained an excellent result for the Settlement Class. This is especially true given the significant legal obstacles that the Plaintiff and the Class would undoubtedly have encountered in attempting to achieve a similar result through litigation, and the significant likelihood of no recovery whatsoever.

While Plaintiff might have prevailed on the merits of his BIPA claims at trial, success was far from assured and Defendant was, and is, prepared to vigorously defend this case. If Defendant were to succeed on any of its defenses to liability against Plaintiff's individual claims, Settlement Class Members would recover nothing. As Ms. Allen acknowledges, NetVerify operates on the "back end," meaning that Settlement Class Members only interact with Jumio through its

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

customers. This gives rise to a strong defense that Defendant cannot be held liable under BIPA at all. *See, e.g.*, *Cameron v. Polar Tech Indus., Inc., et al.*, No. 2019-CH-000013 (Dekalb Cnty. Ill. Cir. Ct.) (dismissing all BIPA claims against a third-party technology provider including Section 14/15(b) BIPA claims against a third-party technology vendor with prejudice); *Namuwonge v. Brookdale Sr. Living, Inc.*, et al, No. 19-cv-03239 (N.D. Ill. Nov. 22, 2019) (same with respect to Section 14/15(b) & (d) BIPA claims); *Heard v. Becton, Dickinson & Co.,* Case No. 19 C 4158, 2020 WL 887460, at * 4 (N.D. Ill. Feb. 24, 2020) (dismissing Section 14/15(a), (b) and (d) claims against third-party technology provider); *Kloss v. Acuant, Inc.*, No. 19 C 6353, 2020 WL 2571901, at *3 (N.D. Ill. May 21, 2020) (dismissing Section 14/15(b) and (c) claims where the plaintiff did "not allege her relationship to [the defendant which allowed it] to acquire her biometric information, *i.e.* whether she had a direct relationship with [the defendant] or with one of the private companies that used [its] software"). Defendant has many other strong defenses on the merits, as well. *See* Plaintiff's Motion & Memorandum of Law In Support of Approval of Attorneys' Fees, Expenses, & Incentive Award at 11-12 (discussing defenses based on the exception to BIPA for photographs, financial transactions, and transactions subject to the Gramm-Leach-Bliley Act, as well as based on substantial compliance, consent, the dormant Commerce Clause of the U.S. Constitution, limitation of liability, due process, ratification and acquiescence, statute of limitations, and standing). If Defendant were to succeed on any of its defenses to liability, Settlement Class Members would recover nothing.

In addition to the defenses on the merits Defendant has raised and would continue to advance, Plaintiff would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success would certainly not be guaranteed. *See Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011). "Settlement allows the class

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Id*. at 586 (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. For example, Defendant's customers have varying disclosures on their websites regarding Defendant's NetVerify service, some or all of which may comply with BIPA's requirements. Additionally, many Settlement Class Members agreed to binding arbitration agreements with Defendant's customers and Defendant may be a third-party beneficiary to those agreements. Many of Defendant's customers are also potentially subject to the Gramm-Leach-Bliley Act ("GLBA"), which would render them (and, hence, Defendant) exempt from BIPA. All of these issues could pose significant obstacles to class certification.

Final Approval would allow Plaintiff and over 14,000 Settlement Class Members to receive substantial monetary compensation in the amount of nearly $300 now, and it would allow all Settlement Class Members to benefit from the extensive prospective relief set forth in the Settlement—instead of engaging in litigation for years and substantial risk of receiving nothing at all in the end. *See Schulte,* 805 F. Supp. 2d, at 582.

In the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Not only would the Parties have to undergo significant motion practice before any trial on the merits could even be contemplated, but evidence and witnesses from across the country would have to be presented during any trial. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits (at summary judgment and/or trial), as well as any decision on class certification, especially given that the applicable limitations period under BIPA is untested, as is the amount of damages available to individuals. As such, the immediate and

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

considerable relief provided to the Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn out litigation, trial, and appellate process. This entire process, with uncertain results and high risk to all involved, would likely take several years to complete.

Weighing the strength of Plaintiff's claims and the potential risks inherent in continued litigation against the significant immediate benefit provided to the Settlement Class Members if this Settlement is finally approved, the first *Korshak* factor strongly supports granting final approval of the Settlement. The Settlement Fund created here, which provides substantial and meaningful financial benefits to the Settlement Class Members, coupled with the prospective measures implemented by Defendant in response to this litigation, exceeds the applicable standards of fairness. Therefore, given the amount of monetary and prospective relief provided by the Settlement, and the significant risk of not obtaining any recovery whatsoever if litigation were to proceed, the Court should find that this first factor is satisfied here.

2.      *Defendant is able to satisfy its obligations under the Settlement Agreement.*

Absent settlement, Defendant would likely incur significant litigation expenses if this matter continued through trial. Any judgment finally entered against Defendant in this case would likely be much larger than its exposure from the Settlement and could constitute a crippling loss to Defendant, as Defendant is a young company and BIPA provides for statutory damages of $1,000 per negligent violation, with the appropriate application of such damages in the BIPA context having not yet been addressed by a court. Resolving this matter now preserves these financial resources for notice and distribution to the Class Members, while also providing a very substantial and meaningful recovery for Class Members. Under the terms of the Settlement, Defendant is able to establish the Settlement Fund that will be used to pay out all valid claims

16

submitted, along with all other fees and expenses, including the Settlement Administrator's fees and expenses in implementing the Notice Plan and reviewing submitted claims. (Ex. 1, ¶ 48). Accordingly, this factor also supports granting final approval.

        3.     *Continued litigation would necessitate the resolution of complex and novel legal issues, as well as continued, extensive discovery.*

The third factor, the "complexity, length and expense of further litigation," *Korshak*, 206 Ill. App. 3d at 972, also weighs heavily in favor of final approval of the Settlement. As the *Korshak* court observed, a "fair and reasonable settlement" is preferred over continued litigation which would leave any potential recovery "in limbo." 206 Ill. App. 3d at 973; *see also Isby*, 75 F.3d at 1199–1200 (affirming the final approval of a settlement where continued litigation "would require the resolution of many . . . complex issues" and "entail considerable additional expense"). Indeed, when comparing the "significance of immediate recovery" versus the "mere possibility of relief in the future, after protracted and expensive litigation . . . [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

As explained above, litigating this matter would involve significant expense and prolonged additional discovery. Any decision on the merits favorable to Defendant would be appealed by Plaintiff, and vice versa, further delaying any final resolution of the matter and significantly increasing expenses for the Parties. Even if Plaintiff were to ultimately succeed in defeating any dispositive motions brought by Defendant, he would still have to prevail on his motion for class certification. And any such motion for class certification would not only be heavily contested, but would also require additional, extensive discovery efforts by the Parties.

Furthermore, the current status of BIPA jurisprudence is rapidly evolving, presenting highly novel and complex issues which put both Plaintiff and Defendant at risk on the merits. For

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

example, Defendant has raised many affirmative defenses, including defenses based on the exception to BIPA for photographs, financial transactions, and transactions subject to the GLBA, as well as based on substantial compliance, consent, the dormant Commerce Clause of the U.S. Constitution, limitation of liability, due process, ratification and acquiescence, statute of limitations, and standing. Not only were these defenses presented, but Defendant was and remains prepared to litigate and potentially succeed with them. There is also continuing uncertainty with respect to BIPA's limitations period, the calculation of damages under the Act, and the application of the statute to different technologies. This Settlement was thus entered into in the context of, and as a result of, significant uncertainty and risk. Additionally, there is at least one currently-pending appeal in the First District which seeks to upend the current jurisprudence holding that a 5-year statute of limitations applies to BIPA. Should the appellate court find that a one or two-year statute of limitations applies to BIPA claims, rather than the five-year Class Period contemplated by the Settlement Agreement, a significant portion of the Class currently set to receive material benefits from the Settlement could be permanently barred from *any* relief. Lastly, there remains an increasing possibility that BIPA will be amended in ways detrimental to the Class Members' claims. Just this year, six bills were introduced in the Illinois House of Representatives seeking to amend BIPA, including by limiting or eliminating BIPA's private right of action. Should one of those bills become law, it is possible, if not likely, that a very large percentage of the Class would have their claims forever and immediately limited or extinguished by the Illinois Legislature, potentially leaving them with nothing. *See e.g.* Illinois SB 3591 (Barickman); Illinois SB 3592 (Barickman); HB 5375 (Durkin).

Given the complexity of the claims at issue, and the significant expenses that would result from having this case proceed with additional class discovery, dispositive motion briefing, adverse

class certification, trial, and any potential appeals, this factor heavily favors granting final approval. In contrast to how long litigation would take, final approval will permit the Settlement Class Members to promptly receive their significant cash benefits and allow the Parties to avoid any further expenses and reach a final resolution of their dispute.

