# Attachment B

Return Date: No return date scheduled
Hearing Date: 3/5/2020 9:30 AM - 9:30 AM
Courtroom Number: N/A
Location: District 1 Court
    Cook County, IL

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

FILED
3/5/2020 11:42 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

8745392

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ALEX PRELIPCEANU, individually and on
behalf of a class of similarly situated
individuals,

                *Plaintiff*,

    v.

JUMIO CORPORATION, a Delaware
corporation,

            *Defendant*.

Case No.: 2018-CH-15883

Calendar 8

Judge Michael Mullen

## OBJECTION TO APPROVAL OF CLASS ACTION SETTLEMENT

Class Member Ashley Allen has a limited, but crucial, objection to this Class Action

Settlement. She has no objection to settling her claims against Jumio Corporation on the terms

presented. What she objects to is that this Settlement seems to clearly release claims not only

against Jumio, but also *thousands of other claims* against Jumio's customers for their own

collection of the Class's biometric data, for absolutely nothing. Biometric Information Privacy

Act ("BIPA") claims—as this Settlement, and the other BIPA settlements that this Court has

seen, demonstrate—have significant monetary value. The remarkable part in this case is that

Class Counsel and Defendant's Counsel don't agree on whether this Settlement gives these

claims away or not. Class Counsel said that he would "eat [his] hat" if the Release were later

interpreted to extend to those claims. (Correspondence, Ex. 1-A to Decl. of J. Eli Wade-Scott,

attached hereto as Exhibit 1.) But Jumio's counsel refuses to enter a stipulation making clear that

the only claims released are those related to Jumio's conduct. The chagrin of Class Counsel will

mean nothing to the Class after learning that potentially hundreds of millions of dollars in claims

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

were mistakenly released. The Class needs to know what the Release is before approval is granted.

Jumio provides identity verification services to commercial customers using facial recognition. But Jumio's service operates on the "back end," meaning that Class Members' interaction with Jumio is not with Jumio directly, but with Jumio's customers—entities like WeWork Companies, Inc., for instance, that use Jumio's facial recognition service to identify consumers that are using WeWork spaces. Class Members may, thus, have claims against Jumio's customers for the customers' own collection of biometric data, including claims already being asserted in on-file cases, *e.g.*, *Osborne v. WeWork Companies, Inc.*, 2019-CH-12856 (Cir. Ct. Cook Cty. Nov. 5, 2019), as well as those who have retained counsel to investigate and prosecute those claims, like Ms. Allen.

None of Jumio's customers are a party to this case, but they are Released Parties under the Settlement Agreement. (Settlement Agreement § 1.25 ("'Released Parties' means Defendant and all of its owners, directors, officers, employees, Customers, agents, parents, subsidiaries, contractors, insurers, reinsurers, and affiliates."); *see also id.* § 1.11 (defining "Customer").) The Settlement Agreement does not identify who Jumio's Customers are or how many of them there are. (*See id.* § 1.11.) The Settlement Agreement's definition of the Settled Claims, though, includes "all claims . . . against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, *including all claims arising from or relating to the subject matter of the Action*[.]" (emphasis added.) (*Id.* § 1.27.) Regardless of Class Counsel's stated intention that the Settled Claims do not include claims against Jumio's Customers for the Customers' own

FILED DATE: 3/5/2020 11:42 AM  2018CH15883

possession or collection of biometric data, it seems that Jumio does not agree and the Settlement plainly extends to all claims against Customers. This ambiguity is unacceptable—Jumio has either purchased a blanket release for itself and the thousands of claims that may lie against its unidentified Customers, or it has not. If counsel for the Parties can't figure it out, the Class cannot either.

The Final Approval Order should include language clarifying that Settled Claims do not include claims against Jumio's Customers for the Customers' own collection of biometric data, or approval should be denied pending clarification.

## STANDING TO OBJECT[1]

Ashley Allen lives at 1052 Glenwood Avenue, Waukegan, Illinois 60085. Her phone number is (224) 413-4083. Ms. Allen received notice of this Settlement but does not know what Jumio Customer she interacted with because Jumio's Customers are not identified in the Settlement Agreement and Class Counsel would not tell her which Customer interaction resulted in Jumio obtaining her biometric data. Ms. Allen has not objected to other class action cases in the last four years. Her counsel[2] has objected to three in the last five years:

---

[1]     Ms. Allen notes that the instructions for objecting on the Settlement Website and the Preliminary Approval order are materially different. *E.g.*, Preliminary Approval Order ¶ 19 (requiring service on Settlement Administrator and counsel's disclosure of all objections in last five years); Settlement Website (no such requirements). Ms. Allen follows the Court's order.

