# Attachment D

```
 1  STATE OF ILLINOIS    )

 2                       )  SS:

 3  COUNTY OF C O O K    )

 4  IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

 5        COUNTY DEPARTMENT - CHANCERY DIVISION

 6

 7  ALEX PRELIPCEANU,            )

 8  individually and on          )

 9  behalf of a class of         ) No. 2018-CH-15883

10  similarly situated           )

11  individuals,                 )

12              Plaintiff,       )

13      vs.                      )

14  JUMIO CORPORATION, a         )

15  Delaware corporation,        )

16              Defendant.       )

17

18          TRANSCRIPT OF PROCEEDINGS had via Zoom

19  video conference at Cook County, Illinois 60602, in

20  the above-entitled cause on the 21st day of July,

21  A.D. 2020, at 12:00 noon.

22

23  BEFORE:  HONORABLE MICHAEL T. MULLEN.

24
```



```
 1   APPEARANCES:

 2

 3        McGUIRE LAW, P.C.,

 4        (55 West Wacker Drive, 9th Floor,

 5        Chicago, Illinois  60601,

 6        312-893-7002), by:

 7        MR. EVAN M. MEYERS,

 8        emeyers@mcgpc.com,

 9        MR. DAVID L. GERBIE,

10        dgerbie@mcgpc.com,

11            appeared on behalf of the Plaintiffs;

12

13        PERKINS COIE LLP,

14        (1201 Third Avenue, Suite 4900,

15        Seattle, Washington  98101-3099,

16        206-359-8000), by:

17        MS. SUSAN FAHRINGER,

18        SFahringer@perkinscoie.com,

19        MS. NICOLA MENALDO,

20        NMenaldo@perkinscoie.com,

21        MS. ANNA MOUW THOMPSON,

22        AnnaThompson@perkinscoie.com,

23                and

24
```



```
 1    APPEARANCES (Continued):

 2

 3         PERKINS COIE LLP,

 4         (131 South Dearborn Street, Suite 1700,

 5         Chicago, Illinois  60603,

 6         312-324-8400), by:

 7         MS. DEBRA R. BERNARD,

 8         dbernard@perkinscoie.com,

 9             appeared on behalf of the Defendant;

10

11         EDELSON PC,

12         (350 North LaSalle Street, 14th Floor,

13         Chicago, Illinois  60654,

14         312-589-6370), by:

15         MR. J. ELI WADE-SCOTT,

16         ewadescott@edelson.com,

17             appeared on behalf of the Objector,

18             Ashley Allen.

19

20    REPORTED BY:  JACQUELINE M. TIMMONS,

21             C.S.R., R.M.R., R.D.R.

22             Certificate No. 84-2949.

23

24
```



1       THE COURT:  We need the court reporter to

2    identify herself.

3       THE REPORTER:  Jacqueline Timmons with Esquire

4    Deposition Solutions, 312-782-8087.

5       THE COURT:  Good morning or afternoon, I

6    should say.

7            So, Ms. Timmons, just so it's clear,

8    this matter is proceeding via Zoom.  If you are

9    unable to hear any of the participants, I want you

10   to stop us and make it clear that you cannot hear

11   or you did not understand the individual.  We want

12   to have a clear and accurate transcript, if

13   necessary, on this case.  So it's up to you to do

14   that, and that includes me.

15           Do you understand that?

16      THE REPORTER:  Yes, Your Honor.  Thank you.

17      THE COURT:  Okay, Ms. Timmons, thank you.

18           And I am going to have the attorneys

19   identify themselves, as well as who they represent.

20      MR. MEYERS:  Good afternoon, Your Honor, Evan

21   Meyers on behalf of plaintiff.

22      MR. GERBIE:  David Gerbie on behalf of

23   plaintiff.

24      MS. FAHRINGER:  Susan Fahringer on behalf of



1  defendant, Jumio Corporation, from Perkins Coie.

2  And with me today are a couple of colleagues:

3  Debra Bernard, Anna Thompson and Nicole Menaldo.

4  They're off video to sort of avoid the Brady Bunch

5  effect for some of us.

6         THE COURT:  Okay.  Well, I certainly

7  appreciate that.  It can get a little distracting I

8  can tell you from my experience from the last month

9  or so with this.  So that is absolutely fine.

10             It is a public hearing, so everybody is

11  welcome.  As we are speaking, I am admitting

12  people, and just so it's clear, when you are

13  admitted, you are required to keep this on mute.

14  The only attorneys -- the only people who are

15  speaking are the attorneys.  At least, that's my

16  understanding that there is only eight objections,

17  so that's how this is proceeding.

18         MR. WADE-SCOTT:  That's correct, Your Honor.

19             I'm sorry, I haven't made my appearance

20  yet.

21         THE COURT:  All right.  Go ahead, counsel.

22         MR. WADE-SCOTT:  Good afternoon, Your Honor.

23  J. Eli Wade-Scott for objector, Ashley Allen.

24         THE COURT:  Counsel, good morning -- actually,



 1  it's afternoon already, so good afternoon.

 2          All right.  Anybody else who needs to

 3  identify themselves?  Everybody is welcome, as this

 4  is a public hearing.

 5          Hearing nothing, I think we are going to

 6  go forward.  This matter is before me to enter

 7  approval of a settlement on a class action case,

 8  and it is -- I'm not even going to attempt to

 9  pronounce it.  I'm just going to spell it, Alex

10  P-r-e-l-i-p-c-e-a-n-u versus the Jumio Corporation.

11          So I have received the submissions of

12  the parties.  There was an objection.  I have

13  reviewed all of the submissions of the parties,

14  including all of the attachments to the submissions

15  that have been provided to me.  So I think it best

16  to begin with the objection.

