Attachment F

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/16/2020 6:50 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9796763

FILED DATE: 7/16/2020 6:50 PM 2018CH15883

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>JUMIO CORPORATION, a Delaware corporation,<br><br>*Defendant*. | Case No.: 2018-CH-15883<br><br>Calendar 8<br><br>Judge Michael Mullen |

**COMBINED[1] REPLY IN SUPPORT OF
OBJECTION TO CLASS ACTION SETTLEMENT**

For months, Class Counsel has been singing the same song: The Settlement he put together released claims against Jumio Corporation ("Jumio") but preserved claims against the horde of Jumio customers who have independently violated the Biometric Information Privacy Act ("BIPA"). Although Objector Allen expressed concern that the Release was, at best, ambiguous, Class Counsel guaranteed that his understanding of the limited release he believed he had negotiated was the only reasonable interpretation. Class Counsel went so far as to promise that he would "eat his hat" if he were wrong.

Now that the time for exclusions and objections has expired, Class Counsel and Jumio have chosen a new song. They jointly tell the Court, with presumably straight faces, that when Class Counsel negotiated away the Class's rights, both Parties equally understood that the Release would wipe out potentially dozens of separate class actions that are not before the Court.

---

[1] Class Counsel and Jumio each submitted papers in support of final approval, totaling some 40 pages. Rather than submit separate replies, Objector Ashley Allen submits a combined reply brief here.

While, as Jumio argues, broad releases are not unusual in class action litigation, what is extraordinary is Class Counsel settling a case based on an incorrect understanding of the claims he was releasing. If Jumio had needed "true peace" for itself and its customers, it should have both paid for it and explained to the Class what rights they were giving away. It did neither. Instead, Jumio simply pulled the wool over Class Counsel's eyes. Because no thought was given to this broad release (and apparently no information was exchanged), we have no idea what the Class is giving away through this Settlement. As best as Ms. Allen can tell, there are dozens of independent Jumio "customers" who have illegally collected, stored, and potentially disclosed the biometric data of untold numbers of Illinois residents. The collective value of these cases is certainly in the hundreds of millions of dollars and could easily be over a billion dollars. Because Class Counsel did not understand the scope of the Release, no money was paid for the release of these claims. None of the customers have agreed to destroy the Class's biometric data or come into compliance with BIPA. Neither Jumio nor the customers were even required to tell the Class how much biometric information was collected and what was done with it. Instead, they all got a free pass.

The Court should reject this Settlement. Class Counsel can do what he wants with his hat.

## I. The Court should not approve a settlement that accidentally gives up a second set of claims.

In a true sign of the times, the Parties now say they are in complete agreement that the Settlement is such a carefully-assembled and complex instrument that the ambiguity in the Release never existed—and never could have existed—in the first place. (*E.g.*, Def.'s Br. at 1 (noting that the Settlement contains numerous "interrelated, carefully balanced terms").) But this defies reality. Ms. Allen asked Class Counsel and Defendant's Counsel for nearly a month what the Release in this Settlement meant and the Parties took diametrically opposed positions: Class

Counsel said that it did not give up claims against Jumio's corporate customers (the "Customers" as defined in the agreement) related to their own conduct. (*See* Allen Obj. at 7 (Class Counsel representing that though "the customers are being released for Jumio's violations, they remain liable for their own conduct (i.e., collection, storage, transfer, etc.).").)

Jumio refused to answer until it filed its brief a week ago, when it told the Court that Ms. Allen was exactly right: this is meant to be a complete Release for Jumio's Customers. (*See* Def.'s Br. at 4 (reporting that "[i]t was absolutely essential to Jumio, and a critically material term of the Settlement, that Customers be released from all Settled Claims[,]" and giving the example that a "Customer sued with respect to use of NetVerify" would be released).) Now, in an effort to get through final approval, the Parties evidently agree that all claims against Jumio's Customers are released. (*See* Pl.'s Br. at 24 ("[T]he Parties are not in disagreement as to the meaning of the Release. . . . This Release was of the upmost [sic] importance to Defendant as a way to ensure that it was obtaining peace through the Settlement and so that it would not be hauled into court in the future based on indemnification claims from BIPA lawsuits against its customers relating to the use of NetVerify software.").) With that history laid bare, the only conclusion that can be reached is this: Class Counsel unwittingly gave up extremely valuable BIPA claims in this Settlement while negotiating as if only the claims against Jumio were at issue.

