# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELLIOTT OSBORNE, individually, and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:19-cv-8374<br>) |
| | ) Honorable Edmond E. Chang<br>) |
| WEWORK COMPANIES INC., WEWORK CONSTRUCTION LLC, WW 210 N GREEN LLC d/b/a WEWORK, 332 S MICHIGAN TENANT LLC d/b/a WEWORK GRANT PARK, WW 111 WEST ILLINOIS LLC d/b/a WEWORK RIVER NORTH, 20 W KINZIE TENANT LLC d/b/a WEWORK4, 100 S STATE STREET TENANT LLC d/b/a WEWORK5, 125 S CLARK STREET TENANT LLC d/b/a WEWORK6, 222 S RIVERSIDE PLAZA TENANT LLC d/b/a WEWORK8, 330 NORTH WABASH TENANT LLC d/b/a WEWORK9, 515 N STATE STREET TENANT LLC d/b/a WEWORK10, 1 SOUTH DEARBORN STREET TENANT LLC d/b/a WEWORK11, 625 WEST ADAMS STREET TENANT LLC, | ) Magistrate Judge Young B. Kim<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

I.      INTRODUCTION

In their Motion to Dismiss, Defendants WeWork Companies Inc., WeWork Construction LLC, WW 210 N Green LLC d/b/a WeWork, 332 S Michigan Tenant LLC d/b/a WeWork Grant Park, WW 111 West Illinois LLC d/b/a WeWork River North, 20 W Kinzie Tenant LLC d/b/a WeWork4, 100 S State Street Tenant LLC d/b/a WeWork5, 125 S Clark Street Tenant LLC d/b/a WeWork6, 222 S Riverside Plaza Tenant LLC d/b/a WeWork8, 330 North Wabash Tenant LLC d/b/a WeWork9, 515 N State Street Tenant LLC d/b/a WeWork10, 1 South Dearborn Street Tenant

LLC d/b/a WeWork11, 625 West Adams Street Tenant LLC, (collectively, "WeWork" or "Defendants") urge the Court to toss out Plaintiff Elliott Osborne's ("Plaintiff" or "Osborne") claims for a litany of flawed reasons. Defendants first argue, in what is little more than a personal attack on Plaintiff's counsel, that a settlement negotiated by other counsel against third-party technology vendor Jumio Corp. ("Jumio") in *Prelipceanu v. Jumio Corp.*, Case No. 18 CH 15883 (Cir. Ct. Cook Cty.) (the "*Jumio* Settlement") somehow moots Plaintiff's separate and distinct claims against WeWork. This, of course, is untrue; the trial court explicitly rejected the objection and held that the *Jumio* Settlement *did not* extinguish claims against third parties. (Dkt. 56-4 at 35:2-16.) Where that argument fails, Defendants assert Plaintiff's claims must be dismissed in favor of arbitration, despite the fact that there is absolutely zero evidence that Plaintiff ever assented to the "clickwrap"[1] arbitration agreement implemented by WeWork. Finally, Defendants rehash positions that have been consistently and repeatedly rejected by this Court, claiming Plaintiff fails to plead Defendants' mental states – which he is not required to do – and that the statute of limitations precludes Plaintiff's claims, which they also allege are too vague, despite Defendants' apparent ability to mount a thorough defense. For the reasons set forth below, Plaintiff respectfully requests the Court enter an Order denying Defendants' Motion to Dismiss.

## II.  RELEVANT BACKGROUND

Plaintiff filed this class action against Defendants in the Circuit Court of Cook County on November 5, 2019, to redress Defendants' unlawful collection, use, storage, and disclosure of individuals' biometric information under BIPA. Defendants removed this action to the Northern District of Illinois on December 20, 2019. (Dkt. 1.) In his Complaint, Plaintiff provided detailed

---

[1] "Clickwrap" is a term used when discussing arbitration or other binding agreements that users may assent to by affirmatively checking a box or clicking an "Accept" button. As discussed more fully below, neither option was present here, and Plaintiff never affirmatively agreed to arbitrate his claims.

