UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLIOTT OSBORNE, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | No. 1:19-CV-08374 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| WEWORK COMPANIES, INC. *et al.*, ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In 2019, Elliot Osborne filed a proposed class-action complaint in Cook County Circuit Court against WeWork Companies (and its various affiliates, which for convenience's sake, this Opinion will call "WeWork") under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. R. 1-1, Compl.[1] WeWork removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), 1453. R. 1, Not. of Removal at 1. After directing briefing from the parties on the issue of subject matter jurisdiction, this Court held that Osborne had Article III standing for all of his BIPA claims. R. 48, 4/21 Order. WeWork now moves to dismiss the Complaint again, arguing primarily that a class-action BIPA settlement in state court has released Osborne's claims against WeWork. R. 52, Defs.' Mot. to Dismiss; R. 53, Defs.'

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

Br. For the reasons discussed in this Opinion, WeWork's motion (which is really an early summary judgment motion) is granted.[2]

## I. Background

As explained in further detail below, the Court construes WeWork's motion as an early summary judgment motion (and Osborne has submitted evidence in response to it). The Court thus views the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993).

WeWork is a company that rents out shared office space to tenants ranging from freelancers to global corporations. Compl. ¶ 1. Elliot Osborne worked in a WeWork office space in Chicago in 2017. *Id.* ¶ 59. According to Osborne, WeWork "required [him] to have a photograph of his face taken to use as a method for monitoring him in WeWork's office space." *Id.* ¶ 60. Osborne alleges that WeWork's use of his biometric data violated the Illinois Biometric Information Privacy Act. First, he alleges that WeWork failed to publish and adhere to a policy for retaining and (eventually) deleting biometric data, as required by Section 15(a) of the Act. Compl. ¶¶ 81–101; 740 ILCS 14/15(a). Next, Osborne alleges that WeWork failed to inform him of

---

[2]Osborne submitted evidence in response to the dismissal motion and did not argue that discovery was needed. But if Osborne believes that there is further discovery or evidence not in the record that would create a material dispute on whether the terms of the settlement release apply to Osborne's claims (which would be surprising), then he may file a motion to vacate the judgment and the Court will consider the motion.

how they would be using his biometric data, and failed to obtain his written consent to gather his biometric data, in violation of Section 15(b) of the Act. Compl. ¶¶ 102–123; 740 ILCS 14/15(b). Finally, Osborne alleges that WeWork disclosed his biometric data to third-parties without his consent, in violation of Section 15(d) of the Act. Compl. ¶¶ 124–44; 740 ILCS 14/15(d).

Throughout the time that Osborne worked in a WeWork office space, WeWork used a biometric-information software called NetVerify for facial-recognition and identity-verification services. *See* R. 56-3, Defs.' Attachment C, Legal Notice Postcard at 11–12. WeWork purchased this biometric-identification service from the technology company Jumio. *See id.*; Defs.' Br. at 2–3. In April 2019, Jumio was sued in state court in a class-action case alleging multiple BIPA violations based on its facial-recognition software. *Prelipceanu v. Jumio Corp,* 18 CH 15883.

The parties in *Jumio* reached a settlement agreement and the *Jumio* court certified the Settlement Class to include:

> All individuals in Illinois whose Biometrics or photos were collected, captured, purchased, received through trade, otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries, or agents, or their technology, at any time between December 21, 2013 and December 23, 2019.

R. 56-5, Defs.' Attachment E, Jumio Final Order and Judgment. The *Jumio* case settlement class list included the Plaintiff here, Elliott Osborne. R. 56-3, Defs.' Attachment C, Webb Jumio Decl. ¶ 5. A postcard was mailed to Osborne on January 27, 2020, telling him that he was a member of the *Jumio* settlement class because his biometrics had been "collected, captured, purchased, received through trade,

3

otherwise obtained or in the possession of Jumio and/or any of its parents, subsidiaries, agents or technology at any time between December 21, 2013 and December 23, 2019." Legal Notice Postcard; Webb Jumio Decl. ¶ 6. The notice said that a proposed settlement had been reached in a class-action lawsuit against Jumio for its facial-recognition technology, NetVerify, and that a $7,000,000 Settlement Fund had been established. Legal Notice Postcard.