           4.       *The Settlement Class Members have overwhelmingly supported the Settlement; Ms. Allen filed the <u>only</u> objection to the Settlement and there have been few opt outs.*

     Looking at the fourth and sixth *Korshak* factors – as they are "closely related," *Korshak*, 206 Ill.App.3d at 973 – it is clear that final approval of the Settlement is not only in the best interest of the Parties, but is also overwhelmingly supported by the Settlement Class Members. Here, over 14,000 Settlement Class Members have filed claims and are eagerly awaiting final approval of this Settlement and their receipt of hundreds of dollars each. Despite direct notice to nearly 170,000 potential class members, only 94 Settlement Class Members have chosen to opt out of the Settlement, and <u>no</u> Settlement Class Members have even informally complained to Class Counsel about the relief provided by the Settlement or the attorneys' fees or incentive award being sought. (Meyers Decl., ¶¶ 12). The comprehensive scope of the Notice Plan and the substantially large number of claims demonstrates that the Settlement Class Members overwhelmingly support this Settlement.

     The fact that there is only one objector challenging the Settlement despite nearly 170,000 Class members receiving direct notice is particularly noteworthy and strongly supports a finding that the Settlement is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin*., 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *see also In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlements and finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

settlements . . . is strong circumstantial evidence in favor of the settlements"). This is especially the case given the frequency with which "professional objectors" seek out such settlements and file generic objections even where there is no legitimate basis. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 n.37 (S.D.N.Y. 2010) (collecting authorities and noting that "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements" and that "courts are increasingly weary of professional objectors: some of [which are] obviously canned objections filed by professional objectors") (internal citations omitted). Here, 99.9% of the Class Members neither opted out, nor filed any objection to the proposed Settlement.

5.  *The Settlement was a result of formal, arms-length negotiations involving counsel for all Parties and an experienced mediator.*

With respect to the fifth factor, this Settlement was not reached as a result of any "collusion" between the Parties. There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. A. Conte & H. Newberg, *Newberg on Class Actions*, § 11.42 (4th ed. 2002); *see also Shaun Fauley, Sabon, Inc. v. Metro. Life Ins. Co.*, 2016 IL App (2d) 150236, ¶ 21 (finding no collusion where there was "no evidence that the proposed settlement was not the product of 'good faith, arm's-length negotiations'").

Here, the Parties agreed to engage in a formal mediation in Chicago in July 2019. The Settlement was reached only after highly-contested, arms-length negotiations that were overseen by Judge Holderman – former Chief Judge of the Northern District of Illinois and mediator of numerous BIPA class settlements – with such negotiations followed by multiple months of further communications and negotiations before finalization of the Settlement. (*See* Declaration of Hon. James Holderman (Ret.), attached hereto as <u>Exhibit 4</u>).  Such an extensive and formal process underscores the non-collusive nature of the proposed Settlement.

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

Further evidencing the non-collusive nature of the proposed Settlement is the significant discovery that took place, including both written and oral discovery, and the numerous months of negotiations regarding the final form of the Settlement Agreement and attendant documents, even after an agreement in principle had been reached. Moreover, the significant monetary relief to be provided to Settlement Class Members following final approval also demonstrates the absence of collusion. It cannot be said that the Parties colluded in reaching this Settlement when $7,000,000 will be fully paid out to resolve this litigation. This Settlement was in no way the product of collusion and, as such, this factor weighs in favor of granting final approval.

6. *Class Counsel have significant experience in prosecuting similar class actions and believe that the Settlement is fair, reasonable, and adequate.*

Class Counsel have regularly engaged in complex litigation on behalf of consumers and have regularly been appointed as class counsel in numerous complex consumer class actions, including similar class actions involving violations of BIPA and other data privacy-related statutes, in state and federal courts across the country, including many cases in the Circuit Court of Cook County. (Meyers Decl., ¶¶ 4-6). Accordingly, given their extensive experience litigating and settling similar class actions across the country, Class Counsel are competent and qualified to provide their opinion as to the strength of the Settlement achieved.

In light of their experience in having settled numerous similar cases, Class Counsel strongly believe that final approval of the Settlement is in the best interests of Settlement Class Members. (*Id.,* ¶¶ 11-12). Final approval of the Settlement will avoid any risks and delays associated with allowing the litigation to move forward and will provide the Settlement Class Members with immediate relief. Moreover, the benefits provided under the Settlement are significant among BIPA settlements like this one, providing an outstanding recovery of hundreds of dollars in cash benefits for each valid claim submitted. Equally important, the Settlement also

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

provides for meaningful prospective relief that will help prevent any further illegal capture, collection or use of biometrics of the Settlement Class Members and other similarly situated individuals.

Given the defenses that Defendant would raise, and the resources that Defendant has committed to defending and litigating this matter through appeal, Class Counsel are confident that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. (*Id.*, ¶ 11). This factor also strongly favors granting final approval of the Settlement

> 7. *The stage of litigation and amount of discovery completed has ensured that the Settlement is fair, reasonable, and adequate.*

Finally, the last factor also supports final approval because this Settlement was reached only after significant investigation by Class Counsel and contentious negotiations between the Parties. The Parties engaged in both written and oral discovery and participated in a full-day mediation and multiple additional telephonic conferences with Judge Holderman. The Parties also engaged in prolonged negotiations over the final form of the Settlement that extended for multiple months. *See Isby*, 75 F.3d at 1200 ("Approval of a settlement is proper where discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough.").

This case was originally filed on December 21, 2018 – over eighteen months ago – but Class Counsel's investigation of Plaintiff's claims and Defendant's biometric practices began well before that. Both before and after the Parties entered into the Settlement Agreement, the Parties exchanged information regarding the scope and nature of Defendant's biometric practices, continuing through the mediation and in the months thereafter while the Settlement was being negotiated and finalized. Class Counsel became well informed as to the data, technology, policies, procedures and other critical information necessary to "evaluate the merits of the case and assess

the reasonableness of the settlement." *Korshak*, 206 Ill.App.3d at 974. The Parties' exchange of information included both formal and informal discovery, including documents requests and a deposition, as well as the receipt and review of thousands of documents produced by Defendant. In short, the final executed Settlement was only reached after sufficient investigation and discovery was conducted to accurately determine the nature and scope of Defendant's biometric practices, further favoring final approval.

### C. Ms. Allen's Objection Should Be Overruled.

As an initial matter, if Ms. Allen is personally unsure as to the scope of the Release, or if she disagrees with its scope and would prefer not to have any of her own hypothetical claims against Defendant's customers released, then the best, most effective, and most appropriate course of action would have been for Ms. Allen to exclude herself from the Settlement. Upon exclusion, Ms. Allen would then have been able to proceed with any claims she believed she might have against any entities. She chose not to do so. Instead, she attempted to disrupt the substantial prospective relief set forth in the Settlement and the payment of millions of dollars in monetary benefits to thousands of Settlement Class Members who have approved of this Settlement and filed claims. While Ms. Allen filed her objection before the economic disaster that has resulted from COVID-19, her ongoing objection now threatens to prevent the distribution of millions of dollars to thousands of people during this pandemic.

Ms. Allen's lone concern with a single term in the Settlement is misplaced. While Ms. Allen insists that she merely wants to "clarify" the terms of the Release, the reality is that she is asking the Court to reject a Settlement that is otherwise universally well-received and understood by over 14,000 individuals. The terms of the Settlement need no clarification; there is no dispute among the Parties as to the meaning of the Release, and its language is facially clear,

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

straightforward, and reasonable.[3]

As clearly laid out in the Settlement Agreement, the Release unambiguously covers claims "with respect to" Jumio's treatment of biometric data and data derived from photographs, "including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members." Ex. 1, ¶¶ 1.25, 1.27. "Released Parties" includes Jumio and its customers. *Id.* ¶ 1.25.

Again, the Parties are not in disagreement as to the meaning of the Release. As explained above, the language of the Release was negotiated in a highly contested manner over many months and included the repeated involvement of Judge Holderman. (*See* Ex. 4., Holderman Decl.). The terms of the Release under the Settlement are clear, unambiguous, and eminently reasonable: Defendant's customers will be released from all claims which arise from Jumio's collection of biometric data. The Release is limited to its terms, so Ms. Allen's reading of the Release as being "ambiguous" is incorrect. This Release was of the upmost importance to Defendant as a way to ensure that it was obtaining peace through the Settlement and so that it would not be hauled into court in the future based on indemnification claims from BIPA lawsuits against its customers relating to the use of NetVerify software. In short, without the Release, as negotiated and as written, there would be no Settlement and the over 14,000 individuals who filed claims would not now be entitled to hundreds of dollars.

Indeed, counsel for Ms. Allen have negotiated and agreed to release language that is similar to, if not far broader, than the language at issue here. For example, as Ms. Allen notes in her

---

[3] The best evidence of the scope of the Release is, of course, the Settlement Agreement itself, the precise language of which the Parties agreed to and have submitted to this Court for final approval. Emails between Ms. Allen's counsel and Class Counsel in which Ms. Allen's counsel attempts to elicit self-serving statements regarding the scope of the Release do not alter the terms of the Settlement Agreement in any way.

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

Objection, counsel for Ms. Allen are among several law firms that represent the plaintiffs in *In re Facebook Biometric Privacy Litigation*. (*See* Obj., n. 2). The parties in that case, including counsel for Ms. Allen, recently filed a motion for preliminary approval of a proposed settlement agreement reached in that case. The release proposed in that case releases over *forty* categories of entities and, like here, does not identify any of them by name.[4] Indeed, it is eminently appropriate and exceedingly common for "there to be many unnamed entities which receive a release for the same underlying conduct." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).