[2]     Ms. Allen's counsel, Edelson PC, are not routinely in the business of objecting to settlements. Edelson PC is the national leader in plaintiff's privacy litigation and has been recognized by courts and media alike for their pioneering role and expertise in this space. *E.g.*, *Barnes v. Aryzta LLC*, No. 17-cv-7358, dkt. 71 at 7 (N.D. Ill. Jan. 22, 2019) (endorsing expert opinion finding that Edelson PC "should 'be counted among the elite of the profession generally and [privacy litigation] specifically' because of [the firm's] expertise in the area"). Edelson PC has led the way in litigation under BIPA as well, filing the first-ever case under the law against Facebook that is well on the way—pending Court approval—to being the largest privacy settlement ever. *See Licata v. Facebook, Inc.*, 2015-CH-05427 (Cir. Ct. Cook Cty. Apr. 1, 2015); Natasha Singer & Mike Isaac, *Facebook to Pay $550 Million to Settle Facial Recognition Suit*, NEW YORK TIMES (Jan. 29, 2020), https://www.nytimes.com/2020/01/29/technology/facebook-

FILED DATE: 3/5/2020 11:42 AM  2018CH15883

- *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, Master Dkt. No. 13-cv-09116, dkt. 178–1 (N.D. Ill. May 8, 2015) (objection resulted in denial of preliminary approval twice; at final approval, Court largely agreed with counsel's criticisms of the settlement and awarded over $1 million in fees for improving the settlement)

- *Remijas v. The Neiman Marcus Grp., LLC*, No. 14-cv-01735 (N.D. Ill. Sept. 1, 2017) (resulting in rejection of settlement based on counsel's arguments and revisions to the settlement)

- *Cohen v. FedEx Office & Print Servs., Inc.*, No. CIVDS1818604 (Cal. Super. Ct. Mar. 6, 2019) (objection to settlement that released class's valuable claims for valueless coupons and which undercut class litigation counsel had been pursuing for years)

Ms. Allen intends to appear at the final approval hearing solely through her counsel, J. Eli Wade-Scott, Ryan Andrews, and Jay Edelson. She will not present testimony.

## ARGUMENT

"The procedural and substantive standards governing class action settlement hearings are well settled. The standard used by the courts in evaluating a compromise is that the proposal must be fair and reasonable and in the best interest of all those who will be affected by it." *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992). Courts consider a number of factors—often called the *Korshak* factors—in determining whether to approve a settlement or not. *Id.* (citing *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 971-72 (1st Dist. 1990)). These include the strength of the case, the amount of opposition to the settlement, the reaction of class members to the settlement, and the opinion of competent counsel. *Id.* Due to the non-adversarial nature of the approval process, the Court has a unique role in policing class action settlements, which many courts have described as a "fiduciary responsibility" to the class. *See* 4 Newberg on Class Actions § 13.40 (5th ed. 2019); *see also*

---

privacy-lawsuit-earnings.html. Counsel represents numerous other certified and putative BIPA classes before this Court and others. *E.g.*, *Mazurkiewicz v. Mid-City Nissan, Inc.*, 2018-CH-09798 (Cir. Ct. Cook Cty.).

FILED DATE: 3/5/2020 11:42 AM    2018CH15883

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652–53 (7th Cir. 2006) ("Although our review of a district court's approval of a class action settlement is limited to whether there was an abuse of discretion . . . we insist that district courts exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions. . . . . In the past, we have gone so far as to characterize the court's role as akin to the high duty of care that the law requires of fiduciaries.") (internal quotations and citations omitted).[3]

Furthermore, due process requires sufficient notice to the Class of what claims are being released. *Shaun Fauley, Sabon, Inc. v. Metro. Life Ins. Co.*, 2016 IL App (2d) 150236, ¶ 36 ("The United States Supreme Court has explained that due process requires notice to be the 'best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.''") (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The Court should not approve the Release as it currently stands. Class Counsel has taken the position that the Settlement does not release class members' claims against Jumio's Customers for the Customers' own violations of BIPA, but Jumio refuses to agree that is what the Settlement means. As it is, Class Members have no idea how many BIPA claims they are releasing through this Settlement and cannot properly evaluate it.

I.      **The Release language covers Jumio's Customers' violations of BIPA.**

The Release itself in the Agreement is straightforward, but contains a number of defined terms that complicate things: "Upon entry and by operation of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each and every

---

[3]      Although not identical, the Illinois class action statute, 735 ILCS 5/2-801, is modeled on Federal Rule of Civil Procedure 23, and federal cases interpreting that rule are persuasive authority in Illinois. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (2005).