17          And, counsel, I have reviewed your

18  submission if you want to make your record.  Before

19  we get to that, I just want to understand a couple

20  of things.

21          Your client is not present; is that

22  correct?

23      MR. WADE-SCOTT:  That's correct, Your Honor.

24      THE COURT:  All right.  And why is that?



1    MR. WADE-SCOTT:  Ms. Allen is appearing today

2  through counsel.  We are here to represent her

3  views.

4    THE COURT:  So you are not requesting any type

5  of evidentiary hearing; is that correct?

6    MR. WADE-SCOTT:  No, Your Honor.  I think the

7  record before the court is sufficient.

8    THE COURT:  That is fine.  And can you explain

9  how it is that you believe your client has standing

10  to object in the manner that she is objecting.

11    MR. WADE-SCOTT:  Ms. Allen is a class member.

12  She did not exclude herself.  She received notice

13  in the case.  Ms. Allen complied through her

14  counsel, us, with all the requirements set out in

15  the order for objecting to the settlement.  I

16  believe everyone has been served.

17       She signed the objection, and we've

18  disclosed all of our past objections.  I don't

19  think there have been any issues raised by

20  plaintiff or Jumio about Ms. Allen's standing to

21  object.  But I am prepared to address them if there

22  are any issues.

23    THE COURT:  Well, I'm not clear in terms of

24  the objection that has been asserted in terms of



1    how she has the standing to assert unfiled causes

2    of action.  She's concerned about cases that are

3    not on file, that may never be on file.  So I think

4    that was part of the bases for your objection.  So

5    if you could clarify that for me, counsel.

6         MR. WADE-SCOTT:  Sure.  So the fact that she

7    has not filed claims yet does not mean that those

8    claims don't have value.  In fact, one of the

9    questions that we had for class counsel was, who

10   did she give her biometric data to that resulted in

11   Jumio getting it?  Class counsel wouldn't tell us

12   that.  So as far as identifying who the particular

13   Jumio customer is that she has claims against, we

14   haven't been able to get that information just yet.

15   But I think as a general matter, settlements

16   routinely are going to release claims that are both

17   filed and unfiled claims.  Your Honor has seen

18   countless releases that do that.  But the fact that

19   the claims are not necessarily on file does not

20   mean that they're not valuable.

21              I may have been, you know, hit by a car

22   last week.  I haven't filed my claim yet, but that

23   doesn't mean that claim doesn't have value.

24        THE COURT:  What specific claim are you



1 | referencing?

2 |     MR. WADE-SCOTT:  The claim that Ms. Allen

3 | would have under BIPA against Jumio customers, and

4 | the claims that the putative class would have

5 | against Jumio customers.  Ms. Allen doesn't happen

6 | to have filed, but there have been Jumio people in

7 | this class who have filed against Jumio customers.

8 | We raised WeWork and Jewel as relatively large

9 | companies that deploy Jumio that other class

10 | members think collected their biometric data and

11 | violated BIPA.  Those claims of those putative

12 | class members would be given up.  Ms. Allen's

13 | claims would be given up against whatever Jumio

14 | customer collected her data.

15 |     THE COURT:  Were you able to identify any

16 | specific claim or claims that would be extinguished

17 | by an approval of this settlement?

18 |     MR. WADE-SCOTT:  Ms. Allen's BIPA claims

19 | against the Jumio customer that collected her data.

20 | I don't think there's any debate about that.

21 |     THE COURT:  Who is that?

22 |     MR. WADE-SCOTT:  We don't know at this time.

23 |     THE COURT:  All right.  Okay.  So, counsel,

24 | the floor is yours.  You can state whatever



1   objection you have.  I think you have answered my

2   questions to the best of your ability, so you may

3   go forward.

4        MR. WADE-SCOTT:  Thank you, Your Honor.  I'll

5   be brief.

6            We've laid this out now in two separate

7   briefs.  The issue here is a very unusual one.

8   Your Honor has seen a lot of settlement agreements

9   before.  I think it's pretty rare that Your Honor

10  would see a case where the parties to a negotiation

11  have settled effectively two different cases.

12           Jumio thinks that it settled a case

13  against itself and all the customers that it sold

14  its biometric identification services to.  Class

15  counsel now kind of agrees, but the record before

16  the court before this, when we were asking class

17  counsel, well, what does the settlement do, they

18  were unequivocal that it did not release the claims

19  against the customers.

20           So if that's the case, there are two

21  separate sets of BIPA claims at issue here, and the

22  parties, when they went to negotiate this deal, one

23  party thought they were doing one thing and the

24  other party thought they were doing the other



 1  thing.  That matters particularly because this
 2  court has to evaluate what the value of the claims
 3  are against what was put up on the other side by
 4  the defendant, by the monetary relief here, by the
 5  prospective relief here.  And it's just not
 6  possible for this court to weigh on the factual
 7  record before it what was it that the plaintiffs
 8  was giving up in that negotiation.
 9          So, as Your Honor pointed out, we don't
10  have all the information about Jumio's customers.
11  The people that should have a lot of that
12  information are the parties to that negotiation
13  where that -- those claims are being given up.  An
14  explanation of that should be before this court,
15  because the court -- effectively it seems like what
16  happened here, reading between the lines, is that
17  the $7 million that Jumio agreed to pay was what
18  Jumio could pay.  It's what they have.  The
19  liability that they were facing was staggering in
20  proportion to that.  Class counsel noted they
21  navigated a bankruptcy a few years ago, and besides
22  that, they're a relatively young company.
23          So Jumio paid what it could, but there's
24  no analysis here of what those customers would have



1  paid.  Jewel and WeWork, the customers that we've

2  identified, are not small companies.  Your Honor

3  has other BIPA cases.  You know that those claims

4  can be valuable, and where a company has the

5  ability to pay freight, that shouldn't be

6  discounted.  But there's no explanation here of

7  what a customer is willing to pay.