Without the value of those claims factored into the Settlement, it is impossible for the Court to meaningfully assess whether the Settlement was "fair, reasonable and adequate[.]" *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990). Indeed, the very first and most important *Korshak* factor is "the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement[.]" *Id.* Courts begin that analysis by determining

3

what the claims at issue might be worth. *E.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 579 (N.D. Ill. 2011) (noting that the analysis begins with a "range of possible outcomes," balanced against the risks of continued litigation); *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 801 (Cal App. Ct. 2009) ("[A]n informed evaluation of a proposed settlement cannot be made without an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation."). When there is no evidence in the record sufficient to evaluate the claims that are being given up—including the value of claims held against non-parties—courts should disapprove a settlement. *E.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *7 (N.D. Ill. May 14, 2019) (Kennelly, J.) (noting that court refused final approval of settlement where "[t]he original settlement agreement sought to release the claims against the [second set of defendants] for nothing and with no explanation[,]" and approving settlement where claims were carved out); *see also Clark*, 175 Cal. App. 4th at 802–04 (overturning trial court's approval of settlement where class counsel represented class's overtime claims had "absolutely no" value but objectors warned that class counsel had "misunderstood and misapplied" the law; appellate court held that trial court did not have sufficient information to evaluate the claims).

The Parties give no meaningful explanation for how the amount of monetary relief from Jumio was agreed upon, but a fair inference would be that it was driven, in large part, by the amount that Jumio was able to pay.[2] And if there were one entity that might be liable for the released claims, that would be an acceptable metric. *Korshak*, 206 Ill. App. 3d at 972 (finding Court should consider "defendant's ability to pay"). But there is no evidence—and evidently was no investigation at all—into what Jumio's *Customers* (or their respective insurers) were willing

---

[2] Class Counsel refers to Jumio as a "young company[.]" (Pl.'s Br. at 16.) With some 260,000 potential Class Members, the minimum potential liability against Jumio is well into the nine figures.

4

to pay to receive a release for the claims against them. Nor is there evidence in the record—or again, evidently any investigation into the facts—that might allow the Court to assess the value of those claims: whether the Customers properly secured the Class's biometric data, whether the data was disclosed to yet more third parties, or whether the Customers sold or traded the data. *See* 740 ILCS 14/15. The Court and the Class still don't know how many Customers there even are. Dozens of potential class actions—some of which were already pending at the time of this Settlement—involving potentially hundreds of millions of dollars properly owed to the Class are being released without the most basic information or the confidence that Class Counsel was appropriately weighing those claims when negotiating the Settlement before the Court. Indeed, the remarkable record here is that Class Counsel was not.

For that reason, the Court should deny approval to the Settlement pending a clearer Release, an explanation of the valuation of the claims, and new notice to the Class that they are potentially giving up two valuable BIPA claims, not one.

II.  **The Parties' arguments do not address the central problem of whether the Settlement appropriately factored in the scope of the Release.**

The Parties are quick to talk about any number of sideshows related to Ms. Allen's objection in order to distract from this main event: her lonely status as an objector, that she is objecting to a settlement during the COVID-19 pandemic, the troubles posed by so-called professional objectors, and whether releasing non-parties is ever appropriate. None of these topics are relevant to whether the Court and Class could possibly evaluate whether Jumio paid enough for the "true peace" that it evidently bought without Class Counsel's knowledge.

To be sure, Ms. Allen was the only person to remain in the Settlement—rather than exclude herself—in order to force the Parties to grapple with whether the Release mistakenly extended to an entire set of BIPA claims. (Nor is it clear what the number of objections would

5

have been, had Class Counsel told Class Members that the Settlement did in fact extend to the Customers, rather than saying it didn't. (*See* Decl. of James B. Zouras, attached hereto as Exhibit 1 (stating that Class Counsel told him, as well, that the Release did not extend to claims against Customers).) Class Counsel repeatedly argues that she should have excluded herself if she had misgivings (Pl.'s Mot. at 23), but the argument swallows the whole objection process: if the answer to everyone who objects is that they can be ignored because they should have excluded themselves, there is no need for an objection process at all. Particularly in a case like this one, a class member needed to be willing to risk their claims under this Release in order to question it. A large number of people—as evidenced by the either 94 or 140 exclusions[3]—had no appetite for that risk. Ms. Allen's willingness to take it on demonstrates her credibility, and certainly is no reason to ignore her.

Ms. Allen has no desire to hold up a sound Settlement, and wishes to get Class Members what they are owed as quickly as possible.[4] But the argument that the Court should get this Settlement through—whatever its merits—in order to get the money out is tautological: it would support approval of near any settlement. Ms. Allen supports a *sound* Settlement as quickly as possible, not any settlement at all.