2

allegations that individuals entering Defendants' office spaces in Illinois were universally required to have their facial geometry scanned for enrollment in Defendants' system, in order for WeWork to monitor individuals inside its offices, and Defendants failed to: (1) publish a publicly available retention schedule or guidelines for permanent destruction of the biometric data by Defendants, as required by BIPA; (2) inform Plaintiff and putative class members in writing of the purpose(s) and length of time for which facial geometry is being collected, stored, and used by Defendants; (3) provide (nor did they have Plaintiff execute) a written release for Defendants in order to collect, store, or use their facial geometry, as required by BIPA; or (4) asked for consent before disclosing, redisclosing, or otherwise disseminating their facial geometry to a third party, as required by BIPA. (*See* Dkt. 1-1 ¶¶ 16, 48-57, 62-67.)

Plaintiff worked for SpotHero in 2017 out of a WeWork office space located at 125 South Clark Street, Chicago, Illinois 60603. (*Id*. ¶ 59.) WeWork required Plaintiff to have a photograph of his face taken to use as a method for monitoring him in WeWork's office space. (*Id*. ¶ 60.) Defendants subsequently stored Plaintiff's facial geometry data in their database. (*Id*. ¶ 61.)

Each Defendant failed to inform Plaintiff and other individuals of the extent of the purposes for which Defendants collected individuals' sensitive biometric data or to whom the data is disclosed. (*Id*. ¶¶ 16, 62.) Upon information and belief, each Defendant failed to publish a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' facial geometry data when the initial purpose for collecting or obtaining their facial geometry is no longer relevant, as required by BIPA. (*Id*. ¶¶ 16, 54, 63.) Plaintiff and the putative class were not told what might happen to their biometric data if and when Defendants merged with another company or, worse, if and when Defendants' entire businesses fold. (*Id*. ¶¶ 55-56.) Because Defendants neither published a BIPA-mandated data retention policy nor

3

disclosed the purposes for their collection of biometric data, Plaintiff and the putative class have no idea to whom Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. (*Id*. ¶¶ 16, 56, 62-63.) Nor are individuals told to whom Defendants currently disclose their biometric data or what might happen to their biometric data in the event of a merger or a bankruptcy. (*Id*. ¶¶ 55-56.) Finally, each Defendant failed to secure a written release from any individuals, including Plaintiff, permitting them to collect, store, use, and disseminate individuals' biometric data, as required by BIPA. (*Id*. ¶¶ 16, 64.)

### III. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a plaintiff's complaint, not decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Courts must deny a defendant's motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("plaintiff must give enough details about the subject-matter of the case to present a story that holds together").

### IV. ARGUMENT

    **A.** **The *Jumio* Settlement Did Not Moot or Otherwise Extinguish Plaintiff's Claims.**

Defendants devote much of their motion and subsequent reply to the misguided belief that the *Jumio* settlement moots Plaintiff's claims. Even a cursory review of the exhibits attached to

Defendants' motion demonstrate that is simply untrue. As the *Jumio* class counsel and Jumio's own counsel advocated – and the trial court ultimately accepted – the release contemplated by the *Jumio* Settlement was not so broad as to release WeWork for its own BIPA violations. Rather, the *Jumio* settlement released Jumio for its separate BIPA violations, and released Jumio's customers – such as WeWork – for the same thing: **Jumio's** acts or omissions which culminated in its BIPA violations.

Defendants correctly note that mootness is a jurisdictional issue, albeit not one that they raised while the Court was considering² whether federal jurisdiction exists here. *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018). An action must be dismissed as moot if, at any point during litigation, "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). A settlement may moot a case because plaintiffs are typically only entitled to a single recovery for a single injury. *Wedgscheid v. Local Union 2911*, 117 F.3d 986, 991 (7th Cir. 1997); *Portalatin*, 900 F. 3d at 383. "Once a plaintiff settles with one defendant for the full relief available for a single, indivisible injury, the plaintiff generally cannot pursue a claim for the same injury against a different defendant; the settlement renders such a claim moot." *Id*.