The postcard provided more information about the proposed settlement, including an informational website, who can file a claim, and how Osborne's rights (as a member of the settlement class) could have been affected by the settlement. Legal Notice Postcard. The notice instructed Osborne that if he did not wish to be legally bound by the settlement, he had to exclude himself. *Id*. The notice also stated that Osborne could object to the proposed settlement if he wished to. *Id*. The Settlement Administrator, KCC Class Action Services, did not receive a request for exclusion from Osborne, nor did it receive a claim form. Webb Jumio Decl. ¶¶ 9–10.

Significantly, the *Jumio* settlement agreement defines "Released Parties" to include not only Jumio but also, among others, its customers. R. 56-1, Defs.' Attachment A, Exh. 1, Settlement Agreement at 4, ¶ 1.25. The settlement agreement also describes what claims are being released:

> "Settled Claims" means any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit

4

> from biometric information, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

Settlement Agreement at 4, ¶ 1.27.

WeWork argues that because Osborne did not exclude himself from the *Jumio* settlement he is a member of the settlement class, and thus the settlement released his claims against WeWork. Defs.' Br. at 2–7.

## II. Legal Standard

In moving to dismiss, WeWork argues that Osborne's claims have been mooted by the *Jumio* settlement, and that this Court now lacks subject matter jurisdiction. WeWork's motion refers to Federal Rule of Civil Procedure 12(b)(1), which is the vehicle by which to bring a dismissal motion for lack of subject matter jurisdiction. Def.'s Br. at 5–7, 18. But WeWork's argument is *not* really an issue of subject matter jurisdiction. Instead, WeWork is actually arguing that Osborne's claims were *released* in the *Jumio* settlement, *see* Defs.' Br. at 5–6 ("Because Osborne is a member of the Jumio Settlement Class, he released his BIPA claims against Jumio's customers, including WeWork.") The defense of release is not a subject matter jurisdiction problem. A motion for judgment on the pleadings under Rule 12(c), not Rule 12(b)(1), provides the proper vehicle for challenging a complaint based on an affirmative defense, like release of a claim. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015) (holding that "[b]ecause the release of a claim is an affirmative defense," the defense "should have raised it and then moved for judgment on the pleadings

5

under Rule 12(c)"). That said, when a Rule 12(c) motion relies on material outside the pleadings—like the settlement agreement at issue here—Rule 12(d) generally requires that a court treat the motion as one for summary judgment under Rule 56 and give the parties "a reasonable opportunity to present" all pertinent material. *See id.* (quoting Fed. R. Civ. P. 12(d)). So the Court construes WeWork's motion as an early motion for summary judgment, and indeed Osborne responded by submitting evidence against the motion (but did not seek discovery).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party

must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Osborne argues that the *Jumio* settlement did not release his BIPA claims against WeWork. On the premise that WeWork has filed a summary judgment motion on the purported release, the overarching question is whether there is a genuine dispute of material fact on the release's application to the claims in Osborne's federal complaint. Settlement agreements are like any other contracts, and thus a release within a settlement agreement is governed by ordinary contract principles under state law. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) ("State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements."); *see also ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017).

A release is "the abandonment of a claim to the person against whom the claim exists." *ADM All. Nutrition, Inc.*, 877 F.3d at 746. Osborne was identified and listed as a member of the *Jumio* class. Webb Jumio Decl. ¶ 5. Class members were given the opportunity to exclude themselves from the settlement class, in which case they would not be bound by the Final Order and Agreement. *See* Legal Notice Postcard. But Osborne did not opt-out and exclude himself from the class settlement. Webb Jumio Decl. ¶ 9. And the final order and agreement declare that "all settlement class members who have not opted out shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Settled Claims against the *Released*

7

*Parties*, as defined under the Settlement Agreement." R. 56-5, Jumio Final Order and Judgment ¶ 16 (emphasis added). The final order and judgment also unambiguously establishes that settlement class members who failed to opt out will be bound by the release:

> [t]he Settlement Agreement and the Release of the Settled Claims [are] binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members who did not validly and timely exclude themselves from the Settlement …

Jumio Final Order and Judgment¶ 17.