Ms. Allen – who specifically takes no issue whatsoever with any of the other terms of the Settlement – asserts that she does not want to prevent the granting of final approval of the Settlement, but rather wants the Court to approve the Settlement only with alternative release language to which the Parties did not agree (and, in Jumio's case, would not have agreed). (Obj. at 8-9). Ms. Allen attempts to explain that this proposed alternative language is merely a "clarification," but in reality, it is a material <u>modification</u> to the Settlement Agreement because it would specifically exclude Defendant's customers from receiving effectively *any* release under the terms of the Settlement—including any release relating to the conduct at issue in this lawsuit (that is, relating to Defendant's own conduct). In short, Ms. Allen would prefer that this Settlement not release any of Defendant's customers for any conduct. The Settlement does include a release of certain such claims, and as a highly-negotiated term, it is reasonable for it to do so. Again, if Ms. Allen does not want to release any hypothetical claims she might have against any of the Released Parties, then the proper course of action would have been to exclude herself from the

---

[4] *See* Stipulation of Class Action Settlement at 10, *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD, ECF No. 445-2 (N.D. Cal. May 8, 2020), which is attached as Exhibit A to the Declaration of Susan Fahringer submitted in support of Defendant Jumio Corporation's Response to Ashley Allen's Objection to Approval of Class Action Settlement.

Settlement and go forward with those claims on her own.

As of this filing, Class Counsel are aware of only two cases pending against *any* of Defendant's numerous customers, and the named plaintiffs in each of those cases have opted out of this Settlement—presumably so that they may continue to prosecute their own cases.[5] Instead of taking that more reasonable approach, and complying with the procedure set forth in the Settlement regarding exclusion and opting out of the Settlement, Ms. Allen seeks to prevent payment of hundreds of dollars of relief being paid out to over 14,000 consumers – including to herself, as Ms. Allen has filed a valid claim for recovery in this matter – in what Ms. Allen seemingly concedes is otherwise an excellent Settlement. Ms. Allen's actual motivations for objecting were laid clear for this Court in the emails Ms. Allen's Counsel chose to place before this Court. Rather than look out for the actual interests of the Class, who (aside from her) all either support or do not oppose the Settlement, her Counsel's actual motivation is financial. As her counsel succinctly put it: "[O]ur concern is that the Settlement might be releasing countless other cases (many of which we are involved in)." (Obj., Ex. 1-D). But the financial goals of Ms. Allen's attorneys vis-a-vis other potential class action lawsuits they wish to pursue are of no import to assessing whether or not this Settlement is fair, reasonable, and adequate. More broadly, if this Settlement is finally approved, it will be the single largest BIPA settlement ever finally approved by a court in the country and result in over 14,000 individuals receiving hundreds of dollars each at a time when financial insecurity is top of mind for many Illinoisans. The objection should be overruled.

---

[5] At least one of these BIPA cases against Defendant's customers was recently dismissed pursuant to an arbitration agreement with the customer. *See Flores v. Juul Labs, Inc.*, Case No. 19-cv-08176, June 23, 2020 (N.D. Ill.).

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

## V.    THE ATTORNEYS' FEE AWARD AND INCENTIVE AWARD SHOULD BE APPROVED

Because no objections were filed in opposition to Class Counsel's Motion for Approval of Attorneys' Fees, Expenses & Incentive Award, and because all factors favor granting final approval of the Settlement, the Court should also approve an award of attorneys' fees and expenses to Class Counsel in the requested amount and the Incentive Award requested by Plaintiff.

The Motion for Attorneys' Fees was filed on February 5, 2020, a full twenty-one (21) days before the February 26, 2020 deadline for objections and exclusion requests. Accordingly, the Settlement Class Members had ample opportunity to consider the merits of the Motion for Attorneys' Fees. However, no objections to the Motion for Attorneys' Fees were brought – even Ms. Allen does not take any issue with the attorneys' fees or Incentive Award being sought – and no Settlement Class Members have even informally expressed any dissatisfaction with the fees, expenses or Incentive Award sought by Class Counsel and the Class Representative. (Meyers Decl., ¶ 12). The lack of any opposition is unsurprising, since, as discussed above, Class Counsel's fees are reasonable in light of the substantial relief to the Settlement Class Members and the significant changes to Defendant's biometric practices that further benefit the Class and the public, and are in line with fees sought in similar BIPA actions. In fact, and as set forth in the Motion for Attorneys' Fees, at least four different judges in the Circuit Court of Cook County have recently approved an attorneys' fee award of forty percent of the common fund in BIPA class settlements. *See Zepeda v. Intercontinental Hotels Group, Inc.*, No. 18-CH-02140, (Cir. Ct. Cook County, Ill. 2018) (Atkins, J.); *Svagdis v. Alro Steel Corp.*, No. 17-CH-12566 (Cir. Ct. Cook County, Ill. 2018) (Larsen, J.); *Zhirovetskiy v. Zayo Group, LLC.,* No-17-CH-14262 (Cir. Ct. Cook County, Ill. 2019) (Flynn, J.); *Smith v. Pineapple Hospitality Co. et al*, No. 18-CH-06589 (Cit. Ct. Cook County, Ill. 2020) (Moreland, J.). Here, Plaintiff's counsel is requesting 40% of the common fund, plus costs

and expenses. Notably, several other BIPA settlements which have approved 40% in attorney's fees involved a fund that had certain amounts reverting to the Defendant. Here, the fact that the entire $7,000,000 Settlement Fund will be paid out is yet another indicator that the fees requested are reasonable.

For the reasons stated in the Motion for Attorneys' Fees, and because no Settlement Class Member has voiced any opposition or objection to the attorneys' fees and Incentive Award sought, Plaintiff and Class Counsel respectfully request that in finally approving this Settlement, the Court also approve the requested and unopposed Incentive Award and attorneys' fees and expenses sought in Plaintiff's Motion for Attorneys' Fees.

## VI.    **CONCLUSION**

For the reasons stated above and in Plaintiff's Motion for Approval of Attorneys' Fees, Expenses & Incentive Award, Plaintiff respectfully requests that this Court enter an Order: (1) finding that the Settlement is fair, reasonable, and adequate; (2) granting final approval of the Settlement; (3) approving Plaintiff's request for attorneys' fees, expenses, and an Incentive Award; and (4) overruling the objection of Ashley Allen. A proposed Final Approval Order is attached hereto as Exhibit 5.

Dated: July 7, 2020                    Respectfully submitted,

ALEX PRELIPCEANU, individually and on
behalf of a class of similarly situated individuals

By: /s/ David L. Gerbie
     *One of Plaintiff's Attorneys*

28

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

Myles McGuire
Evan M. Meyers
David L. Gerbie
Andrew T. Heldut
MCGUIRE LAW, P.C. (Firm ID No. 56618)
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff Alex Prelipceanu
and Class Counsel*

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 7, 2020, a copy of *Plaintiff's Motion & Memorandum in Support of Final Approval of Class Action Settlement* was filed electronically with the Clerk of Court, with a copy sent by Electronic Mail to all counsel of record.

/s/ David L. Gerbie

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/7/2020 8:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9692066

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

# Exhibit 1

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into as of this 27 day of November, 2019, by Plaintiff Alex Prelipceanu ("**Plaintiff**"), on behalf of himself and the Settlement Class as defined below, on the one hand, and Jumio Corporation ("**Defendant**") on the other. Plaintiff and Defendant are each referred to herein as a **Party**, and collectively, as the **Parties**.

WHEREAS, in December 2018, Plaintiff filed a class action entitled *Prelipceanu v. Jumio Corp.*, Case No. 2018-CH-15883, in the Circuit Court of Cook County, Illinois, Chancery Division before Judge Michael T. Mullen, asserting claims relating to the alleged collection of biometric information by Defendant (the "**Action**"); and

WHEREAS, Defendant has denied and continues to deny each and every allegation and all charges of wrongdoing or liability of any kind whatsoever that were or could have been asserted in the Action; and

WHEREAS, following arms-length negotiations through multiple sessions with Chief Judge James Holderman of JAMS Chicago, the Parties reached a settlement and agreed to the key terms of a settlement of all claims; and

WHEREAS, the Parties continued negotiations resulting in this Agreement, through which the Parties agree and desire to fully and finally resolve all matters pertaining to, arising from, or associated with the Action, including all claims Plaintiff and Settlement Class Members have or may have had against Defendant and related persons and entities, as set forth herein; and

WHEREAS, while Plaintiff believes the claims in the Action possess merit and while Defendant disputes such claims and does not acknowledge in any way any fault or liability, the Parties have agreed to enter into this Agreement as a compromise of Plaintiff's and the Settlement Class Members' claims in order to resolve all controversy between them and to avoid the uncertainty, risk, expense, and burdens of protracted litigation that would be involved in prosecuting and defending the Action;

NOW, THEREFORE, subject to Court approval and the other conditions set forth herein, it is hereby AGREED by the Parties that, in consideration of the undertakings, promises, and payment set forth in this Agreement and upon the entry by the Court of a Final Order and Judgment approving the settlement and directing the implementation of the terms and conditions of this Agreement, the Action shall be settled and compromised upon the terms and conditions set forth herein.