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

Releasing Party releases and forever discharges each and every Released Party from any and all Settled Claims." (Settlement Agreement § 11.1.) "Released Parties" includes Jumio's Customers, which in turn are defined broadly:

> "Customer" means a business or other entity that licenses, purchases or resells, either directly or indirectly, the Netverify service from Defendant and/or provides such Netverify service, either directly or indirectly, to individuals in Illinois such as the Settlement Class Members.

(*Id.* at § 1.11.) There is no list of Customers in the Settlement Agreement, nor does the Notice plan contemplate telling Class Members what Customer they interacted with. (*See generally id.*; *see also id.* at Exs. 1–3.) Because Jumio's service operates on the back end of a Customer's website or application, Class Members in many cases would have no reason to know they'd interacted with a Jumio Customer.

This matters because Class Members may have claims against Jumio's Customers directly for the Customers' own collection of Class Members' biometric data. At least two such suits have already been filed against Jumio Customers of which counsel is aware, *Osborne*, 2019-CH-12856 (Cir. Ct. Cook Cty.); *Flores v. JUUL Labs, Inc.*, 2019-CH-12935 (Cir. Ct. Cook Cty. Nov. 7, 2019), and Ms. Allen has retained counsel to investigate and file her own. But this Settlement is plainly releasing those claims through the definition of "Settled Claims," which means in full:

> any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

(Settlement Agreement § 1.27.) While this definition in one breath appears focused on Jumio—releasing claims "with respect to Defendant's collection . . . [of] biometric information, biometric identifiers"—it also contains a catch-all provision of "***all claims arising from or relating to the subject matter of the Action***." (*Id.*) (emphasis added.) A Jumio Customer, in a future case or the currently-pending cases, will certainly argue that the Settlement released claims against it even if the Customer themselves collected the Class Member's biometric data using Jumio's technology. The correct interpretation is key for meaningfully evaluating this Settlement and even counsel for the Parties disagree about this fundamental aspect of the agreement.

## II.     Class Counsel and Defendant's Counsel do not agree on the scope of the Release, which demands clarification.

Ms. Allen's counsel reached out to Class Counsel and Defendant's Counsel on February 5, 2020 with several questions about the Settlement. (E-mail Correspondence, Ex. 1-B to Wade-Scott Decl.) Counsel followed up a number of times over the ensuing weeks, without ever getting any substantive response. (E-mail Correspondence, Ex. 1-C to Wade-Scott Decl.) Eventually, on February 18, 2020, Class Counsel Myles McGuire clarified his position that "[t]he idea with the release is that it pertains to Jumio's conduct only. While the customers are being released for Jumio's violations, they remain liable for their own conduct (i.e., collection, storage, transfer, etc.)." (E-mail Correspondence, Ex 1-D to Wade-Scott Decl.) Ms. Allen's counsel responded within hours with a proposed stipulation that would make that clear. (*See* Draft Stipulation, Ex. 1-E to Wade-Scott Decl.; E-mail Correspondence, Ex. 1-F to Wade-Scott

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

Decl.)[4] Particularly, the Stipulation adds a clarification to the definition of Settled Claims to clearly exclude claims "with respect to Customers' collection, capture, receipt, [etc.]" of biometric data. (Stipulation ¶ 9.)

Jumio's counsel remained silent until February 24, 2020, two days before the objection deadline. (Lead counsel for Jumio was evidently travelling for some time, though their office was copied for weeks without a word.) At that time, Defendant's Counsel Susan Fahringer refused to enter the stipulation or extend the deadline for Ms. Allen's counsel to prepare this objection. (E-mail Correspondence, Ex. 1-G to Wade-Scott Decl.)

Jumio has not meaningfully explained its reasons for opposing the stipulation. (*Id.*) One can't help but suspect that it is because Jumio thinks that it has purchased, through this Settlement, a complete release for all of its Customers. Class Counsel has made abundantly clear that he thinks differently. The Class, meanwhile, is left totally unsure about how many claims this is releasing against the unknown host of Jumio's Customers. The Court cannot grant final approval to a Settlement that is unclear about this fundamental issue—the Release should either be clarified or the final approval denied.

## CONCLUSION

For the foregoing reasons, Ms. Allen respectfully requests that any Final Approval Order entered in this matter include the following clarification to the Release:

"Settled Claims" do not include any claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against Customers with respect to Customers' collection, capture, receipt, purchase, storage, dissemination,

---

[4]     Counsel made clear they would not seek fees for securing this clarification without a formal objection, ensuring that getting this better result for the Class was cost-free. (Stipulation ¶ 11.)