8            There's also no explanation here of what

9  the claims against the customers might be worth.

10 There's traditional collection and retention

11 issues, but we don't know, did the customers

12 disclose this biometric data to anyone else?  Did

13 they secure it in compliance with BIPA?  It's not

14 clear that those issues were explored at all.

15           And, Your Honor, again, you've seen many

16 settlements.  You're involved in many of these BIPA

17 cases with my firm and these firms.  I would like

18 to think that you could typically count on class

19 counsel to have investigated these issues before

20 settling the case and factoring them appropriately

21 and being able to explain, you know, this is what

22 the value was, this is what we considered.  There's

23 always risk.  There is an appropriate deal.  I

24 think the court can count on that.

1          But here, the record is, those weren't

2    factored in, because class counsel thought they

3    were doing something different than what Jumio

4    thought they were doing.  I think that's really

5    unusual, and it's just not possible for the court

6    to evaluate that first Korshak factor, what's the

7    value of the claims against what's being given up,

8    when fundamentally from the beginning, the parties

9    thought they were doing different things.

10          I'm happy to address any other questions

11   that Your Honor has, but, again, we've briefed

12   this.  If I can have just a moment to respond to

13   anything that class counsel or defendant might say,

14   I'll keep it very brief.

15        THE COURT:  Okay.  Thank you, counsel.

16          And who wants to respond on behalf of

17   the plaintiff?

18        MR. MEYERS:  I will, Your Honor.  Evan Meyers

19   on behalf of plaintiff.

20          Thank you, Your Honor.  And I will -- if

21   Your Honor -- it sounds like you would like me to

22   address the objection only and not go through

23   any --

24        THE COURT:  At this point.



1      MR. MEYERS:  Okay.  So let me address the

2    objection quickly, because Your Honor has our

3    written response.  Your Honor has --

4      THE COURT:  So it's clear, Mr. Meyers, we're

5    not in a hurry here.

6          Go ahead.

7      MR. MEYERS:  All right.  You have Jumio's

8    written response, and I think everything is set

9    forth there, and this is a very strong deal.  And

10   it's important to note that the objector,

11   Ms. Allen, is not taking issue with any other

12   aspect of the deal other than this purported

13   release issue.  Not with the benefits being

14   provided, the attorneys' fees, the notice, and I

15   won't take you through anymore why those are -- you

16   know, represent a very, very strong deal.

17          Suffice it to say, notice went out to

18   170,000 people, approximately, by direct notice, as

19   well as electronic notice, publication notice.

20   There was one objection, and it's the individual

21   that you're talking to now.  There was 14,500

22   individuals who disagree.  There's 14,500

23   individuals who believe it's a good deal, who had

24   ability to read the release, who believe that



 1   whatever release they are providing as set forth in
 2   the agreement, it's worth the $275 or more that
 3   they will be receiving and that they ready to
 4   receive, and we're getting calls from people
 5   wanting to know where their money is.
 6            But specifically to address the
 7   objection, Your Honor was correct in the first
 8   issue that it raised to counsel, which is what
 9   cases are Ms. Allen going to be extinguishing here?
10   And the answer is, there are none.  They have not
11   identified one.  This is not a situation where
12   Ms. Allen has a lawsuit and is saying, wait, a
13   second, I'm about to give up this lawsuit for
14   something that I don't deem to be adequate
15   compensation.  She has not filed a lawsuit against
16   Jumio.  She has not filed a lawsuit against any of
17   Jumio's customers that we're aware of, and
18   apparently they're not aware of either.  This is
19   really a hypothetical exercise that she just wants
20   to preserve any potential claims that she may or
21   may not have against some customer down the road.
22   And, you know, and counsel is pointing to
23   correspondence between them and class counsel from
24   a year ago as a distraction, as a way to try to



1   show somehow that we, as class counsel, were not

2   aware of the scope of the release, or somehow there

3   was daylight between us and the defendant.  And

4   that's not true, okay.

5           Even if it was relevant to look at

6   correspondence and e-mails or phone calls from a

7   year ago, that is not relevant to what the release

8   actually says.  The language of the release is not

9   vague or ambiguous.  The release says what it says.

10  It says that the release is broad enough to

11  encompass claims against Jumio's customers that

12  arise from Jumio's collection of biometrics from

13  the customers' use of Jumio's NetVerify.  It is not

14  limitless.  It does not release all BIPA claims.

15  We don't even know what claims that they're

16  referring to, because they're hypothetical.  But

17  not all claims would be released in some

18  hypothetical lawsuit.  Regardless, the release is

19  broad enough to encompass at least some BIPA claims

20  related to Jumio's customers.

21          And as Ms. Fahringer, I'm sure, would be

22  happy to tell you about, that was absolutely

23  essential to any release.  Jumio does not want to

24  be embroiled in a lawsuit, indemnification claims



1   that it may have from its customers.  It wanted

2   total peace.  And the way that total peace, was

3   with this release, which is set forth in writing.