There is some insinuation, though no outright accusation, that Ms. Allen's counsel are so-called "professional objectors[.]" (Pl.'s Br. at 2 (merely noting the existence of professional objectors while discussing Ms. Allen's counsel).) To be clear: Ms. Allen's counsel are a national

---

[3] Again, Class Counsel and Jumio's counsel aren't on the same page about what should be basic facts about the Settlement. (Pl.'s Br. at 9 (noting 94 exclusions); Def.'s Br. at 1 (noting 141 exclusions).)

[4] Ms. Allen notes that neither Party's counsel has acted with particular urgency in moving things forward, at least with regard to addressing Ms. Allen's concerns: Class Counsel and Jumio's counsel seem to have unilaterally moved their deadline to file their positions until two weeks before the final approval hearing; with the latter date suspended during the Court's temporary closure, the Parties advised the undersigned counsel that they simply would not submit anything until a final approval hearing was set.

6

class action firm, who have a demonstrated track record of litigating suits, including BIPA suits, to unparalleled results for the classes they represent. (*See* Allen Obj. at 3 n.2.) As the Parties know well, Ms. Allen's counsel are the "parents" of BIPA, having litigated the first case of its kind—leading to a historic $550 million settlement—and establishing most of the positive law under the statute. The firm holds records for the largest cash privacy settlement ($550 million), the largest privacy verdict ($950 million), and has won over $2 billion in settlements and verdicts over the past two years alone. It is routinely hired as outside counsel by regulators including State Attorney General's offices, the City of Chicago, and the Cook County State's Attorney's office.

It has also been the leading critic (within the plaintiff's bar) of abusive settlements[5] as well as professional objectors who exploit the class action system. *See, e.g.*, *Edelson PC v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 723287, at *1 n.1 (N.D. Ill. Feb. 6, 2018) (Pallmeyer, J.) (in case brought by firm against professional objector, noting that "Edelson's attorneys are regarded as 'experienced and respected members of the plaintiff's class action bar.' . . . [Defendant], by contrast, has been characterized as a 'serial' objector who pursues personal financial gain by routinely filing frivolous, bad-faith objections to proposed class settlements"). In this case, far from trying to exploit the system, Ms. Allen's counsel reached out to the Parties to get them to rework the Release language, making clear that they had no interest in profiting from any changes to the Settlement made short of an objection.[6]

---

[5] The firm has made clear that it views many of the settlements entered into by Class Counsel as improper. While the rest of the plaintiff's bar was negotiating "all in" settlements that fully benefited the class, the instant Class Counsel were using reversionary funds and offering credit monitoring. Despite our deep feelings about the paucity of these deals, we have not represented objectors to those settlements.
[6] The firm will be donating any fees it derives from this case to charity.

7

On the few occasions that Ms. Allen's counsel have represented an objector, it has been because settlement counsel have been attempting to push a poor settlement through to the detriment of the Class. (*See* Allen Obj. at 4 (noting objections in last five years)); *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, Master Dkt. No. 13-cv-09116, dkt. 178–1 (N.D. Ill. May 8, 2015) (objection resulted in denial of preliminary approval twice; at final approval, Court largely agreed with counsel's criticisms of the settlement and awarded over $1 million in fees for improving the settlement); *Remijas v. The Neiman Marcus Grp., LLC*, No. 14-cv-01735, dkt. 164 (N.D. Ill. Sept. 1, 2017) (resulting in rejection of settlement based on counsel's arguments and ultimately, revisions to the settlement).

Finally, the Parties both argue that releasing non-parties to a class action is common, pointing to Ms. Allen's counsel's settlement in the *Facebook* BIPA case. (*See* Def.'s Br. at 8; Pl.'s Br. at 24-25.) To be sure, releasing a laundry list of entities related to a primary defendant is *de rigueur* in class action practice; every defense counsel insists on at least a dozen categories of related entities to avoid the remote possibility that an enterprising plaintiff might sue a related company (or individual) again for the same defendant's conduct. The *Facebook* settlement does precisely that, releasing Facebook's directors and related subsidiaries to ensure that Mark Zuckerberg or acquired companies involved in the alleged violations aren't sued again for Facebook's alleged collection of facial geometry.[7]

But the net cast by a release is a more complicated issue in actions like the one here that involves a vendor selling biometric-collecting technology, as opposed to Facebook who collected and used biometrics for itself. BIPA contemplates *independent* claims against any entity that collects or possesses biometric data. *See* 740 ILCS 14/15. This is particularly visible in the now-

---

[7] And in fact, at preliminary approval, the Court raised the concern that the initial proposed Release was too broad. The parties to the *Facebook* litigation have limited it further since preliminary approval.