But that is not what is happening here. BIPA permits plaintiffs to recover for *each violation* committed under the statute. *See* 740 ILCS 14/20. In *Jumio*, as in countless other BIPA actions, the BIPA violations committed by private entities *and* their biometric vendors are separate and distinct. This conclusion logically flows from the reasoning of several courts, including at least

---

² Defendants filed their reply in support of their position on jurisdiction on July 14, 2020, while the *Jumio* objection was being briefed, yet made no mention of it or their belief that it could impact Plaintiff's claims here. (Dkt. 40.) Defendants did not mention the *Jumio* settlement at that time, or any time thereafter until filing the Motion to Dismiss on May 13, 2021, nearly ten months after the court approved the *Jumio* Settlement.

two in this district, holding a biometric vendor can be subject to Section 15(b) of BIPA, and not just the so-called "direct collector" of individuals' biometric data. *See, e.g., Figueroa v. Kronos Incorporated*, 454 F. Supp. 3d 772, 783 (N.D. Ill. 2020) (Feinerman, J.); Exhibit 1, Tr. of Oral Ruling, *Thome v. Novatime Technology, Inc.*, No. 19 C 6256 (N.D. Ill. Jan. 9, 2020) (Kennelly, J.) at 3:6-10. In each of those matters, the plaintiffs also had or have underlying BIPA claims against their employers. *See Figueroa v. Tony's Finer Foods Enterprises, Inc., et al.*, Case No. 18 CH 15728 (Cir. Ct. Cook Cty.); *Burton v. BWAY Corporation*, Case No. 18 CH 09797 (Cir. Ct. Cook Cty.); *Thome v. Flexicorps, Inc.*, Case No. 18 CH 01751 (Cir. Ct. Cook Cty.).

That is what occurred here. According to the *Jumio* class counsel, counsel for Jumio, and the Circuit Court of Cook County, Jumio was sued separately for its own violations of BIPA and settled on behalf of itself and its customers *only for its own violations of BIPA*. (*See, e.g.,* Dkt. 56-2, *16, *23, *33; Dkt. 56-4 at 16:8-14, 24:13-22, 35:2-16; Dkt. 56-5 ¶ 22.) When Plaintiff filed his claims against WeWork, he alleged that Defendants committed their own separate and distinct BIPA violations by failing to comply with Sections 15(a), (b), and (d) of the Act. (Dkt. 1-1 ¶¶ 16, 48-57, 62-67.) Plaintiff's Complaint does not mention Jumio because Plaintiff does not seek to hold Defendants or Jumio liable for the vendor's actions or omissions, particularly now that those actions and omissions have been resolved.

Defendants make much of the fact that Plaintiffs' counsel was aware of an objection made to the *Jumio* settlement by a class member they do not represent which was rejected and overruled by the trial court. (Dkt. 56, *11.) Although Defendants are correct that counsel for Plaintiff, James Zouras, submitted a declaration in connection with that matter (Dkt. 56-6, *14), they misstate its significance. All Mr. Zouras stated in his declaration, consistent with the assertions made by counsel for both parties to the settlement, was that counsel for the *Jumio* plaintiffs advised him

6

that he did not believe the proposed settlement would release Jumio's customers (like WeWork) for their own BIPA violations. (*Id*. ¶ 3.) This is exactly what counsel for the parties in *Jumio* advocated at the final approval hearing on July 21, 2020 (Dkt. 56-4 at 16:8-14, 24:13-22), and exactly what the Court ultimately held in overruling the objection. (Dkt. 56-4 at 35:2-16.)