Osborne does not contest that he failed to opt-out of the settlement class (nor does he even acknowledge the opt-out option). He presents no argument or explanation as to why he did not exclude himself from the class settlement, and there are no allegations about the effectiveness of the opt-out request. So Osborne's whole argument, then, is that "Settled Claims against the *Released Parties*" as defined in the Settlement agreement does not include Jumio's customers and the customers' violations. Pl.'s Br. at 4–7 (emphasis added). Osborne offers a distinction between the private-entity Jumio customer (WeWork) and the biometric vendor itself (Jumio). Pl.'s Br. at 4–6. Osborne argues that Jumio's BIPA violations and WeWork's BIPA violations are different, and that the settlement only released WeWork from liability for *Jumio*'s BIPA violations, not WeWork's own separate violations. *Id*. WeWork responds that this argument was rejected by the state court in *Jumio*, and that the clear and unambiguous definition of Released Parties in the *Jumio* settlement agreement covers WeWork. R. 63, Defs.' Reply at 1.

8

The dispute is thus a matter of contract interpretation. When a release is unambiguous, the Court must construe it as written. *ADM All. Nutrition, Inc.,* 877 F.3d at 746–47. WeWork is right: the text that defines the settled claims and the Released Parties unambiguously includes all of Osborne's BIPA claims against WeWork:

> 1.11 "Customer" means a business or other entity that licenses, purchases or resells, *either directly or indirectly*, the Netverify service from Defendant and/or provides such Netverify service, either directly or indirectly, to individuals in Illinois such as the Settlement Class Members.
>
> […]
>
> 1.25 "Released Parties" means Defendant and all of its owners, directors, officers, employees, *Customers*, agents, parents, subsidiaries, contractors, insurers, reinsurers, and affiliates.
>
> […]
> 1.27 "Settled Claims" means any and all claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind and description, that the Plaintiff and Settlement Class Members, had, have, or may have, *against all Released Parties with respect to Defendant's collection, capture, receipt, purchase, storage, dissemination, transfer, use, sale, lease, trade, or profit from biometric information*, biometric identifiers, or any data derived from or relating to the images of faces in photographs or videos, including all claims arising from or relating to the subject matter of the Action and all claims that were brought or could have been brought in the Action by the Plaintiff and/or the Settlement Class Members.

Settlement Agreement at 2, 4 (emphases added). The pertinent definitions cover WeWork and any BIPA claims against it: it is a Customer of the NetVerify service, and Osborne is trying to assert a claim based on Jumio's collection and handling of biometric information.

9

It might very well be true, as Osborne argues, that a violation of BIPA by a biometric-information vendor stands separate and apart from the BIPA violation of its client. The Court need not decide that issue because the text of the settlement agreement broadly and clearly covers *both*. Whether or not Osborne's claims could be construed as *WeWork*'s own distinct BIPA violations, *all* of the claims have been released. That is not at all surprising in this type of class-action settlement, given the potential indemnity and claims that Jumio might face from its customers if the Released-Parties definition had not included customers.

Against this conclusion, Osborne argues that, in overruling an objection to the then-proposed settlement in *Jumio*, the state court held that the release would not include claims brought against Jumio customers for the customers' conduct. Pl.'s Br. at 6–7. As WeWork correctly points out, Defs.' Reply at 2–5, the transcript Osborne cites and relies on says no such thing. The state court held that the language of the settlement agreement is "clear and unambiguous," R. 56-4, Jumio Transcript 35:5, 35:9–11, and indeed counsel for Jumio made it clear that if the release had been "narrower" and had *not* included the BIPA claims against Jumio's customers, there would have been "no deal," meaning no settlement. *Id*. 35:18–23. Indeed, the release of claims against customers (remember, WeWork is a customer) in the release was an "essential" element of settlement. *See id*. Again, defendants in class-action settlement agreements of this kind not surprisingly insist on releases of claims against the defendant's customers, lest the customers come knocking on the defendant's indemnity door later. The state court settlement agreement, through its specific and

10

unambiguous definitions, releases claims against Jumio customers such as WeWork and the state court found that the claims were released for adequate consideration. *Id*. 35:12–16. There is no genuine dispute of material fact—the *Jumio* settlement release applies to the claims in Osborne's complaint and so Osborne's claims in this case against WeWork have been released.

## IV. Conclusion

Summary judgment is granted in favor of the Defendants based on the release. The case is dismissed with prejudice as to Osborne's individual claims and without prejudice as to the proposed class claims. The status hearing of April 8, 2022, is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022

11