## 1.    DEFINITIONS

As used in this Agreement and the attached exhibits, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall be defined as set forth below:

**1.1    "Administrative Expenses"** shall mean expenses associated with the Settlement Administrator, including but not limited to costs in providing notice, communicating with

Settlement Class Members, establishing the Settlement Website, and disbursement of payments to the Settlement Class Members.

1.2    **"Approved Claims"** shall mean complete and timely claims submitted by Settlement Class Members that have been approved for payment by the Settlement Administrator.

1.3    **"Biometrics"** shall mean information of individuals in Illinois that constitutes a biometric identifier or biometric information under BIPA.  The term Biometrics includes only data that are covered by BIPA, and does not include any other data.

1.4    **"BIPA"** shall mean the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq.

1.5    **"Claim Form"** shall mean the form that Settlement Class Members may submit to obtain compensation under this Settlement, which shall be substantially in the form attached hereto as Exhibit 1.

1.6    **"Claims Deadline"** shall mean the date by which all Claim Forms must be postmarked (if mailed) or submitted electronically via the Settlement Website or via Electronic Mail to be considered timely, and which shall be a date approximately 90 (ninety) Days after entry of the Preliminary Approval Order. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, the Notice, and the Claim Form.

1.7    **"Class," "Class Member," "Settlement Class"** and **"Settlement Class Member"** shall mean each member of the settlement class, as defined in Section 2.2 of this Agreement, who does not properly execute and submit a timely request for exclusion.

1.8    **"Class Counsel"** shall mean Myles McGuire, Evan M. Meyers, David L. Gerbie and Andrew T. Heldut of McGuire Law P.C.

1.9    **"Class Representative"** or **"Plaintiff"** shall mean Plaintiff Alex Prelipceanu.

1.10    **"Court"** shall mean Judge Michael T. Mullen of the Circuit Court of Cook County, Illinois, Chancery Division, or any other judge who shall have jurisdiction over the pending Action.

1.11    **"Customer"** means a business or other entity that licenses, purchases or resells, either directly or indirectly, the Netverify service from Defendant and/or provides such Netverify service, either directly or indirectly, to individuals in Illinois such as the Settlement Class Members.

1.12    **"Day"** or **"Days"** means calendar days.

1.13    **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel.

2

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

**1.14** "**Final Approval Hearing**" means the hearing to be conducted by the Court in connection with the final determination that the Agreement is fair, reasonable, and adequate and in the best interests of the Class as a whole, and which shall be on a date approximately 90 (ninety) Days after entry of the Preliminary Approval Order, or such other date approved by the Court.

**1.15** "**Final Order and Judgment**" means an order that is entered by the Court and in a form that is mutually agreeable to the Parties and as set forth in Section 13 of this Agreement, and that approves this Agreement as fair, reasonable, and adequate and in the best interests of the Class as a whole, and makes such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement.

**1.16** "**Incentive Award**" shall have the meaning ascribed to it as set forth in Section 12.4 of this Agreement.

**1.17** "**Defendant Counsel**" or "**Counsel for Defendant**" shall mean Susan Fahringer, Debra R. Bernard, and Nicola Menaldo of Perkins Coie LLP.

**1.18** "**Netverify**" means the digital identity verification and related services provided by Defendant, including but not limited to products licensed to customers as Authentication, BAM Checkout, Document Verification, Fastfill, Identity Verification, ID Verification and Screening, and any similar service Defendant offers in the future.

**1.19** "**Notice**" means the notice of this proposed settlement, which is to be provided substantially in the manner set forth in this Agreement and Exhibits 2 and 3, and is consistent with the requirements of due process.

**1.20** "**Notice Database**" means the database containing potential Settlement Class Members' information, to be provided by Defendant pursuant to Section 5.2 of this Agreement.

**1.21** "**Objection/Exclusion Deadline**" means the date by which a written objection to this Settlement Agreement submitted by a person within the Settlement Class must be filed with the Court, as set forth in Section 9, and the date by which a request for exclusion submitted by a person within the Settlement Class must be postmarked/submitted, as set forth in Section 8. The Objection/Exclusion Deadline shall be designated as a date approximately 65 (sixty-five) days after entry of the Preliminary Approval Order, or such other date as ordered by the Court, and shall be expressly set forth in the Preliminary Approval Order and in the Notice.

**1.22** "**Preliminary Approval Order**" means the Court's Order granting preliminary approval of this Agreement, approving the Notice of Proposed Class Action Settlement and the manner of providing notice to the Class, and setting forth a schedule for briefing regarding the fairness of the settlement, deadlines for submitting exclusion requests and objections, and the date of the Final Approval Hearing, in a form as agreed to by the Parties.

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

**1.24** **"Release"** shall mean the Release set forth in Section 11 of this Agreement.

**1.25** **"Released Parties"** means Defendant and all of its owners, directors, officers, employees, Customers, agents, parents, subsidiaries, contractors, insurers, reinsurers, and affiliates.

**1.26** **"Releasing Parties"** means the Settlement Class Members and their respective heirs, administrators, devisees, predecessors, successors, attorneys, representatives, shareholders, partners, directors, officers, owners, affiliates, and assignees, as well as the Settlement Class Members' respective subrogees and insurers. For clarity and to avoid ambiguity, Releasing Parties does not include any of the Released Parties and it is expressly agreed that the Released Parties do not release, relinquish or in any way waive any claims by or through this Agreement.

**1.27** **"Settled Claims"** means any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

**1.28** **"Settlement Administrator"** shall mean KCC, LLC, the third-party entity that is jointly selected by the Parties to administer the settlement, as set forth in Section 5.

**1.29** **"Settlement Date"** means the date on which the Court enters the Final Order and Judgment.

**1.30** **"Settlement Fund"** means the settlement fund in the amount of Seven Million Dollars ($7,000,000.00).

**1.31** **"Settlement Website"** means a website established and administered by the Settlement Administrator, as set forth in Section 6.1(c)(iv).

**1.32** **"Valid Claim Form"** means a timely and complete Claim Form as set forth in Section 7.4.

**2.** **SETTLEMENT PURPOSES ONLY**

**2.1** For the purposes of this settlement only, the Parties stipulate and agree that: (1) the Class shall be certified in accordance with the definition contained in Section 2.2, below; (2) Plaintiff shall represent the Class for settlement purposes and shall be the class representative; and (3) Plaintiff's Counsel shall be appointed as Class Counsel.

146007379.2

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

**2.2**     Subject to Court approval, the following Class shall be certified for settlement purposes:

> All individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries, or agents, or their technology, at any time between December 21, 2013 and [entry of the Preliminary Approval Order].

**2.3**     Excluded from the Class are: (1) Defendant and any entity in which Defendant has a controlling interest, and their respective legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's staff and immediate family; and (3) any person who, in accordance with the terms of this Agreement, properly executes and submits a timely request for exclusion from the Class.

**2.4**     Defendant does not consent to certification of the Class for any purpose other than to effectuate this settlement. If the Court does not enter the Final Order and Judgment or if for any other reason final approval of the settlement does not occur, is successfully objected to, or successfully challenged on appeal, any certification of any Class will be vacated and the Parties will be returned to their positions with respect to the Action as if the Agreement had not been entered into. In the event that the Final Order and Judgment is not entered or if for any other reason final approval of the settlement does not occur, is successfully objected to, or successfully challenged on appeal: (a) any Court orders preliminarily or finally approving the certification of any class contemplated by this Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (b) the fact of the settlement reflected in this Agreement, that Defendant did not oppose the certification of a Class under this Agreement, or that the Court preliminarily approved the certification of a Class, shall not be used or cited thereafter by any person or entity, including in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class. To the fullest extent permitted by law neither the fact of, nor any provision contained in, this Agreement or its attachments, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim or any fact alleged by Plaintiff in the Action or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendant or admission by any of the Parties of the validity or lack thereof of any claim, allegation or defense asserted in this Action or in any other action.

**2.5**     Plaintiff and Class Counsel shall use best efforts to obtain agreement to the terms of this Agreement from all affected parties.  To the extent Plaintiff and Class Counsel are unable to obtain such agreement, Plaintiff and Class Counsel will cooperate with Defendant in assuring that duplicative litigation does not interfere with the benefit of this Agreement to the Class and to the Released Parties.

**2.6**     Defendant has provided Counsel for Plaintiff documents and information describing in detail the operation of Jumio's technology and information with respect to Class size. Counsel for Plaintiff have also deposed Jumio regarding multiple topics pursuant to Rule 30(b)(6).  This information is to be used solely for purposes of the Agreement and may not be used for any purpose in the event the Agreement is terminated or if the Court does not enter the Final Order

5

and Judgment.