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos.

Alternatively, Ms. Allen respectfully requests that the Court deny final approval. As a final alternative, Ms. Allen respectfully requests that the Court grant such further or alternative relief as may be appropriate and just.

Respectfully submitted,

Dated: February 26, 2020

One of Ms. Allen's attorneys

Jay Edelson
jedelson@edelson.com
Ryan D. Andrews
randrews@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

Respectfully submitted,

Dated: February 26, 2020

Ashley Allen

9

## CERTIFICATE OF SERVICE

I, J. Eli Wade-Scott, an attorney, hereby certify that on February 26, 2020 I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system. Furthermore, I mailed the foregoing document to the following addresses:

Myles McGuire
Evan M. Meyers
David L. Gerbie
Andrew L. Heldut
MCGUIRE LAW PC
55 West Wacker Drive, 9th Floor
Chicago, Illinois 60601

Susan Fahringer
Nicola Menaldo
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101

Debra R. Bernard
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603

KCC LLC
222 North Pacific Coast Highway, Suite 300
El Segundo, California 90245

10

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of a class of similarly situated individuals, | Case No.: 2018-CH-15883 |
| | Calendar 8 |
| *Plaintiff*, | Judge Michael Mullen |
| v. | |
| JUMIO CORPORATION, a Delaware corporation, | |
| *Defendant*. | |

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

## DECLARATION OF J. ELI WADE-SCOTT

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true:

1.     I am an attorney admitted to practice before the Supreme Court of the State of Illinois. I am entering this Declaration in support of Ashley Allen's Objection to Approval of Class Action Settlement. This Declaration is based upon my personal knowledge except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.     Attached hereto as Exhibit 1-A is a true and accurate copy of an e-mail I received from Class Counsel Myles McGuire on February 25, 2020.

3.     Attached hereto as Exhibit 1-B is a true and accurate copy of an e-mail I sent to Mr. McGuire and Defendant's Counsel Debra Bernard on February 5, 2020.

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

4.      Attached hereto as Exhibit 1-C are true and accurate copies of a series of e-mails I exchanged with Mr. McGuire between February 5, 2020 and February 15, 2020, on which Ms. Bernard was copied.

5.      Attached hereto as Exhibit 1-D are true and accurate copies of a series of e-mails exchanged between myself, Jay Edelson, and Mr. McGuire between February 15, 2020 and February 18, 2020, on which Ms. Bernard was copied.

6.      Attached hereto as Exhibit 1-E is a true and accurate copy of a draft stipulation that I sent to Mr. McGuire and Ms. Bernard on February 18, 2020.

7.      Attached hereto as Exhibit 1-F are true and accurate copies of a series of e-mails exchanged between myself, Mr. Edelson and Mr. McGuire, on February 18, 2020, on which Ms. Bernard was copied.

8.      Attached hereto as Exhibit 1-G is a true and accurate copy of an e-mail I received from Mr. McGuire on February 25, 2020.

I declare under penalty of the perjury that the foregoing is true and correct. Executed this 26th day of February, 2020 at Chicago, Illinois.

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-A

FILED DATE: 3/5/2020 11:42 AM  2018CH15883



**Eli Wade-Scott <ewadescott@edelson.com>**

---

## Fwd: Prelipceanu/Jumio

**Myles McGuire** <mmcguire@mcgpc.com>                                   Tue, Feb 25, 2020 at 11:09 AM
To: Jay Edelson <jedelson@edelson.com>
Cc: Eli Wade-Scott <ewadescott@edelson.com>, Ryan Andrews <randrews@edelson.com>, David Gerbie
<dgerbie@mcgpc.com>

They're not disputing the effect but getting them to go on record is hard so ultimately it is a wordsmithing issue. At the end
of the day the customer cases remain actionable for their own violations (of which we think there are many btw) and I'm
certain there are ways to plead around the settlement which is what I told Jim when he first contacted me a month ago, or
I'll eat my hat.
[Quoted text hidden]

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-B

FILED DATE: 3/5/2020 11:42 AM   2018CH15883



**Eli Wade-Scott <ewadescott@edelson.com>**

---

## Jumio settlement questions

**Eli Wade-Scott** <ewadescott@edelson.com>                                                    Wed, Feb 5, 2020 at 5:42 PM
To: Myles McGuire <mmcguire@mcgpc.com>, "Bernard, Debra R. (Perkins Coie)" <dbernard@perkinscoie.com>
Cc: Jay Edelson <jedelson@edelson.com>, Ryan Andrews <randrews@edelson.com>

Myles and Deb -

We are writing on behalf of Ashley Allen, who is a class member in your Jumio deal. We wanted to follow up with you because the settlement materials are a little opaque. To be clear -- we have no desire to disrupt the deal in any way; we just want to better understand what's going on.