4   Again, no one else has a problem with it.  And

5   there is fair and adequate consideration given for

6   that release, $275 based on how many claims were

7   filed.  And that is fair, reasonable and adequate

8   compensation for a class action against Jumio and a

9   release against Jumio and its customers for some

10  claims based on the extensive defenses that Jumio

11  has, and its customers have, that not only are

12  based on the fluid nature of BIPA law right now,

13  but are unique.  Gramm-Leach-Bliley, you know,

14  defenses, for example, arbitration claims.  And it

15  is telling that this is -- they're trying to make

16  it seem that, again, we're somehow going to be

17  extinguishing, you know, all of these lawsuits.

18  That's a fantasy.  There are two lawsuits that were

19  filed against Jumio customers, none of which are

20  addressing res judicata right ow.  None of them are

21  by the firm that's representing Ms. Allen.  There

22  are not some vast amount of lawsuits against

23  customers or against Jumio.  This is all

24  hypothetical, and if those individuals want to



1  bring claims against Jumio, or certainly its

2  customers, then they can file claims against the

3  customers, and then we can assess what the nature

4  of -- the court can assess what the nature of those

5  claims may be.  But what we have here is an attempt

6  to make it seem like this release is vague, when

7  it's not vague.  It's simply something that

8  Ms. Allen, or, rather, her counsel doesn't like,

9  because, as they did state in their correspondence,

10  that there are other customers of Jumio that they

11  may have an interest in filing suit against.  So

12  they just want to protect potential, hypothetical

13  lawsuits that they may have in the future.

14          That is not enough, Your Honor, I

15  contend, to deny 14,500 people who had access to

16  the release, who have no problems with it, and

17  filed claims and are waiting nearly $300 in relief

18  from this settlement.

19          I'm happy to go through more detail.

20  I'm certainly happy to address any issues not

21  related to the objection if you'd like.  But we

22  believe that what counsel is doing is a distraction

23  by trying to make it seem that somehow we were

24  duped or that somehow we weren't on the same page



```
 1   with the defendant.  That's not true.

 2              As Ms. Fahringer will tell you, this

 3   release was of the utmost importance.  It was

 4   heavily negotiated with the assistance of

 5   Judge Holderman, who submitted a declaration where

 6   he attests to the fact that he was involved in the

 7   language of the settlement, including the language

 8   of the release, that it is not unreasonable,

 9   vis-a-vis other settlements that always release

10   other entities, affiliates, employees,

11   shareholders, et cetera.  And in no other

12   settlement does the settlement papers actually

13   talk -- tell the class members, well, here are the

14   claims that you might want to file against the

15   shareholders of the defendant, here are the claims

16   that you may want to file against the affiliates of

17   the defendant.  That doesn't happen there.  It

18   doesn't happen in the lawsuits that they filed, and

19   it doesn't happen here.

20              Under the Korshak factors, this is a

21   fair, reasonable and adequate settlement.  Notice

22   was as robust as it gets.  There were 94 opt-outs,

23   something that probably Ms. Allen should have

24   chosen to do if she really wanted to preserve her
```



1   rights.  There was only one objection.

2           The class has overwhelmingly supported

3   this for good reason.  It is a solid benefit with

4   substantial prospective relief as well in light of

5   a very challenging litigation against Jumio.  The

6   release is reasonable, and this case should be

7   finally approved so we can start getting people

8   their money.

9           I will be happy to answer any questions

10  that Your Honor may have.

11  THE COURT:  You went beyond exactly what I was

12  trying to focus you on, and that was the objection.

13  You went a little more expansive, but I appreciate

14  that.  I have reviewed the submissions.

15          Counsel for Jumio, did you want to

16  address the objection and the objection alone at

17  this point?

18  MS. FAHRINGER:  Thank you, Your Honor.  I'd be

19  pleased to.  And I will avoid retreading ground

20  already well covered by class counsel.

21          I think there are a few issues that

22  Jumio can speak to from a unique perspective as the

23  other party in the room during the negotiations and

24  the party who, in fact, was the one to decide



 1  | whether to agree to the settlement agreement or
 2  | not.
 3  |           I'd like to cover, I guess, two main
 4  | issues.  One is the argument that the release is
 5  | too broad in comparison to the amount of relief
 6  | obtained by the class members.  And I would
 7  | underline that the release was part of an intricate
 8  | and lengthy and extensive month-long, hard fought
 9  | negotiation.  It was commensurate with the payment.
10  | In other words, the payment was agreed to because
11  | of the scope of the release.  That payment took
12  | into account and required the release of the scope
13  | set forth in the settlement agreement.
14  |           In particular, that payment and the
15  | release and the settlement agreement as a whole
16  | took into account the strength and weaknesses of
17  | the claims being released.  The most important of
18  | Korshak factors, it is not consistent with reality
19  | to imagine that those lengthy, extensive
20  | discussions did not do so.  The weaknesses in the
21  | claims both against Jumio and against Jumio's
22  | customers and the other released parties were, in
23  | our view, very, very serious.  They included a
24  | challenge to the very constitutionality of the

1  statute, which under the facts set forth in this

2  case, could have been a very significant threat.

3  Regardless, all of those defenses, including that

4  many other customers, if not expressly exempt from

5  BIPA through its provisions, the GLBA exemption,

6  for example, plays a very, very substantial role

7  here.  They were also -- many of them had their own

8  class action waiver provisions and arbitration

9  agreements with customers directly.