8

FILED DATE: 7/16/2020 6:50 PM 2018CH15883

familiar BIPA "timeclock" cases, where independent claims are commonly litigated against employers directly for their own collection of biometric data using a vendor's biometric timeclocks, but claims exist against the vendors as well when they collected the data themselves. *E.g.*, *Figueroa v. Kronos Inc.*, No. 19 C 1306, 2020 WL 1848206 (N.D. Ill. Apr. 13, 2020) (denying motion to dismiss in class BIPA case brought against timeclock vendor). The vendor and employer claims have independent value. *E.g.*, *Muniz v. Workwell Techs., Inc.*, 2019-CH-04061 (Cir. Ct. Cook Cty. Jan. 21, 2020) (granting preliminary approval to settlement providing independent relief from vendor, and permitting employers to join by contributing monetary relief and agreeing to injunctive provisions). The situation seems to be analogous here: Jumio provided the technology to customers and allegedly collected biometric data directly, but other plaintiffs have sued Jumio's customers for their own collection of biometric data through the NetVerify service. *E.g.*, *Osborne v. WeWork Companies, Inc.*, 2019-CH-12856 (Cir. Ct. Cook Cty. Nov. 5, 2019). The effect of the unusual non-party release here is not to ensure that one set of BIPA claims (worth, at an absolute minimum, $1,000) is given up, but that *two* are. The $300 that Class Members are receiving begins to look a lot less appealing when they are giving up twice as much, but the Court can't begin to evaluate that on the record before it.

       The Parties now agree, in an effort to get this Settlement approved, that the Release extends to all BIPA claims against the Customers. (*See* Pl.'s Br. at 24; Def.'s Br at 4 ("It was absolutely essential to Jumio, and a critically material term of the Settlement, that Customers be released from all Settled Claims. . . . Otherwise, there would be no peace for Jumio and the Settlement would have little value, because class members could embroil Jumio in litigation through its Customers.").) If that is the case, the Court should deny final approval to the Settlement for two distinct, but related, reasons: First, a settlement that is premised on the

9

defendant duping Class Counsel and slipping in a provision that would release claims worth hundreds of millions of dollars is dead on arrival. Second, given Class Counsel's repeated assurances that the Release was limited in scope, there can be no question that the Notice—which never explained the impact of the Release—was poor. The Court should not grant approval to the Settlement as it stands, because Class Counsel (and now the Class) evidently did not understand the Settlement when the Release was negotiated.

## CONCLUSION

Ms. Allen respectfully requests that the Court deny final approval to the Settlement, and grant any further or alternative relief as may be appropriate and just.

Respectfully submitted,

Dated: July 16, 2020   /s/ J. Eli Wade-Scott
*One of Ms. Allen's attorneys*

Jay Edelson
jedelson@edelson.com
Ryan D. Andrews
randrews@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

## **CERTIFICATE OF SERVICE**

I, J. Eli Wade-Scott, an attorney, hereby certify that on July 16, 2020 I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system.

/s/ J. Eli Wade-Scott

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/16/2020 6:50 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15883

9796763

FILED DATE: 7/16/2020 6:50 PM    2018CH15883

# Exhibit 1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| ALEX PRELIPCEANU, individually and on behalf of a class of similarly situated individuals, <br><br> *Plaintiff*, <br><br> v. <br><br> JUMIO CORPORATION, a Delaware corporation, <br><br> *Defendant*. | Case No.: 2018-CH-15883 <br><br> Calendar 8 <br><br> Judge Michael Mullen |

**DECLARATION OF JAMES B. ZOURAS**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true:

1. I am a member in good standing of the Illinois State Bar and one of the two founders and principals of the Chicago-based law firm of Stephan Zouras, LLP.

2. My firm has brought class actions against customers of Jumio for violations of the Illinois Biometric Information Privacy Act ("BIPA"). In mid-January 2020, I contacted Myles McGuire to ensure that the proposed settlement in this matter would not impact these cases.

3. During a telephone conversation, Myles advised that he believed the proposed settlement would not release Jumio's customers with respect to any violations of BIPA they may have committed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 16, 2020                    FURTHER DECLARANT SAYETH NOT.


                                        */s/ James B. Zouras*
                                        James B. Zouras

FILED DATE: 7/16/2020 6:50 PM 2018CH15883