Confusingly, Defendants urge the Court to believe that the denial of the objection in *Jumio* means Plaintiff's claims here are mooted. (Dkt. 56, *11.) But a review of the *Jumio* parties' positions and the court's ultimate overruling of the objection demonstrate exactly the opposite. Specifically, the court rejected the essential argument of the objector – that the *Jumio* release was ambiguous – and held that the language was clear and unambiguous, and the terms of the release were specifically defined. (Dkt. 56-4 at 35:2-11.) In overruling the objection, the Court actually upheld class counsel's and Jumio's counsel's positions: that the release contained in the *Jumio* Settlement would not affect claims brought against Jumio's customers for their own conduct.

Accordingly, Plaintiff's claims are not moot and should not be dismissed.

**B.     Plaintiff Should Not Be Compelled to Arbitrate His Claims.**

Defendants next ask the Court to find that Plaintiff agreed to arbitrate, a claim that is backed up by a four-paragraph, untested declaration claiming without support or specificity that Plaintiff ever logged into Defendants' Member Network between February 8, 2017 and April 26, 2017. (Dkt. 56, *13; Dkt. 56-2 ¶ 4.) Defendants go on to claim that its hyperlinked arbitration agreement is valid and enforceable. (Dkt. 56, *14.) Not so.

The Federal Arbitration Act ("FAA") directs courts to treat arbitration agreements as they would any other agreement. *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). "Under the FAA, a court must compel arbitration when it finds that: (1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of the arbitration

7

agreement; and (3) a party refuses to arbitrate." *Smith v. Cavalry Portfolio Servs. LLC*, No. 20 C 1375, 2020 WL 7682236, at *1 (N.D. Ill. Dec. 26, 2020).

Illinois and federal courts have consistently held that agreements to arbitrate are a matter of contract. "[C]ourts will not ignore longstanding contract law principles, simply to find that there is an enforceable agreement to arbitrate." *Sosa v. Onfido, Inc.*, No. 1:20 CV 04247, 2021 WL 38141, at *7 (N.D. Ill. Jan. 5, 2021) (*on appeal Sosa v. Onfido, Inc.*, No. 21-1107 (7th Cir.)). Accordingly, arbitration agreements can be declared unenforceable under any generally applicable contract defense. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "Ordinarily one of the acts forming part of the execution of a written contract is the signing of it." *Russell v. Dart*, No. 14-CV-4683, 2015 WL 1502926, at *3 (N.D. Ill. Mar. 26, 2015) (citations and quotations omitted) (*aff'd sub nom. Russell v. Cook Cnty.*, 661 Fed. Appx. 443 (7th Cir. 2016)). While electronic signatures and affirmatively clicking an "Accept" button are valid means of agreeing to a contract, electronic acceptance is only sufficient "where the party had reasonable notice of the terms of the agreement and manifested assent to the agreement by clicking 'Accept.'" *Western Union Co. v. Tom Kula and Paymentus Group, Inc.*, No. 17-CV-00280, 2017 WL 2973584, at *5 (N.D. Ill. July 12, 2017) (citations and quotations omitted). Defendants contend their hyperlinked Terms of Service are sufficient to establish acceptance. (Dkt. 56, * 14.)

But Defendants' arbitration agreement falls short of requiring acceptance because Plaintiff never had to actually manifest his assent by clicking an "Accept" button, checking a box, or in any other way. *See, e.g., Western Union Co.*, 2017 WL 2973584, at *5-6 (where employee had to check a box or provide an electronic signature, clickwrap restrictive covenant agreement was enforceable); *see also ADP, LLC v. Lynch,* No. 2:16-01053 (WJM), 2016 WL 3574328, at *4-5 (D. N.J. June 30, 2016), *aff'd* No. 16-3617, 2017 WL 496089 (3d Cir. Feb. 7, 2017) (where

8

plaintiffs did not read the agreement but had to acknowledge that they read and agreed to the terms, clickwrap agreement was held to be enforceable); *Newell Rubbermaind Inc. v. Storm*, No. 9397-VCN, 2014 WL 1266827, at *2 (Del. Ch. Mar. 27, 2014) (where employee had to check box stating she accepted terms and agreement, clickwrap was enforceable).