## 3. RELIEF

**3.1 Prospective Relief.** Defendant agrees to use all commercially reasonable means to comply with BIPA by implementing the following prospective relief, which shall be implemented within a reasonable time not to exceed three (3) months from the date of entry of the Final Approval Order:

a. Defendant agrees to obtain through commercially reasonable methods BIPA-compliant consent of individuals in Illinois to collect, capture, or obtain their Biometrics. Such methods may consist of undertaking commercially reasonable efforts to cause Defendant's Customers that are subject to BIPA to obtain such consent.

b. Defendant agrees not to sell, lease, disclose, disseminate or trade the Biometrics of any individual in Illinois to any third-party except as permitted under BIPA.

c. Defendant agrees to store, transmit, and protect from disclosure Biometrics, using reasonable security measures that are consistent with BIPA and at least as protective as the manner in which Defendant stores, transmits, and protects other confidential and sensitive information.

d. Defendant agrees to require in its standard terms and conditions with Customers that are subject to BIPA serving individuals in Illinois that Defendant's products may be used only in compliance with all applicable laws and regulations.

e. Defendant agrees to develop a publicly-available policy establishing a retention schedule and a procedure for permanently destroying Biometrics of individuals in Illinois.

f. Defendant may seek the Court's approval to modify these commitments to conform to applicable law.

**3.2 Establishment of Settlement Fund.**

a. Defendant agrees to and shall cause itself and/or its insurer to deposit in an interest-bearing bank account established by Defendant the total sum of $7,000,000.00 (Seven Million Dollars). The first $500,000.00 of the Settlement Fund shall be paid within 14 (fourteen) Days following entry of the Preliminary Approval Order and receipt from the Settlement Administrator of detailed wire instructions and a completed W-9 form, and the remaining $6,500,000.00 shall be paid within 30 (thirty) Days of the Settlement Date, with funding occurring prior to the Settlement Date as necessary to pay for Administrative Expenses. The Settlement Fund shall be used to pay (i) Approved Claims; (ii) costs of administration of the

146007379.2

FILED DATE: 7/7/2020 8:22 PM 2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

Agreement to the Settlement Administrator, including without limitation payment of Administrative Expenses; (iii) the Fee Award; and (iv) an Incentive Award. The Settlement Fund represents the total extent of Defendant's monetary obligations under the Settlement Agreement, and Defendant and its insurer shall have no obligation to make any further payments into the Settlement Fund and shall have no financial responsibility or obligation relating to the settlement beyond the Settlement Fund. Under no circumstances will Defendant or its insurer have any liability for taxes or tax expenses under this Agreement.

b.      The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements.

c.      If the Final Order and Judgment as defined in this Agreement is not entered, the Settlement Fund will belong to Defendant's insurer, less any administrative expenses incurred to the date of the Final Approval Hearing. Within 30 Days of the Court's action indicating that the Final Order and Judgment as defined in the Agreement will not be entered, the Settlement Administrator shall transfer to Defendant's insurer the Settlement Fund less administrative expenses incurred to the date of the Final Approval Hearing.

**3.3    Distribution of Settlement Fund.** Each Settlement Class Member may submit a Claim Form. Timely submission of a Valid Claim Form shall entitle the Class Member to receive a cash payment from the Settlement Fund equal to the Class Member's *pro rata* share of the Settlement Fund after Administrative Expenses, the Fee Award, and an Incentive Award have been deducted from the Settlement Fund. Every Settlement Class Member who timely submits a Valid Claim Form shall receive the same benefit, including the same amount of cash from the Settlement Fund, as every other Class Member who timely submits a Valid Claim Form.

**4.    SUBMISSION FOR PRELIMINARY APPROVAL ORDER**

**4.1**    This Agreement shall be subject to approval of the Court. As set forth in Section 14, Defendant shall have the right to terminate the Agreement if the Court does not approve the material aspects of the Agreement.

**4.2**    Plaintiff, through Class Counsel, shall file an unopposed motion for entry of an Order Conditionally Certifying the Settlement Class, granting Preliminary Approval of the Settlement, setting a date for the Final Approval Hearing, approving the Class Notice and Claim Form, appointing Class Counsel and Plaintiff as the class representative, and for entry of the Preliminary Approval Order. The Preliminary Approval Order shall seek a Final Approval Hearing date and approve the Notices and Claim Form for dissemination in accordance with the notice program set forth in Section 6.

**4.3.**    The Parties shall request that the Final Approval Hearing be scheduled approximately ninety (90) Days after entry of the Preliminary Approval Order and that the Court approve the settlement of the Action as set forth herein.

**4.4.**    At least fourteen (14) Days before the Final Approval Hearing, or by another date if directed by the Court, Plaintiff shall move for (i) final approval of the Settlement; (ii) final

appointment of the Class Representative and Class Counsel; and (iii) final certification of the Settlement Class, including for the entry of a Final Approval Order, and file a memorandum in support of the motion for final approval.

## 5. CLAIMS ADMINISTRATION PROCESS

**5.1 Third-Party Settlement Administrator**. The Settlement Administrator shall be responsible for all matters relating to the administration of this Agreement as set forth herein. Those responsibilities include, but are not limited to, giving Notice to Settlement Class Members, establishing and maintaining the Settlement Website and a toll-free telephone number for inquiries about the Agreement, fielding inquiries about the Agreement, processing all Claim Forms, determining which Claim Forms are Valid Claim Forms, acting as a liaison between Settlement Class Members and the Parties regarding claims information, approving claims, rejecting any Claim Form if not properly completed and timely submitted or where there is evidence of fraud, processing and approving requests for exclusion, directing the mailing of settlement payments to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing.

The Settlement Administrator shall provide weekly updates on the status of claims and requests for exclusion to counsel for all Parties and will provide additional updates as reasonably requested by any Party. Class Counsel shall be responsible for supervising the Settlement Administrator and will use best efforts to ensure that the Settlement Administrator acts in accordance with this Agreement and any orders of the Court.

If any of the terms of this Agreement relating to the Settlement Administrator's services would unreasonably hinder or delay such processes or make them costlier, the Settlement Administrator shall so advise the Parties, and the Parties shall accommodate the Settlement Administrator, to the extent allowed by the terms herein and to the extent necessary to carry out the intent of this Agreement.

**5.2 Notice Database.** To facilitate the notice and claims administration process, Defendant will provide to the Settlement Administrator, in an electronically searchable and readable format, a Notice Database that includes reasonably available contact information, including names and mailing addresses, for all known Settlement Class Members, to the extent Defendant possesses such information. Defendant shall provide the Notice Database to the Settlement Administrator as soon as practicable and no later than twenty-one (21) Days after the entry of the Preliminary Approval Order.

**5.3 Class Member Information Solely for Purposes of Notice.** Any information relating to Settlement Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to Settlement Class Members and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Settlement Class Members have been made; and shall not be used for any other purpose.

8

FILED DATE: 7/7/2020 8:22 PM 2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## 6.    NOTICES

**6.1    Notice Program**.  The notice program shall be approved by the Court in the Preliminary Approval Order and shall consist of the following:

a.    <u>Timing of Class Notice</u>.  Notice shall be provided as set forth in this Agreement within Thirty-Five (35) Days following entry of the Preliminary Approval Order.

b.    <u>Content of Notice.</u> The Notice shall be substantially in the form of Exhibits 2 and 3 attached hereto. The Notice shall be designed to inform Settlement Class Members, prior to the Final Approval Hearing, that there is a pending settlement and how they may (a) obtain a copy of the Claim Form and file a claim; (b) protect their rights regarding the settlement; (c) request exclusion from the Settlement Class and the proposed settlement, if desired; (d) object to any aspect of the proposed settlement, if desired; and (e) participate in the Final Approval Hearing, if desired. The Notice shall provide instructions as to how Settlement Class Members may submit Claims Forms and become eligible for a *pro rata* cash payment from the Settlement Fund. The Notice shall make clear that the Agreement shall be binding on all Settlement Class Members, i.e., those who do not timely and properly submit requests for exclusion from the Settlement Class.

c.    <u>Form of Notice.</u>  The Notice shall be presented in multiple forms and presented through multiple media, as set forth below.

i.    <u>Notice by Mail</u>. The Settlement Administrator shall mail via U.S. Mail Notice of the settlement (substantially in the form of Exhibit 3) to all Settlement Class Members as to whom physical addresses are available. The Settlement Administrator shall use its best efforts to determine the last known physical address of every Class Member, as set forth in the Notice Database, by taking at least the following steps: (i) the Settlement Administrator shall check each address supplied in the Notice Database against the United States Post Office National Change of Address Database, (ii) the Settlement Administrator shall update addresses based on any forwarding information received from the United States Post Office, and (iii) the Settlement Administrator shall update addresses based on requests received from persons in the Settlement Class. The Settlement Administrator shall promptly re-mail the Notices to the updated addresses provided under scenarios (ii) and (iii) above. All costs of address confirmation and data trace searches shall be considered Settlement Administration Costs and deducted from the Settlement Fund.

ii.    <u>Notice by Internet Banner</u>.  Defendant shall place a "banner" on a page on Defendant's website, with a hyperlink to the Settlement Website, commencing no later than fourteen (14) Days after entry of the Preliminary Approval Order and continuing until the Settlement Date. In addition, the Settlement Administrator shall design and conduct an internet advertisement publication notice program, which must be approved by the Parties and shall be limited to site visitors located in Illinois. This internet advertisement publication notice shall commence no later

9

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

than thirty-five (35) Days after entry of the Preliminary Approval Order and shall continue through the Claims Deadline.

iii.     Notice by Publication.  The Settlement Administrator shall arrange for the publication of the Publication Notice in the online and offline versions of three widely-circulated newspapers in the state of Illinois to be displayed for at least three non-consecutive days (not in the same week), beginning no later than fourteen (14) Days after the Preliminary Approval Order is entered. Such publication notice shall use the same font and imagery as Defendant's website.

iv.     Settlement Website.  The Settlement Administrator shall create and maintain a Settlement Website that contains information about the Settlement, including an electronic copy of the Notice by Mail (substantially in the form of Exhibit 3), the Settlement Agreement, and all material Court filings related to the Settlement. Settlement Class Members shall be able to submit Claim Forms via the Settlement Website. The URL of the Settlement Website shall be subject to approval by both Parties and shall be reasonably reflective of the nature of the Action (such as JumioBIPASettlement.com or such other URL as the Parties may subsequently agree).