First, how do people know if they're class members? They have to affirm on the claim form that their photos or "Biometrics" were collected by Jumio (or Jumio's technology), but it looks like Jumio's entire service is back-end. People's interaction would have been with Jumio's customers, not with Jumio, right? Which leads me to my next questions:

How many BIPA claims is this releasing? The class definition only refers to collection by Jumio, but it's also releasing claims against all of Jumio's customers. Where are the customers identified? Do you believe that class members have claims against different customers for different collection issues? With regard to Ms. Allen, could you specify what customers you believe she interacted with?

Finally, do you have any estimate of how many users are actually in the Class? The materials don't give an estimate of what a claim might be worth. My understanding from the papers is that notice is going out to a nationwide class of people from whom Jumio collected data, and people have to self-affirm they're Illinois residents and thus in the class. Any back-of-the-envelope estimate on how many that might be?

Eli

--
Eli Wade-Scott | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.242.0859 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
ewadescott@edelson.com | www.edelson.com

 @EdelsonPC     Edelson-PC     EdelsonLaw

---

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies hereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

FILED DATE: 3/5/2020 11:42 AM 2018CH15883

# EXHIBIT 1-C

FILED DATE: 3/5/2020 11:42 AM   2018CH15883



**Eli Wade-Scott** <ewadescott@edelson.com>

---

## Jumio settlement questions

**Eli Wade-Scott** <ewadescott@edelson.com>                                    Sat, Feb 15, 2020 at 11:40 AM
To: Myles McGuire <mmcguire@mcgpc.com>
Cc: "Bernard, Debra R. (Perkins Coie)" <dbernard@perkinscoie.com>, Jay Edelson <jedelson@edelson.com>, Ryan Andrews
<randrews@edelson.com>, David Gerbie <dgerbie@mcgpc.com>

Myles,

We have no intent to be disruptive but, given the failure to answer basic questions, we're now considering all options. If
you can't give us full answers by Monday, will you agree to extend the opt out and objection deadline until 2 weeks after
you can answer our questions?

Eli

On Sat, Feb 15, 2020 at 11:19 AM Myles McGuire <mmcguire@mcgpc.com> wrote:
> Yes, but that should be plenty of time to determine whether to recommend your client opt-out as you
> indicated there was no desire to be disruptive. If you need the information sooner please contact David
> Gerbie (cc'd here) who's handling the matter for us. I know he's travelling for the holiday but will get back
> to you as soon as he can.
>
> On Fri, Feb 14, 2020 at 5:08 PM Eli Wade-Scott <ewadescott@edelson.com> wrote:
>> Sorry - we're not going to hear an answer until after Presidents' Day? That's 9 days before the deadline.
>>
>> On Fri, Feb 14, 2020 at 4:59 PM Myles McGuire <mmcguire@mcgpc.com> wrote:
>>> Thanks.
>>>
>>> No, my office has scattered for the holiday but will follow up with that information early next week.
>>>
>>> On Fri, Feb 14, 2020 at 4:23 PM Eli Wade-Scott <ewadescott@edelson.com> wrote:
>>>> Myles -
>>>>
>>>> Her address is ███████████████████.
>>>>
>>>> I understand why you might need to identify her transaction to figure out what customers she interacted with, but
>>>> the answers to our other questions are pretty basic about the deal and should be readily available. Are we going
>>>> to hear back from you today on those? Again, we reached out almost two weeks ago about this and the
>>>> deadlines in this case are coming right up.
>>>>
>>>> Eli
>>>>
>>>> On Fri, Feb 14, 2020 at 2:46 PM Myles McGuire <mmcguire@mcgpc.com> wrote:
>>>>> We're having trouble locating your client's transaction. Please forward her street address or zip code.
>>>>>
>>>>> On Tue, Feb 11, 2020 at 6:02 PM Eli Wade-Scott <ewadescott@edelson.com> wrote:
>>>>>> Myles - thanks. Given the deadlines coming up, if we could have an answer by Friday that'd be great.
>>>>>>
>>>>>> Eli
>>>>>>
>>>>>> On Mon, Feb 10, 2020, 6:46 PM Myles McGuire <mmcguire@mcgpc.com> wrote:
>>>>>>> Defense counsel has been out of the country but we're happy to address your client's concerns after we
>>>>>>> confirm her transaction information. My office will follow up once we do.
>>>>>>>
>>>>>>>
>>>>>>> On Mon, Feb 10, 2020 at 10:42 AM Eli Wade-Scott <ewadescott@edelson.com> wrote:

FILED DATE: 3/5/2020 11:42 AM  2018CH15883

Myles and Deb -

I'm following up on my e-mail from last week. We haven't heard from you (or even had so much as an acknowledgement of the e-mail). As I indicated, our goal was to get information and not be disruptive, but the odd way in which you seem to be handling this is raising some red flags for us.