10        So to imagine that the strength of

11 claims against the customers was a highly valuable

12 asset just because this is a BIPA case and you can

13 describe those as BIPA claims against customers is

14 just not consistent with the facts of this case.

15 It is not consistent with reality, the reality that

16 we explored and covered extensively in these

17 discussions.

18        To be clear, if the release had been

19 narrower, there would have been no deal.  This was

20 essential.  Why?  Because this release, under these

21 terms, was the only release that would give Jumio

22 peace, and that's what Jumio required in order to

23 pay $7 million for this case, for this settlement.

24 Had Jumio not bought peace to that degree, it would

```
 1   have been better to spend that money, and Jumio was
 2   prepared to spend that money, defending this case
 3   extensively.
 4           A couple of points raised by counsel for
 5   Ms. Allen.  One is the argument that the release is
 6   ambiguous.  I would underline that the release was
 7   not only not ambiguous, but, in fact, very -- and
 8   the extent of the release, was very detailed in a
 9   very express way in the agreement itself.  There
10   was not -- there were not phrases in that agreement
11   that were subject to two interpretations.  It is
12   not subject to parol evidence and colloquial back
13   and forth among class counsel and anyone else about
14   it.  It defined release claims.  It defined
15   released parties.  It defined customers.  It
16   defined the released claims as settled by it.
17           The issue that this might be a notice
18   issue, in other words, that this is a -- the
19   argument put another way is that this a due process
20   issue is mistaken.  The notice of settlement fully
21   comported with due process.  The process itself was
22   approved by the court and the notice was gold
23   standard and more than adequate.  It informed class
24   members of the subject matter of the case, what the
```



1   claims were, et cetera.

2              So there's not a due process issue.

3   What is the -- and I will close with this, Your

4   Honor, the nature of the complaint, the objection

5   by Ms. Allen, is essentially that the settlement

6   agreement terms were not good enough and that she

7   thinks that better were there to be had.  She

8   suggests that class counsel were duped.  I was

9   there.  They were not.  The essence of the

10  objector's argument is to compare a deal that was

11  not achievable with a description of the release

12  that is not in accord with reality.

13             This is not the sweeping release that

14  counsel for the objector is saying it is.  It was

15  circumscribed by the defined terms.  It does not

16  release Jumio's customer from any and all BIPA

17  claims ever.  It's tied to the subject matter of

18  this case.  It's tied to Jumio and use of

19  NetVerify, and it is the sort of release that Jumio

20  would be entitled to, the sort of closure that

21  Jumio would be entitled to if this case were to

22  proceed on the merits to and through trial.  And

23  Jumio is entitled to no less.  So that's -- with

24  that, I will close, Your Honor, and address any

```
 1   further questions you might have.

 2        THE COURT:  Thank you, counsel.

 3             Counsel for Ms. Allen, did you want any

 4   rebuttal?

 5        MR. WADE-SCOTT:  Your Honor, if I could,

 6   certainly.

 7             Speaking very briefly to what the

 8   release is, the issue is whether or not the

 9   customers are released for their own use of

10   NetVerify.  An analogy that we used in our reply

11   brief was the employee time clock cases that Your

12   Honor is familiar with.  There are now cases

13   against time clock vendors and the vendors

14   themselves are collecting biometric data, and, of

15   course, there are dozens or hundreds of cases

16   against --

17        THE COURT:  Anybody -- if I may just interrupt

18   you for one moment.  Anybody other than the

19   attorneys have to stay on mute.  If they do not

20   stay on mute, I will remove them from the meeting.

21   The only people who are talking are the attorneys

22   and myself.

23             You may proceed, counsel.

24        MR. WADE-SCOTT:  Thank you, Your Honor.
```



 1              So the question is not whether it's

 2     appropriate to release Jumio for the use of

 3     NetVerify, whether or not the customers are being

 4     released.  In the employment context, those are

 5     valuable plaintiffs, because the employees

 6     themselves are, obviously, or at least many

 7     plaintiff's allegations, are collecting biometric

 8     data.  So to say it's a non-issue whether or not

 9     customers' own use of NetVerify is being released

10     kind of misses the point.  That's the whole issue.

11              Both defense counsel and class counsel

12     have essentially raised the argument saying, What

13     are these cases, what value do they possibly have?

14     That is also our question.  That's what the court

15     needs to evaluate in order to approve this

16     settlement.  And there's no discussion about what

17     the claims against the customers are in terms of

18     value.  They haven't even said how many customers

19     there are.  The court still does not know.  We do

20     not know.

21              Ms. Fahringer just now said something

22     about the weakness of the claims against the

23     customers.  The court should hear about that.  If

24     there are no claims against the customers, it needs

1    to be discussed in these final approval papers,

2    because that is the basis of our objection.

3              It's entirely routine to release certain

4    claims against non-parties, as long as it's sussed

5    out in the approval process.  But as we pointed out

6    in our brief, Judge Kennelly rejected a settlement

7    for the same reason.  When it seemed that there was

8    a second set of claims against the second set of

9    defendants, it was being released with no

10   explanation.  That's the problem.  There needs to

11   be some explanation for this court to evaluate it

12   and decide, yes, that's okay, actually, there's

13   enough value on the table; actually, you all

14   explored this enough; that's fine.  We just don't

15   have the explanations here.  It's almost the first

16   that we've heard about the value of the claims

17   against its customers today before the court.