Here, unlike in *Western Union*, Plaintiff did not affirmatively click anything and thus, nothing of the sort unequivocally demonstrates his agreement to the terms and conditions posted on WeWork's website. Likewise, this matter is distinguishable from *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976 (5th Dist. 2005), the only case Defendants cite in support of their position. (Dkt. 56 at 14.) As an initial matter, *Hubbert* interpreted Texas state law regarding contract formation, not Illinois. *Id.* at 981. Nonetheless, in *Hubbert*, the Court found the arbitration agreement procedurally conscionable when the hyperlinks were a "contrasting blue color." *Id.* at 983. Here, Defendants provide no insight regarding what the hyperlinks would have looked like to Plaintiff from February to April 2017, and there is no indication the links were contrasting colors, bolded, underlined, or otherwise made to appear more prominent to Plaintiff. This, coupled with the fact that Plaintiff could never affirmatively assent to the arbitration agreement, mean Defendants cannot establish his assent as a matter of law. Because Plaintiff never agreed to arbitrate his claims, the Complaint cannot be dismissed in favor of arbitration.

  **C. Plaintiff Has Stated a Claim Under BIPA.**

    **1. The Statute of Limitations of a BIPA Claims is Five Years.**

Defendants contend that Plaintiff's claims are untimely because the statute of limitations for BIPA claims is one year. Such a contention is specious, as nearly every court to consider the question has held – including this one – the limitations period is five years. *See Burlinski v. Top Golf USA Inc.*, No. 19-cv-06700, 2020 WL 5253150, at *6 (N.D. Ill. Sept. 3, 2020) (Chang, J.).

9

Ignoring Illinois' default five-year limitations period, a plethora of on-point persuasive authority, and this Court's own prior ruling, Defendants urge the Court to impose a one-year limitations period. Section 13-205 of the Illinois Code of Civil Procedure states, "[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. This section also provides for a five-year statute of limitations for "actions on unwritten contracts, expressed or implied." *Id.* Because BIPA does not include its own express statute of limitations, Plaintiff's claims fall under Illinois' five-year limitations period unless a more specific statute applies. *See Johnson v. Northshore Univ. Judge Presiding Healthsystem*, No. 1-10-0399, 2011 WL 10069086, at *2 (Ill. App. Ct. Mar. 31, 2011) (quoting 735 ILCS 5/13-205).

Defendants propose the one-year limitations period governing privacy claims applies here because BIPA broadly protects privacy rights, as recognized by the Illinois Supreme Court in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33. (Dkt. 56, *16-17; *see also* 735 ILCS 5/13-201.) This is a red herring because Section 13-201 does not encompass all privacy claims, as the Court has correctly recognized in *Burlinski*. By its plain language, only privacy-related causes of action with a ***publication*** element are subject to the one-year limitations period. Here, Plaintiff does not allege any publication of his biometric data, and rightfully so: publication is plainly not an element of Section 15(a) and (b) claims, and Defendants cite "no authority for the proposition that disclosure of biometric data to a single, third-party…vendor would meet the definition of 'publication' as it is used in the context of other common-law privacy torts." *See Burlinski v. Top Golf USA Inc.*, No. 19-cv-06700, 2020 WL 5253150, at *6 (N.D. Ill. Sept. 3, 2020) (Chang, J.) (citation omitted). This Court has already rejected Defendants' contention that their only cited authority, *West Bend Mutual Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2020 IL App (1st) 191834, is applicable here. Accordingly, Plaintiff's claims are timely.