## 7.     SUBMISSION AND EVALUATION OF CLAIMS

**7.1**     All claims must be submitted to the Settlement Administrator via the Claim Form, and must be submitted by the Claims Deadline, either electronically via the Settlement Website, via Electronic Mail, or by U.S. Mail, postmarked on or before the Claims Deadline.

**7.2**     The Claim Form shall be substantially in the form attached as Exhibit 1 and shall require the person submitting the form to provide:

a.     His or her full name, mailing address, and contact telephone number, as well as an optional email address;

b.     An affirmation that the person is a member of the Settlement Class; and

c.     A signature and affirmation of the truth of the contents of the Claim Form.

**7.3**     The Claim Form shall further state that: (a) each Settlement Class Member may submit only one Claim Form, and (b) each Settlement Class Member who timely submits a Valid Claim Form will be entitled to receive a cash payment in an equal sum to be determined on a *pro rata* basis from the Settlement Fund, following deduction of all applicable expenses, including administration and notice costs and attorneys' fees, and that as a result the amount received by each Class Member will depend on the number of valid claimants.

**7.4**     Every Claim Form that is timely submitted as required by subsection 7.1 and that is fully completed with the information required by paragraph 7.2 shall be considered a Valid Claim Form. Any Claim Form that lacks the requisite information shall be deemed to be incomplete and ineligible for payment. For any partially-completed Claim Form, the Settlement Administrator

146007379.2

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

shall attempt to contact the Settlement Class Member who submitted the Claim Form at least once by e-mail or, if no email address is available, by regular U.S. mail (i) to inform the Settlement Class Member of any error(s) and/or omission(s) in the Claim Form and (ii) to give the Settlement Class Member one opportunity to cure any errors and/or omissions in the Claim Form. The Settlement Class Member must cure the error(s) and/or omission(s) by the Claims Deadline, or fourteen (14) Days after the Settlement Administrator sends the email or regular mail notice to the Settlement Class Member regarding the deficiencies in the Claim Form, whichever is later. If the Settlement Class Member cures the error(s) and/or omission(s) by the deadline set forth in this subsection, his or her Claim Form will be considered a Valid Claim Form.

**7.5**    A Settlement Class Member is not entitled to any compensation from the Settlement Fund if he or she submits a Claim Form after the Claims Deadline, and/or if the Claim Form contains false information or remains incomplete after the Settlement Class Member was given an opportunity to cure any error(s) and/or omission(s).

**7.6**    Within twenty-one (21) Days after the Claims Deadline, the Settlement Administrator shall process all Claim Forms submitted by Settlement Class Members and shall determine which Claim Forms are Valid Claim Forms and initially approved and which are initially rejected. The Settlement Administrator may accept or reject any Claim Form submitted and may consider any Claim Form a Valid Claim Form in its sole discretion and may request additional information from the person submitting the Claim Form prior to making this determination. The Settlement Administrator shall employ reasonable procedures to screen Claim Forms for abuse and/or fraud and shall deny Claim Forms that are materially incomplete and/or where there is evidence of abuse and/or fraud.

**7.7**    Within twenty-one (21) Days after the Claims Deadline, the Settlement Administrator shall submit to Counsel for the Parties a report listing all initially approved Claims ("**Initially Approved Claims List**") and shall include an electronic PDF copy of all such initially approved Claim Forms. Within twenty-one (21) Days after the Claims Deadline, the Settlement Administrator shall also submit to the Parties a report listing all initially rejected claims ("**Initially Rejected Claims List**") and shall include an electronic PDF copy of all such initially rejected Claim Forms.

**7.8**    Counsel for the Parties shall have fourteen (14) Days after the date they receive the Initially Approved Claims List and related Claim Forms to audit and challenge any initially approved claims. Within fourteen (14) Days after Counsel for the Parties receive the Initially Approved Claims List and related Claim Forms, they shall serve opposing counsel via email with a notice of claim challenges identifying by claim number any initially approved claim they wish to challenge and the reasons for the challenge.

**7.9**    Counsel for the Parties may challenge any claim initially rejected by the Settlement Administrator. Counsel for the Parties shall have fourteen (14) Days after the date they receive the Initially Rejected Claims List and related Claim Forms to audit and challenge any initially rejected claims. Within fourteen (14) Days after Counsel for the Parties receive the Initially Rejected Claims List and related Claim Forms, they shall serve opposing counsel via email with

146007379.2

a Notice of Claim Challenges identifying by claim number any initially rejected claim they wish to challenge and the reasons for the challenge.

**7.10**   Counsel for the Parties shall meet and confer in an effort to resolve any disputes over any challenged claims. If the challenges are not withdrawn or resolved, the decision of the Settlement Administrator will be upheld. The date all claims are finalized without any further dispute shall be referred to as the "**Claims Finalization Date**." If neither Class Counsel nor Counsel for Defendant challenges the initial claims determination reached by the Settlement Administrator, then the Claims Finalization Date shall be the date both Class Counsel and Defendant's Counsel inform each other that the Parties do not have any objection to the claims determination made by the Settlement Administrator or the time for informing each other of such challenges has lapsed.

**7.11**   Within seven (7) Days of the Claims Finalization Date, the Settlement Administrator shall provide Counsel for the Parties a spreadsheet setting forth the claim number, claimant name, claimant address, and the total amount to be paid to each claimant, which shall be an equal amount for each Approved Claim (the "**Final Claims List**"). Within ten (10) Days after the Claims Finalization Date, the Settlement Administrator shall send a check by First Class U.S. Mail to each Settlement Class Member on the Final Claims List.

**7.12**   The Settlement Administrator shall notify the Parties that all Approved Claims have been paid within five (5) business Days of the last such payment.

**7.13**   In the event that checks sent to Settlement Class Members are not cashed within one hundred fifty (150) Days after their date of issuance, those checks will become null and void. Provided that the amount of the uncashed checks after the expiration date, less any funds necessary for settlement administration, would allow a further distribution to the qualifying claimants equal to or greater than $1.00 per qualifying claimant, such amount will be redistributed in equal amounts to the Settlement Class Members who submitted Valid Claim Forms and cashed their checks. In the event that those redistributed checks are not cashed within ninety (90) days of their date of issuance, those checks will become null and void. The amount of the null and void checks will be paid through *cy pres* to one or more recipients selected by the Parties and approved by the Court.

## 8.   CLASS MEMBERS' RIGHTS TO INCLUSION/EXCLUSION

**8.1**   Except for those persons who properly request exclusion as described below, all members of the Class will be deemed Settlement Class Members for all purposes under this Agreement.  Any person who properly requests exclusion shall not be entitled to relief or other benefits under this Agreement, shall not be entitled to object to any aspect of this Agreement, and shall not be affected by this Agreement.

**8.2**   A member of the Settlement Class may request to be excluded from the Settlement Class in writing by a request postmarked, or submitted electronically via the Settlement Website, on or before the Objection/Exclusion Deadline. In order to exercise the right to be excluded, a member of the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing his/her name, address, and telephone number; the name and number of this case; a statement that he/she wishes to be excluded from the Settlement Class; and a

12

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

signature. A request to be excluded that is sent to an address other than that designated in the Class Notice, or that is not electronically submitted or postmarked within the time specified, shall be invalid and the person serving such a request shall be considered a member of the Settlement Class and shall be bound as Settlement Class Members by the Agreement, if approved. The request for exclusion must be personally signed by the person requesting exclusion. So-called "mass" or "class" exclusion requests shall not be allowed.

**8.3** The Parties shall have the right to challenge the timeliness and validity of any exclusion request. Class Counsel shall also have the right to effectuate the withdrawal of any exclusion filed in error and any exclusion that a person wishes to withdraw for purposes of participating in the settlement as set forth in this Agreement. A list reflecting all individuals who timely and validly exclude themselves from the Settlement Class shall be filed with the Court at the time of the motion for final approval of the settlement, and the Court shall determine whether any contested exclusion request is valid.