Eli

On Wed, Feb 5, 2020 at 5:42 PM Eli Wade-Scott <ewadescott@edelson.com> wrote:

Myles and Deb -

We are writing on behalf of Ashley Allen, who is a class member in your Jumio deal. We wanted to follow up with you because the settlement materials are a little opaque. To be clear -- we have no desire to disrupt the deal in any way; we just want to better understand what's going on.

First, how do people know if they're class members? They have to affirm on the claim form that their photos or "Biometrics" were collected by Jumio (or Jumio's technology), but it looks like Jumio's entire service is back-end. People's interaction would have been with Jumio's customers, not with Jumio, right? Which leads me to my next questions:

How many BIPA claims is this releasing? The class definition only refers to collection by Jumio, but it's also releasing claims against all of Jumio's customers. Where are the customers identified? Do you believe that class members have claims against different customers for different collection issues? With regard to Ms. Allen, could you specify what customers you believe she interacted with?

Finally, do you have any estimate of how many users are actually in the Class? The materials don't give an estimate of what a claim might be worth. My understanding from the papers is that notice is going out to a nationwide class of people from whom Jumio collected data, and people have to self-affirm they're Illinois residents and thus in the class. Any back-of-the-envelope estimate on how many that might be?

Eli

--

Eli Wade-Scott | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.242.0859 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
ewadescott@edelson.com | www.edelson.com

| | | |
|---|---|---|
| | | |

_____

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies hereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-D

FILED DATE: 3/5/2020 11:42 AM　2018CH15883



Eli Wade-Scott <ewadescott@edelson.com>

---

## Jumio settlement questions

**Myles McGuire** <mmcguire@mcgpc.com>　　　　　　　　Tue, Feb 18, 2020 at 10:14 AM
To: Eli Wade-Scott <ewadescott@edelson.com>, Jay Edelson <jedelson@edelson.com>
Cc: "Bernard, Debra R. (Perkins Coie)" <dbernard@perkinscoie.com>, David Gerbie <dgerbie@mcgpc.com>, Ryan Andrews <randrews@edelson.com>

We certainly didn't intend to release any of your cases and do not want that. This is frankly the first I'm hearing that you had any. When the settlement was reached no cases were pending other than Jim's top filing, which we assumed was inadvertent. The only other cases filed since then that I'm aware of that could be impacted are his Juul and WeWork cases, both of which are subject to arbitration. The idea with the release is that it pertains to Jumio's conduct only. While the customers are being released for Jumio's violations, they remain liable for their own conduct (i.e., collection, storage, transfer, etc.). We recognize this is a novel resolution but think reasonable under the circumstances and supported by the facts in the underlying cases. If you want to discuss it further I'm happy to meet tomorrow or Thursday (I'm traveling today from a weekend of trying to teach my son to ski and am exhausted).

On Mon, Feb 17, 2020 at 2:08 PM Jay Edelson <jedelson@edelson.com> wrote:
> Myles,
>
> So there is no confusion:  we are not looking for a way to object to a settlement of yours.  Our concern is that the settlement might be effectively releasing countless other cases (including many of which we are involved in).  We understand that you told Jim that the release only extended to Jumio.  If that is the case, we can move on to other matters.  However, that is not how we read the settlement agreement.
>
> Jay Edelson | Edelson PC
> 350 North LaSalle Street, 14th Floor
> Chicago, Illinois 60654
> 1.312.589.6375 (direct) | 1.312.589.6370 (firm) | 1.312.589.6378 (fax)
> jedelson@edelson.com | www.edelson.com

 @JayEdelson　 @EdelsonPC　 Edelson-PC　 EdelsonLaw


Non-Compliant
Jay Edelson



CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

On Mon, Feb 17, 2020 at 11:33 AM Eli Wade-Scott <ewadescott@edelson.com> wrote:
> Myles,
>
> Thanks for the response. A few quick points: First, we made clear that we wanted the information prior to deciding what to recommend to our client. In fact, I specifically asked if you would agree to extend the time to opt out/object since you were struggling to get us the information in a timely way. Thus, the idea that we don't care what the facts are is simply a fabrication.