18             On whether or not there was daylight

19   between what the parties were negotiating, I won't

20   relitigate that here.  The record is pretty clear

21   about what happened.  The e-mails between class

22   counsel and ourselves were pretty clear that class

23   counsel did think that the customers were being

24   released for their own use of NetVerify, but now



 1   everyone is saying, well, yes, they are.  And

 2   actually it was deemed immaterial to the deal.  So

 3   it is highly unusual to have that kind of whiplash

 4   between preliminary approval and final approval to

 5   say, no, these claims are not released.  And now

 6   saying, well, they are being released and no

 7   explanation between it what the value of them is.

 8          As far as -- as far as class counsel's

 9   own interest in the cases, we are interested for

10   the purposes of Ms. Allen and the class that she

11   would seek to represent it against the Jumio

12   customer.  If those customers have valuable claims,

13   I think that's it's appropriate that we're looking

14   out for the interest of those class members.  In

15   fact, I think that that's an important part of thee

16   objection process.  And there was, again, a

17   suggestion that Ms. Allen should have just excluded

18   herself.  But the idea is Ms. Allen stayed in to

19   speak up for herself and for the other class

20   members.  And our view is somebody had to do it.

21   So I don't think that's a reason to discount what

22   Ms. Allen is saying about this deal.

23          I would ask the court not approve the

24   settlement today.  There's no explanation of why



1  the claims against the customers were completely

2  discounted, and the court definitely needs to say,

3  this deal is fair and reasonable and adequate.

4          THE COURT:  Thank you, counsel.

5                  I'll take it under consideration.  I

6  will hear the motion by plaintiff's counsel at this

7  time seeking final approval.

8                  And I'm going to say this once again for

9  the last time.  Somebody does not have their Zoom

10 on mute.  You must be on mute.  I'm getting a lot

11 of background noise, and it's incredibly annoying

12 and distracting.  So if you don't take yourselves

13 off mute -- if you take yourselves off mute, you

14 will be excluded from this meeting.

15                 All right.  Mr. Meyers, I think you want

16 to go forward with the motion that brings us

17 together.  I am considering the objection, and I

18 will give my ruling on that at the same time.

19         MR. MEYERS:  Thank you, Your Honor.  And I

20 will -- some of this I hope not to be too

21 redundant, but let me just give you a -- again, a

22 summation of why this is a strong deal that

23 warrants final approval.

24                 Your Honor obviously has our



1   submissions, Jumio's submissions, declarations from

2   the administrator, from Judge Holderman, but let me

3   just take you through a short version.  This class

4   action was filed against Jumio in December of 2018

5   after Jumio asserted a motion to dismiss.  And the

6   case -- the complaint was amended.  And then they

7   asserted numerous affirmative defenses.  The

8   parties sought resolution and did so in a mediation

9   with Judge Holderman of JAMS in July of 2019.  The

10  parties made progress at that mediation, but it

11  took months of contentious negotiations with a lot

12  of hand-holding from Judge Holderman to reach -- to

13  reach the settlement that Your Honor preliminarily

14  approved in December of 2019.

15          Now, the settlement provides a

16  $7 million fund, which is one of the largest BIPA

17  settlement funds ever created and certainly that

18  has ever been preliminarily approved.  It also

19  provides for significant prospective relief which

20  will ensure either the elimination or the reduction

21  in any potential future BIPA claims that someone

22  might have.

23          Per the agreement in Your Honor's

24  preliminary approval order, notice was implemented



1    shortly after preliminary approval.  And it was

2    robust:  As I said, 170,000 direct notice mailings;

3    notice in three Illinois newspapers, print and

4    online; online advertising through Google Display

5    Network, which resulted in millions of impressions;

6    and the creation of the settlement website, which

7    has all the relevant documents, which includes

8    instructions about how to object, how to opt out

9    and which permitted the online submissions of

10   claims and exclusions.  And, as you can see, the

11   notice was quite successful, with 14,500 people,

12   approximately, who submitted valid claims, which

13   takes the amount that each would receive to

14   approximately a little under $300, which is a

15   sizable amount of money, particularly -- and this

16   was even done before the current economic problems

17   in our country.  It's a sizable monetary relief for

18   claims which were highly challenged and were

19   questionable.  And, again, the class's support has

20   been overwhelming, not just in the amount of claims

21   that were filed, but the relatively low number of

22   opt-outs and the sole objection being the one that

23   you are hearing today.  We haven't even heard an

24   informal complaint from anyone about money or



1  anything about it.  No one has asked the questions,

2  about, you know, the scope of release.  Everyone

3  has had the opportunity to read the release and has

4  agreed, 14,500 of them, that it is a good

5  settlement they want to take advantage of.

6       THE COURT:  Just so it's clear, Ms. Allen

7  certainly has taken issue with the scope of the

8  settlement.

9       MR. MEYERS:  Of course, Your Honor.  Of

10  course, and I'm not going to rehash what we just

11  talked about with the objection, because I know we

12  just went through that.

13          The final approval papers go forward by

14  setting forth the Korshak factors that Your Honor

15  would consider.  And I don't need to do those again

16  here, but suffice to say, it's the first factor

17  which is the most important, which is the value of

18  the relief weighed against the claims at issue and

19  the strength of the claims at issue.  And we think

20  that all the Korshak factors are readily satisfied

21  here, in particular the first one; again, a little

22  under $300 per person for something with unique

23  defenses to Jumio and its customers to a range of

24  customers, again, that there are no -- there is no



 1  flood of litigation that's being released here that

 2  customers are otherwise seeking to pursue.  There

 3  is no lineup of people who are suing Jumio's

 4  customers.  This is all hypothetical, and the

 5  individuals who read the release and read the

 6  agreement believe that it is a good, strong deal

 7  worthy of the release and worthy of the nearly $300

 8  that they will receive.