10

### 2. Plaintiff's Allegations Are Not Improperly Vague.

Defendants next claim that Plaintiffs' Complaint should be dismissed because his detailed allegations are too vague and fail to meet the pleading standards required by Rule 8. (Dkt. 56, *14-15.) Defendants' position is dubious, and undercut by the thorough response to the Complaint that Defendants were able to prepare. *See, e.g., Smith v. City of Chicago*, No. 18 C 4918, 2019 WL 95164, at *2 (N.D. Ill. Jan. 3, 2019) (defendants' motions to dismiss and answers indicated the complaint was comprehensible and not so vague or ambiguous as to preclude a reasonable response). Rule 8 only requires Plaintiff "to give a short and plain statement within the complaint that demonstrates that he is entitled to relief." *Burnell v. Tarr*, No. 11 C 50122, 2013 WL 12314400, at *2 (N.D. Ill. July 15, 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff has done so by describing the technology WeWork used in its Chicago-based work spaces, which Plaintiff alleges was used at each of Defendants' locations. (Dkt. 1-1, ¶¶ 2-6.) Plaintiff goes on to allege that Defendants violated BIPA by requiring him to submit to a photograph from which WeWork obtained Plaintiff's facial geometry and used his biometrics to track him in their workspace. (*Id*. ¶¶ 6, 60.) Plaintiff alleges Defendant did so without publishing written destruction and retention policies and without providing statutorily-compliant notice or obtaining a written release, as required by BIPA. (*Id.* ¶¶ 16, 48-57, 62-67.) Plaintiff further alleges that Defendant disclosed his biometric data to third parties without his consent, also in violation of BIPA. (*Id*.) These allegations demonstrate that Defendants violated BIPA, and Plaintiff alleges he therefore is entitled to statutory damages. (*Id*. ¶ 68.) Thus, Plaintiff has met Rule 8's pleading standards.

### 3. Plaintiff's Allegations Are Sufficient to Support his Request for Liquidated Damages.

Finally, Defendants argue that Plaintiff's Complaint lacks sufficient allegations that its BIPA violations were negligent, reckless, or intentional. (Dkt. 56, **16-18.) But this argument

11

fails here, as it did in *Burlinski*, because Defendants confused the standard for measuring culpability and damages with a substantive pleading requirement. *See, e.g.*, *FDIC for Seaway Bank & Trust Co. v. Urban P'ship Bank*, No. 17-cv-01517, 2018 WL 497285, at *4 (N.D. Ill. Jan. 22, 2018) (Blakey, J.) ("Rule 8 does not require 'that a plaintiff plead damages with particularity. Damage theories may be pled generally or in the alternative, and developed through discovery'") (citation omitted). BIPA sets forth substantive requirements that, if violated, give rise to private rights of action without the need for additional proof. *Rosenbach*, 2019 IL 123186, ¶ 36. Negligence, recklessness, and intent are not elements of these substantive requirements, but rather are terms reflecting degrees of culpability.

The Court already concluded in *Burlinski* that "to the that recklessness "is a prerequisite for certain types of statutory *remedies*, it is premature to raise the issue at the pleading stage." 2020 WL 5253150, at *8. At best, Defendants raise this argument prematurely. *Id*. Regardless, here as in *Burlinski*, Plaintiff has sufficiently met the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) because he clearly alleged "BIPA has been in effect for more than 10 years, and…[Defendants have] failed to comply with the requirements of the statute. *Id*.; *see also* Dkt. 1-1, ¶¶ 36, 46. Plaintiff does not now have to allege Defendants' mental states in order to state a claim. Defendants' argument should be rejected.

V.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court enter an Order denying Defendants' Motion to Dismiss.

Date:  July 16, 2021

Respectfully Submitted,

*/s/ Haley R. Jenkins*
Ryan F. Stephan
James B. Zouras
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550 | 312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
hjenkins@stephanzouras.com

## **CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on July 16, 2021, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                                    */s/ Haley R. Jenkins*