**8.4** Within seven (7) Days after the Objection/Exclusion Deadline, the Settlement Administrator shall provide to the Parties a list of all persons who opted out by validly requesting exclusion. In the event that the number of persons who opted out exceeds 100, Defendant may elect to terminate this Agreement on the ground that exclusion at that level threatens to frustrate the essential purpose of this Agreement. Defendant may exercise its right to terminate this Agreement under this subsection by notifying Class Counsel of its election no later than twenty-one (21) Days after Defendant's receipt of the list of persons who requested exclusion.

## 9. OBJECTIONS

**9.1** The Notices shall advise Settlement Class Members of their rights, including the right to be excluded from or object to the Settlement Agreement and its terms. The Notices shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline, the person making an objection shall: (i) file his/her objection with the Clerk of Court; (ii) file copies of such papers he/she proposes to submit at the Final Approval Hearing with the Clerk of the Court; and (iii) send copies of such papers via United States mail, hand delivery, or overnight delivery to both Class Counsel and Defendant's Counsel. A copy of the objection must also be mailed to the Settlement Administrator at the address that the Settlement Administrator will establish to receive requests for exclusion or objections, Claim Forms, and any other communication relating to this Settlement.

**9.2** Any Settlement Class Member who intends to object to the settlement must include in any such objection: (i) his/her full name, address and current telephone number; (ii) the case name and number of this Action; (iii) the Defendant's Customer to whom, or website at which, he/she provided his/her Biometrics; (iv) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (v) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and (vi) the objector's signature. If represented by counsel, the objecting Settlement Class Member's counsel shall identify all objections it has filed to other class action cases in the last five years. If the objecting Settlement Class Member intends to

13

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

appear at the Final Approval Hearing, either with or without counsel, he/she must state as much in the written objection, and must also identify any witnesses he/she may call to testify at the Final Approval Hearing and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written objection.

**9.3**     Any Settlement Class Member who fails to timely file and serve a written objection and notice of intent to appear at the Final Approval Hearing pursuant to this Agreement shall not be permitted to object to the approval of the Settlement Agreement at the Final Approval Hearing and shall be foreclosed from seeking any review of the settlement or the terms of the Agreement by appeal or other means.

**9.4**     Settlement Class Members cannot both object to and exclude themselves from this Settlement Agreement.  Any Settlement Class Members who attempts to both object to and exclude themselves from this Settlement Agreement will be deemed to have excluded themselves and will forfeit the right to object to this Settlement Agreement or any of its terms.  If a Settlement Class Member returns both a Claim Form and a written request for exclusion, the request for exclusion shall deemed void and of no force and effect, and the Claim Form shall be processed under the terms of this Settlement Agreement.

## 10.     EXCLUSIVE REMEDY; DISMISSAL OF ACTION; JURISDICTION OF COURT

**10.1**     This Agreement shall be the sole and exclusive remedy for every Class Member with respect to any and all Settled Claims. Upon entry of the Final Order and Judgment, each member of the Settlement Class shall be barred from initiating, asserting, or prosecuting any claim that is released by operation of this Agreement and the Final Order and Judgment. In the event any member of the Settlement Class attempts to prosecute an action in contravention of the Final Order and Judgment and this Agreement, counsel for any of the Parties may forward this Agreement and the Final Order and Judgment to such Class Member and advise him, her, or it of the releases provided pursuant to this Agreement. If so requested by Defendant or counsel for Defendant, Class Counsel shall provide this information to the Settlement Class Member.

**10.2**     Upon entry of Final Order and Judgment, the Action shall be dismissed with prejudice.  Settlement Class Members may not commence or actively prosecute actions on any Settled Claims against Defendant once the Final Order and Judgment is entered.

**10.3**     The Court will retain exclusive and continuing jurisdiction over the action and all Parties to interpret and enforce the terms, conditions, and obligations of this Agreement.

## 11.     RELEASES

**11.1**     Upon entry and by operation of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each and every Releasing Party releases and forever discharges each and every Released Party from any and all Settled Claims.

**11.2**     By operation of the Final Order and Judgment, the Releasing Parties expressly waive the provisions of California Civil Code § 1542 (and all other similar provisions of law) to the full

extent that these provisions may be applicable to this Release. California Civil Code § 1542 provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

By operation of the Final Order and Judgment, the Releasing Parties shall be deemed to assume the risk that facts additional, different, or contrary to the facts which each believes or understands to exist, may now exist or may be discovered after the Release set forth in this Agreement becomes effective, and the Releasing Parties shall, by operation of the Final Order and Judgment, be deemed to have agreed that any such additional, different or contrary facts shall in no way limit, waive or reduce the foregoing Release, which shall remain in full force and effect.

## 12. CLASS COUNSEL FEES, COSTS AND EXPENSES

**12.1** At least twenty-one (21) days prior to the Objection/Exclusion Deadline, Class Counsel may move the Court for an award of attorneys' fees in an amount $2,800,000.00 (Two-Million Eight-Hundred Thousand Dollars), exclusive of costs and expenses. Defendant agrees not to oppose an application for attorneys' fees, costs and expenses by Class Counsel in such an amount. Class Counsel, in turn, agrees not to seek from the Court or to accept attorneys' fees in excess of such amount.

**12.2** The Court's consideration of the Fee Award shall be conducted separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement Agreement, and any award made by the Court with respect to Class Counsel's attorneys' fees or expenses, or any proceedings incident thereto, including any appeal thereof, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

**12.3** Class Counsel shall provide the Settlement Administrator with a completed W-9 before the payment of the Fee Award is due. Within seven (7) Days after the Settlement Date, the Settlement Administrator shall pay to Class Counsel from the Settlement Fund the amount awarded by the Court in the Fee Award. Any payment of the Fee Award shall be paid by electronic wire transfer to an account designated by Class Counsel.

**12.4** Prior to or at the same time as Plaintiff seeks Final Approval of the Settlement, Class Counsel shall move the Court for an Incentive Award for the Class Representative in an amount not to exceed $10,000.00 (Ten Thousand Dollars), and Defendant agrees that it will not oppose such a request. The Incentive Award shall be paid solely from the Settlement Fund by check written by the Settlement Administrator within seven (7) Days of the Settlement Date.

146007379.2

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## 13.    FINAL ORDER AND JUDGMENT

**13.1**    The Parties shall jointly seek entry of Final Order and Judgment that is mutually agreeable to the Parties and is as described in this Section 13.  The dismissal orders, motions or stipulation to implement this Section shall, among other things, provide for a dismissal with prejudice and waiver of any rights of appeal.

**13.2**    The Final Order and Judgment shall:

a.      Give final approval of this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of 735 ILCS 5/2-801 and directing its consummation according to its terms; and

b.      Dismiss, with prejudice, all claims of the Settlement Class against Defendant in the Action, without costs and fees except as explicitly provided for in this Agreement; and

c.      Reserve continuing and exclusive jurisdiction over this Agreement, the Action, the Parties, and the Settlement Class Members for the purposes of administering, consummating, supervising, construing and enforcing the Agreement and the Settlement Fund; and

d.      Approve the Releases provided in Section 10 of this Agreement; and

e.      Order that as of the Settlement Date the Settled Claims will be released as to the Released Parties; and

f.      Find that pursuant to 735 ILCS 5/2-1301, there is no just reason for the delay of entry of final judgment with respect to the foregoing.

## 14.    TERMINATION OF THE AGREEMENT

The performance of this Agreement is expressly contingent upon entry of the Final Order and Judgment.  If the Court does not issue the Final Order and Judgment as set forth in this Agreement following conclusion of the Final Approval Hearing, or if Defendant terminates the Agreement as provided in subsection 8.4, the Agreement will be terminated, having no force or effect whatsoever, and shall be null and void and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction.

## 15.    CONFIDENTIALITY

No Party shall initiate any publicity relating to or make any public comment regarding this settlement until the Court has issued the Preliminary Approval Order. Defendant may, however, disclose information about the settlement to its Customers prior to such time.

146007379.2

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## 16.    MISCELLANEOUS PROVISIONS

**16.1**    This Agreement, including all attached exhibits, shall constitute the entire Agreement between the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements and understandings between the Parties.

**16.2**    This Agreement may not be changed, modified or amended except in writing and signed by both Class Counsel and Defendant's counsel, subject to Court approval if required.

**16.3**    The Parties may agree, subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Agreement.

**16.4**    Each Party represents and warrants that it enters into this Agreement of his, her, or its own free will.  Each Party is relying solely on its own judgment and knowledge and is not relying on any statement or representation made by any other Party or any other Party's agents or attorneys concerning the subject matter, basis, or effect of this Agreement.

**16.5**    This Agreement has been negotiated at arms' length by Class Counsel and Defendant's counsel.  In the event of any dispute arising out of this Agreement or in any proceeding to enforce any of the terms of this Agreement, no Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as the drafter of any part of this Agreement.

**16.6**    The Parties agree to cooperate fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

**16.7**    This Agreement shall be binding upon and inure to the benefit of all Settlement Class Members, Defendant, and their respective representatives, heirs, successors and assigns.