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

Second, if everything was perfectly clear in your settlement papers, one has to wonder why (a) you needed more time to respond to us and (b) you won't just point us to the relevant parts.

It seems, as we feared, that you are engaged in a settlement that is going to surreptitiously release claims of countless class members. Though you have a fiduciary duty to the class—which includes, but is not limited to, answering questions such as the ones we posed—that seems to be of no importance to you.

We will speak to our client and make a decision about what to do.

Best,

Eli

On Mon, Feb 17, 2020 at 11:19 AM Myles McGuire <mmcguire@mcgpc.com> wrote:
Since you're now considering objecting before receiving the answers to your questions, it appears those facts are immaterial to your position and that you decided some time ago to be disruptive despite your representations to the contrary. While my office was happy to address your client's concerns through an informal exchange of information as you requested and consider your request for more time in order to permit a dialogue to occur, we are no longer comfortable doing so. Instead, we think that the answers to your questions are plainly spelled out in the settlement papers filed with the court. If that does not satisfy your concerns, you are welcome to raise them with Judge Mullen, who not only understood the terms of the settlement, but was complimentary of it.

On Sat, Feb 15, 2020 at 11:41 AM Eli Wade-Scott <ewadescott@edelson.com> wrote:
Myles,

We have no intent to be disruptive but, given the failure to answer basic questions, we're now considering all options. If you can't give us full answers by Monday, will you agree to extend the opt out and objection deadline until 2 weeks after you can answer our questions?

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-E

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of a class of similarly situated individuals, | Case No.: 2018-CH-15883 |
| | Calendar 8 |
| *Plaintiff*, | Judge Michael Mullen |
| v. | |
| JUMIO CORPORATION, a Delaware corporation, | |
| *Defendant*. | |

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

## <u>STIPULATION TO AMEND SETTLEMENT AGREEMENT</u>

Plaintiff Alex Prelipceanu and Defendant Jumio Corporation (together, the Parties), hereby stipulate and agree as follows:

1.      Unless otherwise noted, the capitalized terms used in this stipulation that are not otherwise defined herein shall have the same meaning assigned to them in the Settlement Agreement between Plaintiff and Defendant.

2.      Class Counsel and Defendant's counsel were contacted by a Class Member seeking clarification of the Release entered into in this case as it relates to claims against Jumio's Customers. In order to allay those concerns, the Parties agree to clarify the Release as follows.

3.      The Settlement Agreement provides a Release to the Released Parties in exchange for payments to Settlement Class Members and injunctive relief. The Release provides that "each and every Releasing Party releases and forever discharges each and every Released Party from any and all Settled Claims." (Settlement Agreement § 11.1.)

4.      "Released Parties" includes Jumio Corporation (and its officers, directors, and other Jumio-related entities) and Jumio's Customers.  (Settlement Agreement § 1.26.)

FILED DATE: 3/5/2020 11:42 AM  2018CH15883

5.      "Customer" is defined as "a business or other entity that licenses, purchases or resells, either directly or indirectly, the Netverify service from Defendant and/or provides such Netverify service, either directly or indirectly, to individuals in Illinois such as the Settlement Class Members." (Settlement Agreement § 1.11.)

6.      "Settled Claims" is defined to mean:

> any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

(Settlement Agreement §1.27.)

7.      The Parties jointly intended at the time the Settlement Agreement was signed and presently intend that the Settled Claims include only claims against Customers for Jumio's own "collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos." (*Id.*)

8.      The Parties jointly intended at the time the Settlement Agreement was signed and presently intend that Settled Claims do not include any claims arising from Customer's own collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos.

9.      Accordingly, and pursuant to Settlement Agreement § 16.2, the definition of Settled Claims (Settlement Agreement § 1.2) is amended to read in full:

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

**"Settled Claims"** means any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

"Settled Claims" do not include any claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against Customers with respect to Customers' collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos.

10. The Final Approval Order shall reflect this amended definition of Settled Claims.

11. Neither the Class Member nor her counsel are receiving any other consideration

in exchange for not pursuing an objection, and did not request any.