 9            So I don't want to get back into the

10  objection, but I believe that under all the factors

11  that Your Honor is supposed to weigh under the

12  Korshak test is a fair, reasonable and adequate

13  settlement.  It does not necessarily have to be the

14  best settlement.  It does not necessarily have to

15  be as good or better than some hypothetical

16  settlement that objector's counsel wants to point

17  to.

18            The question is, in light of the facts

19  at issue here, not hypothetical facts about some

20  future claim that's unknown that may or may not

21  exist, is this settlement fair, reasonable and

22  adequate.  And the answer, Your Honor, is that it

23  is.  And there's nothing that Ms. Allen or her

24  attorneys have said that should do anything to



 1   change your mind about that and to upset the

 2   approval process and prevent 14,500 people from

 3   getting substantial relief.

 4           And so I would ask you -- I'm happy to

 5   answer any questions -- I would ask you to enter

 6   final approval so we can proceed with moving

 7   forward and giving up benefits to the class.

 8       THE COURT:  Thank you, counsel.

 9           And counsel for Jumio?

10       MS. FAHRINGER:  Nothing to add, Your Honor.  I

11   think class counsel covered the points we would

12   have made to the extent we would have made any.

13       THE COURT:  Thank you.  And your submissions

14   were very complete, and I indicated that I have

15   reviewed your submissions, as well.

16           There is a motion seeking the approval

17   of the class action settlement that is set forth

18   with particularity, if you will, within the

19   submissions of the parties.  There also is an

20   objection to the settlement.  I have reviewed the

21   settlement language, the release, if you will.

22   There was specific citations by the objector, that

23   is, Ms. Allen, to portions of the settlement

24   agreement and specifically to paragraphs 1.1, 1.25



 1    and 1.27.

 2              One of the arguments or the essential or

 3    essence of the argument of the objector is that the

 4    term or terms are ambiguous.  I have carefully

 5    reviewed the settlement agreement, and I have

 6    listened carefully during the presentation by

 7    Ms. Allen's counsel, who is very experienced and

 8    very persuasive, and I certainly respect the

 9    arguments in all regards.  However, I believe that

10    the language is clear and unambiguous, despite the

11    argument to the contrary.

12              My review of the release is that all

13    terms are specifically defined, and that the claims

14    that are being released are being released for

15    adequate consideration.  Ms. Allen's objection is

16    overruled.

17              In terms of the settlement, the court is

18    required to review, as the parties indicated, the

19    Korshak -- that's K-o-r-s-h-a-k -- factors.  There

20    are eight factors that are identified in the

21    Korshak decision.  I have reviewed each and every

22    one of those in terms of analyzing the settlement

23    that is performing.

24              In this settlement, there are 170,000



 1  class members.  14,000 claims have been submitted.

 2  That tells me that the notice that I had

 3  preliminarily approved, or indicated was

 4  sufficient, was, in fact, just that.  It provided

 5  proper notice to class members, and that's based

 6  upon the number of claimants in this case, in other

 7  words, the individuals who have submitted claims,

 8  14,000 in number.

 9            In terms of the adequacy of this

10  settlement, I'm just dealing initially with the

11  notice itself, but the post term is a $7 million

12  non-reversionary resolution of this case.  There

13  are 94 opt-outs, which is an incredibly small

14  percentage of the class.  And, again, we talk about

15  the one objector.  And so it is clear that that

16  objection, which I have overruled, was brought in

17  good faith, at least that's how I'm viewing it.  I

18  believe that the amount of this settlement is

19  certainly fair and reasonable, as well as adequate.

20  I believe that the entirety of the settlement

21  agreement is fair, reasonable and adequate after

22  analyzing each and every term and each and every

23  aspect of the settlement in light of the eight

24  Korshak factors.  And that is my specific



 1  conclusion, that settlement is fair, reasonable and

 2  adequate in all respects.  The motion for approval

 3  is granted.

 4          We have not addressed the attorneys'

 5  fees, and I want to hear from counsel, Mr. Meyers,

 6  about that.

 7      MR. MEYERS:  Your Honor, thank you.  I think

 8  the request for fees speaks for itself with our

 9  submission.  Your Honor, we believe that the

10  percentage of the fund approach, the analysis, is

11  proper.

12          We believe what we have sought is

13  40 percent of the $7 million as an attorney fee,

14  which we believe is a reasonable award based on the

15  benefits provided to the class for all the reasons

16  that Your Honor agrees is a strong deal.  We think

17  it's worthy of compensation to the class counsel of

18  40 percent.  We believe that the settlement

19  benefits would not be available but for the work

20  that we did.  We believe that this was a long,

21  contentious process that resulted in the very

22  positive benefits for the class.  And we think it's

23  worthy of not just the 40 percent, but also the

24  incentive award which we have requested of $10,000



```
 1   for the main plaintiff.  We believe that that is
 2   within the range of incentive awards that have been
 3   awarded in the Circuit Court of Cook County, and
 4   that is to compensate the plaintiff for the time
 5   and effort that he put into this case, putting his
 6   name on a public filing, putting his name on a
 7   document that went out to tens of thousands of
 8   individuals, and everything that comes from that,
 9   and was put on social media and ads, that he at all
10   times has been helpful, cooperative in reviewing
11   documents in talking with us, and we think $10,000
12   out of 7 million is very reasonable for his
13   compensation and that 40 percent is reasonable for
14   compensation for class counsel.
15              Again, I'm happy to answer any questions
16   that you may have, but we believe that the
17   justification for the award is set forth in the
18   papers.  And I would remind Your Honor that nobody
19   has objected to the fee award.  It was put forth in
20   the notice that we would seek up to 40 percent.
21   The fee petition was posted on the settlement
22   website weeks before the objection deadline.
23   Nobody objected to it either informally or
24   formally, including Ms. Allen herself.  We believe
```



 1  that the class has been very responsive positively

 2  to the deal with no negative response to the fees

 3  being sought.  That being said, please let me know

 4  if you have any questions.