**16.8**    The headings of the sections of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

**16.9**    This Agreement will be construed in accordance with the laws of the state of Illinois.

**16.10**    If any provision, paragraph, section, subsection, or other portion of this Agreement is found to be void (except for Sections 3 & 11), all of the remaining provisions of this Agreement shall remain in full force and effect.

**16.11**    The Parties each represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand covered by this Agreement.

**16.12**    The signatories to this Agreement represent that they have been duly authorized to execute this Agreement on behalf of the Parties they purport to represent.

**16.13**    This Agreement may be executed by the Parties in one or more counterparts exchanged

146007379.2

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

by hand, messenger, facsimile, or PDF as an electronic mail attachment, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**[Remainder of Page Intentionally Left Blank]**

18

146007379.2

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

The undersigned have caused this Settlement Agreement to be executed as of the dates set forth below:

ALEX PRELIPCEANU, individually and on behalf of the Settlement Class

Date: 11/27/19

MCGUIRE LAW, P.C., as Class Counsel

By:

Print Name: David Gerbie

Date: 11/27/2019

JUMIO CORPORATION

By:

Print Name:_____

Date_____

PERKINS COIE, LLP, as Defendant's Counsel

By:

Print Name:_____

Date:_____

19

146007379.2

FILED DATE: 7/7/2020 8:22 PM    2018CH15883

**The undersigned have caused this Settlement Agreement to be executed as of the dates set forth below:**

**ALEX PRELIPCEANU, individually and on behalf of the Settlement Class**

_____

Date:_____

**MCGUIRE LAW, P.C., as Class Counsel**

By:

Print Name:_____

Date:_____

**JUMIO CORPORATION**

By: _____

Print Name:__Michael Duignan_____

Date__November 27, 2019_____

**PERKINS COIE, LLP, as Defendant's Counsel**

By: _____

Print Name:__Susan Fahringer_____

Date:__November 27, 2019_____

19

146007379.2

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED
7/7/2020 8:22 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9692066

# Exhibit 4

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of similarly situated individuals, | Case No. 2018 CH 15883 |
| Plaintiff, | |
| v. | Judge Michael T. Mullen |
| JUMIO CORPORATION, a Delaware Corporation, | |
| Defendant. | |

## AFFIDAVIT OF THE MEDIATOR, HON. JAMES F. HOLDERMAN (RET.)

1.      I am over 18 years old and am competent to testify. Counsel for Plaintiff and Defendant have jointly asked me to submit this Affidavit in support of the proposed class settlement in the above-captioned matter (the "Action"). I have personal knowledge of the facts set forth in this Affidavit and am competent to testify to its contents.

2.      I served as a United States District Court Judge of the Northern District of Illinois for 30 years and was Chief Judge of the District from July 1, 2006 through June 30, 2013. I retired from the bench on June 1, 2015.

3.      While on the bench, I had extensive experience overseeing settlements in class action lawsuits. Such cases, and their final approval dates, include the following:

*In re Capital One Tel. Consumer Prof. Act (TCPA) Litig.*, MDL No. 2416 (N.D. Ill. Feb. 12, 2015); *Wilkins v. HSBC Bank Nev.*, No. 14 C 190, (N.D. Ill. Feb. 27, 2015); *Mittelman v. Kilrea et al.*, No. 02 C 0270, (N.D. Ill. Dec. 28, 2004).

4.      On June 2, 2015, following my retirement from the bench, I began providing private dispute resolution services, including mediating lawsuits, at the JAMS Chicago Office. Over the course of more than 4 years at JAMS, I have mediated numerous class actions to

settlement, including BIPA class actions.

5.      In July 2019, I was retained as the mediator in the case of *Alex Prelipceanu v. Jumio Corporation,* (Cir. Ct. Cook Cnty. Case No 18-CH-15883) which at the time was pending in the Northern District of Illinois. Jumio Corporation was represented by Perkins Coie, a well-known international law firm with an office in Chicago. Plaintiff and the putative class were represented by McGuire Law, a Chicago-based plaintiffs' consumer class action firm. I am familiar with McGuire Law and have previously mediated other cases in which plaintiffs were represented by that firm. Attorneys from McGuire Law also appeared before me in various consumer class actions while I was on the bench. In my experience, both firms are skilled, exceptionally competent, and ethical law firms.

6.      I understand that the parties to the Action have submitted for this Court's approval a proposed class action settlement between Plaintiff Alex Prelipceanu, the putative class he represents, and Defendant Jumio Corporation (the "Settlement"). The Settlement is the result of mediated settlement negotiations in which I participated.

7.      The Settlement negotiations spanned over five months, from July 2019 to November 2019. Initially, the parties engaged in pre-mediation discussions that included the submission of mediation statements. The parties then participated in a day-long mediation session on July 30, 2019 at the JAMS Chicago Office.

8.      The parties to the Prelipceanu mediation signed a confidentiality agreement that prevents the disclosure of the confidential information that was exchanged in connection with this mediation. However, without violating that confidentiality agreement and with the consent of all who participated in this mediation, I can provide the following information.

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

9.      During the July 30, 2019 mediation session, Counsel for the Plaintiff, McGuire Law, and Counsel for the Defendant, Perkins Coie, discussed with me, while each side was in a separate room, their relative views of the law, the facts, and the risks involved in continuing to litigate. I mediated their discussions using the shuttle diplomacy method.

10.     I was aware, during the mediation, that Jumio was involved in other litigation concerning alleged violations of BIPA, beyond the *Prelipceanu* case. I understood that a primary goal of Jumio was to resolve the BIPA litigation pending against it without incurring further burden, expense and litigation risk.

11.     In conducting the July 30, 2019 mediation, I was also aware of the terms reached in other settlements in similar class action lawsuits brought under BIPA, including settlements that have received court approval, both in the Northern District of Illinois, and in Illinois State Court.

12.     During this mediation session, I personally witnessed that each side's Counsel conducted their mediated settlement negotiations at all times in an adversarial, arm's-length and good faith manner. At no time during the mediation (or after) did I come to the conclusion that either Party was insufficiently prepared for the mediation, or that either side was negotiating from a position of inordinate strength or weakness.

13.     Following the in-person July 30, 2019 mediation session, the parties engaged me on at least three occasions to participate in further telephonic negotiations.   During those telephonic conferences, I learned that the parties had also negotiated telephonically without the presence of a mediator on at least six additional occasions. As noted, these negotiations continued for several months after the July 30, 2019 in-person mediation session and continued to be conducted in an adversarial manner until the Parties reached a final settlement agreement.

FILED DATE: 7/7/2020 8:22 PM   2018CH15883

14.     I will not express my opinion on the fairness of the settlement reached, as I believe that to be a determination solely within the province of the Judge assigned to the Action. However, I can confidently express my view that the mediation process was robust and adversarial, and that the settlement reached was the product of skilled and ethical attorneys zealously advocating for the interests of their respective clients.

15.     Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Affidavit are true and correct.

_James F. Holderman_

---

JAMES F. HOLDERMAN
Mediator


DATED:        December 18, 2019

# EXHIBIT 5

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/7/2020 8:33 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9692078

FILED DATE: 7/7/2020 8:33 PM   2018CH15883

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of similarly situated individuals, <br><br> *Plaintiff*, <br><br> v. <br><br> JUMIO CORPORATION, a Delaware corporation, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 2018-CH-15883

Hon. Michael T. Mullen

### DECLARATION OF GINA SIGNORELLO

I, Gina Signorello, declare as follows.

1. I make this declaration based on personal knowledge and my review of records kept in the course of Jumio's regularly-conducted business. I am competent to testify to the contents of this declaration.

2. I am General Counsel at Jumio Corporation, and am responsible for oversight of Jumio's legal affairs, including this litigation.

3. Jumio provides identity verification solutions to businesses for their use in connection with mobile and web transactions.

4. Jumio has contractual relationships with the businesses that use its solutions (Jumio's "Customers"). Some of Jumio's contracts with its Customers require Jumio to indemnify Customers for certain claims against them, such as claims based on Jumio's alleged violation of applicable law.

FILED DATE: 7/7/2020 8:33 PM    2018CH15883

5.      The release, as set forth in the settlement agreement in this case (the "Settlement"), was an essential term of the Settlement. Jumio would not have agreed to the Settlement had the scope of that release been limited.

I declare under penalty of perjury, pursuant to Section 1-109 of the Code of Civil Procedure, that the foregoing is true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 2nd day of July, 2020, in _Palo Alto_, California.

Gina Signorello
General Counsel, Jumio Corporation

FILED DATE: 7/7/2020 8:33 PM 2018CH15883

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on July 7, 2020, she caused the foregoing

**DECLARATION OF GINA SIGNORELLO** pursuant to Section 1-109 of the Illinois Code of

Civil Procedure, be served by Cook County's electronic filing system and email to the following

recipients:

Myles McGuire
Evan M. Meyers
David L. Gerbie
Andrew L. Heldut
MCGUIRE LAW PC
55 West Wacker Drive, 9th Floor
Chicago, Illinois 60601

Jay Edelson
jedelson@edelson.com
Ryan D. Andrews
randrews@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654

_/s/_ Susan D. Fahringer_____