**ALEX PRELIPCEANU**, individually and on behalf of a class of similarly situated individuals,

**JUMIO CORPORATION,**

/s/
*One of Plaintiff's Attorneys*

/s/
*One of Defendant's attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Andrew T. Heldut
McGuire Law P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com

Debra Bernard
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603
Tel: (312) 234-8400
dbernard@perkinscoie.com

aheldut@mcgpc.com

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-F

FILED DATE: 3/5/2020 11:42 AM   2018CH15883



**Eli Wade-Scott <ewadescott@edelson.com>**

---

## Jumio settlement questions

**Eli Wade-Scott** <ewadescott@edelson.com>                                    Tue, Feb 18, 2020 at 3:26 PM
To: Jay Edelson <jedelson@edelson.com>
Cc: Myles McGuire <mmcguire@mcgpc.com>, "Bernard, Debra R. (Perkins Coie)" <dbernard@perkinscoie.com>, David Gerbie <dgerbie@mcgpc.com>, Ryan Andrews <randrews@edelson.com>

Myles - we have no issue with Customers being released for Jumio's conduct only, but the release can be read to include Customers' own collection, possession, etc. The attached draft stipulation would address our concerns here.

As the stipulation makes clear, this would resolve our issues with the settlement and we wouldn't seek fees simply because you made this clarification.

Eli

On Tue, Feb 18, 2020 at 10:20 AM Jay Edelson <jedelson@edelson.com> wrote:
The novel solution is fine. We are just reading the release more broadly. We will look at it more closely and get back to you. But we dont have any objection to your framework. Enjoy skiing.

Jay Edelson
Sent from Polymail

On Tue, Feb 18, 2020 at 10:14 AM Myles McGuire <Myles McGuire > wrote:
We certainly didn't intend to release any of your cases and do not want that. This is frankly the first I'm hearing that you had any. When the settlement was reached no cases were pending other than Jim's top filing, which we assumed was inadvertent. The only other cases filed since then that I'm aware of that could be impacted are his Juul and WeWork cases, both of which are subject to arbitration. The idea with the release is that it pertains to Jumio's conduct only. While the customers are being released for Jumio's violations, they remain liable for their own conduct (i.e., collection, storage, transfer, etc.). We recognize this is a novel resolution but think reasonable under the circumstances and supported by the facts in the underlying cases. If you want to discuss it further I'm happy to meet tomorrow or Thursday (I'm traveling today from a weekend of trying to teach my son to ski and am exhausted).

FILED DATE: 3/5/2020 11:42 AM   2018CH15883

# EXHIBIT 1-G



**Eli Wade-Scott <ewadescott@edelson.com>**

## Fwd: Prelipceanu/Jumio

**Myles McGuire** <mmcguire@mcgpc.com>            Tue, Feb 25, 2020 at 9:11 AM
To: Jay Edelson <jedelson@edelson.com>, Eli Wade-Scott <ewadescott@edelson.com>, Ryan Andrews
<randrews@edelson.com>
Cc: David Gerbie <dgerbie@mcgpc.com>

> We're not sandbagging you all. We just got word of their position late last night. See below. We're fine with
> more time and we're fine with a stip but they are not because of notice issues. There's no dispute internally
> about what the release means and Jim's cases should survive at least in part as I told him, but amending the
> settlement agreement is not a simple exercise for defense counsel and we're working on an alternative that
> satisfies everyone. If you believe you have to proceed with an objection regardless then so be it but I frankly
> think it's unnecessary.
>
>
> ---------- Forwarded message ---------
> From: **Fahringer, Susan (Perkins Coie)** <SFahringer@perkinscoie.com>
> Date: Mon, Feb 24, 2020 at 8:33 PM
> Subject: Prelipceanu/Jumio
> To: mmcguire@mcgpc.com <mmcguire@mcgpc.com>, David Gerbie <dgerbie@mcgpc.com>
> Cc: Menaldo, Nicola C. (Perkins Coie) <NMenaldo@perkinscoie.com>, Bernard, Debra R. (Perkins Coie)
> <dbernard@perkinscoie.com>
>
>
>
> Hello, Myles. I promised to get back to you tonight on the issues of the stipulation and extension proposed by Edelson. After much
> discussion over the last several days, Jumio is not in a position to agree to either one, in part because we see serious issues with notice
> to the class (especially as to the extension). I'm sorry to give you this news and I hope Edelson realizes how beneficial the settlement
> is for class members. Let me know if you'd like to discuss further.
>
> Best regards,
>
> Susan
>
>
> **Susan Fahringer | Perkins Coie LLP**
>
> **PARTNER**
>
> 1201 Third Avenue Suite 4900
>
> Seattle, WA 98101-3099
>
> D. +1.206.359.8687
>
> E. SFahringer@perkinscoie.com
>
>
>
> ---
>
> NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email
> and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

FILED DATE: 3/5/2020 11:42 AM  2018CH15883