 5      THE COURT:  Just so it's clear, I have

 6  defended an application, of course, to scrutinize

 7  each and every aspect of this resolution.  That

 8  includes the attorneys' fees as well an incentive

 9  award that is requested, and I have done just that.

10          Counsel for Jumio.

11      MS. FAHRINGER:  I have nothing to add to the

12  description of class counsel as to their fees with

13  one exception, which is, it is not an

14  understatement to say that it was clear from

15  Jumio's perspective that a great deal of effort had

16  been undertaken, a great deal of work had been done

17  in connection with investigating this case and,

18  frankly, pursuing it, and it was a very

19  professional but also quite a difficult process.

20      THE COURT:  Thank you, counsel.

21          In terms of the incentive award, I think

22  in light of the extent of the case in terms of a

23  170,000 class members and the cooperation that

24  Mr. Meyers has identified and that has set forth



1   with some particularity in the submissions of the

2   parties, as well as the information contained

3   within the entire court record, I believe the

4   request of an incentive award is fair and

5   reasonable and adequate as well.  And that is

6   $10,000, which I am specifically approving for

7   those reasons.

8            The attorneys' fees request is

9   requesting 40 percent of the award.  A couple

10  things about that request.  I believe that it is

11  appropriate, that the attorneys' fees are based

12  upon a percentage of the fund that has been

13  created.  And I agree with Mr. Meyers in that

14  regard.  In terms of the amount of the attorneys'

15  fees that are requested, the submissions of

16  Mr. Meyers and counsel for Jumio indicated, reflect

17  not only that the counsel is extremely experienced

18  in consumer fraud and consumer-related litigation,

19  as well as significant experience in class action

20  cases such as this, indicates to me that this

21  was -- and also in light of the amount of work that

22  has been identified within the submissions of the

23  parties, indicates to me that without counsel, I

24  suspect that the significant settlement amount



 1  would not have been reached.

 2           This attorney, as well as the firm, was

 3  very experienced and did a terrific job in

 4  identifying the specific issues and working through

 5  the issues in terms of the potential legal

 6  obstacles that the parties have set forth and which

 7  I recognize, given my experience with cases

 8  somewhat similar to this case.  I believe the

 9  amount of the attorneys' fees of 40 percent are

10  justified, given the extraordinary work that

11  plaintiff's counsel has contributed to this case

12  and in the representation of the plaintiff, as well

13  as all the class members, and I believe, based upon

14  my review, that the requested fee of 40 percent is

15  fair, reasonable, and adequate as well.  And I'm

16  specifically approving of that.  I'm approving of

17  the final resolution of the case as set forth.  And

18  I congratulate all parties for doing an outstanding

19  job on behalf of their respective parties.

20           I hope to see everybody again on another

21  matter soon, and I suspect I will.  I need a draft

22  order submitted to me consistent with my rulings

23  this morning, or this afternoon now, and send that

24  to Ariata Panzarino.  You should have her e-mail



TRANSCRIPT OF PROCCEEDINGS                           July 21, 2020
ALEX PRELIPCEANU vs JUMIO                                        42

1 | address.   Submit it in Word format so in the event

2 | that I need to make any additions or deletions, I

3 | will be able do that.

4 |           Are there any questions, counsel?

5 |      MR. MEYERS:  No, Your Honor.

6 |      MS. FAHRINGER:  No, Your Honor.

7 |      MR. WADE-SCOTT:  No, Your Honor.

8 |      THE COURT:  Everybody have a great day.

9 |      MR. WADE-SCOTT:  Thank you, Your Honor.

10 |      MR. MEYERS:  Thank you, Your Honor.

11 |      MS. FAHRINGER:  Thank you, Your Honor.

12 |      MR. MEYERS:  We'll send you that final

13 | approval order.  Thank you.

14 |      THE COURT:  Thank you.  Good luck, everybody.

15 |      MR. MEYERS:  Thank you.

16 |      MR. WADE-SCOTT:  Thank you, Your Honor.

17 |              (WHICH WERE ALL OF THE PROCEEDINGS

18 |               HAD IN SAID CAUSE ON THIS DATE.)

19 |

20 |

21 |

22 |

23 |

24 |



```
 1    STATE OF ILLINOIS )

 2                      ) SS:

 3    COUNTY OF DU PAGE )

 4              I, JACQUELINE M. TIMMONS, a Certified

 5    Shorthand Reporter of the State of Illinois, do

 6    hereby certify that I reported in shorthand the

 7    proceedings had at the hearing aforesaid, and that

 8    the foregoing is a true, complete and correct

 9    transcript of the proceedings of said hearing as

10    appears from my stenographic notes so taken and

11    transcribed under my personal direction.

12              IN WITNESS WHEREOF, I do hereunto set my

13    hand at Chicago, Illinois, this 24th day of

14    July, 2020.

15

16

17              Certified Shorthand Reporter

18

19    C.S.R. Certificate No. 84-2949.

20

21

22

23

24
```

